Nos. 16-35897, 16-35982 and 16-35936 (Consolidated)

_____

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

OTR WHEEL ENGINEERING, INC.,
BLACKSTONE/OTR, LLC, and F. B. T. ENTERPRISES, INC.,

Plaintiffs/Appellees/Cross-Appellants, Cross-Appellees,

vs.

WEST WORLDWIDE SERVICES, INC., SAMUEL J. WEST, SSL
CHINA, LLC, QINGDAO STW TIRE CO. LTD., and SSL HOLDINGS,
INC.,

Defendants/Appellants/Cross-Appellees, Cross-Appellants.

_____

APPEAL FROM THE U.S. DISTRICT COURT FOR EASTERN
DISTRICT OF WASHINGTON, SPOKANE, NO. 2:14-CV-00085-LRS

_____

ANSWERING BRIEF ON APPEAL AND OPENING BRIEF ON CROSS-
APPEAL OF OTR WHEEL ENGINEERING, BLACKSTONE/OTR, LLC
AND F.B.T ENTERPRISES, INC.

_____

Robert J. Carlson
LEE & HAYES PLLC
One Convention Place
701 Pike Street
Suite 1600
Seattle, WA 98101
(206) 315-4001
bob@leehayes.com

Joel D. Bertocchi
Kimberly A. Jansen
Jeffrey S. Dixon
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601
(312) 704-3000
jbertocchi@hinshawlaw.com

*Counsel for Appellees/Cross-Appellants/Cross-Appellees*

i

# RULE 26.1 DISCLOSURE STATEMENT

Plaintiffs/Appellees/Cross-Appellants/Cross-Appellees are OTR Wheel Engineering, Inc., Blackstone/OTR, LLC and F.B.T. Enterprises, Inc. All are privately held corporations. None has a parent company, and no publicly held company owns 10% or more of the stock of any of them.

The names of all law firms who have or will be expected to appear for Plaintiffs are: Hinshaw & Culbertson LLP and Lee & Hayes, PLLC.

|  |  |
|---|---|
|  | */s/ Joel D. Bertocchi* |
| Robert J. Carlson | Joel D. Bertocchi |
| Lee & Hayes PLLC | Kimberly A. Jansen |
| One Convention Place | Jeffrey S. Dixon |
| 701 Pike Street | Hinshaw & Culbertson LLP |
| Suite 1600 | 222 North LaSalle Street |
| Seattle, WA 98101 | Suite 300 |
| (206) 315-4001 | Chicago, IL 60601 |
| bob@leehayes.com | (312) 704-3000 |
|  | jbertocchi@hinshawlaw.com |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................ 1

II.     JURISDICTIONAL STATEMENT.............................................. 1

III.    ISSUES PRESENTED (CROSS-APPEAL) ................................. 2

IV.     STATEMENT OF THE CASE ..................................................... 3

        A.      Pretrial Proceedings. ..................................................... 3

        B.      Statement of Facts. ........................................................ 4

        C.      Verdict and Judgments. ............................................... 15

V.      SUMMARY OF ARGUMENT .................................................. 16

VI.     ARGUMENT ............................................................................ 21

        A.      The District Court did not abuse its discretion in its
                evidentiary rulings. ...................................................... 21

                1.      Standard of Review: ........................................... 21

                2.      The District Court did not abuse its discretion
                        in excluding Exhibit 554, nor did that ruling
                        prejudice West. ................................................... 22

                3.      The District Court did not abuse its discretion
                        in excluding OTR'S lawyer's deposition, and its
                        exclusion did not prejudice West.......................... 24

                4.      The District Court did not abuse its discretion
                        in      admitting      the      Solideal-Superhawk
                        Agreements ......................................................... 25

        B.      The District Court's Judgment as a Matter of Law
                that OTR did not procure its '169 Registration by
                fraud was correct. ......................................................... 27

                1.      Elements of Trademark Fraud.............................. 28

                2.      Legal Standards. ................................................. 30

3.    As the District Court held, West failed to prove fraud by clear and convincing evidence. ............... 31

C.    The jury's Verdicts on OTR'S false Designation and State-Law Claims were amply supported by the evidence. ..................................................................... 39

    1.    The Jury's verdict in favor of OTR on its "reverse passing off claim" must be Affirmed. ........ 41

        a.    West has only partially preserved its challenge to the reverse passing off claim..... 41

        b.    Substantial evidence supports the jury's verdict on "reverse passing off." .................... 43

    2.    Substantial evidence supports the jury's finding that West used a false designation of origin. ................................................................. 43

    3.    Substantial evidence supports the jury's finding of likelihood of confusion. ......................... 48

    4.    *Dastar* does not support reversal. ......................... 50

D.    The Jury's WCPA verdict must be affirmed. ................... 53

    1.    West has not preserved its challenge to the WCPA verdict. ..................................................... 53

    2.    Substantial evidence supports the jury's WCPA verdict. ............................................................... 55

        a.    The jury was properly instructed on the elements of OTR's claim under the WCPA. SER124. ..................................................... 55

    3.    The jury's verdict in favor of OTR on its tortious interference claims must be affirmed. ..... 56

        a.    West has not preserved its challenge to the tortious interference verdicts. ................. 56

b.    Substantial evidence supports the jury's verdict on the claim of tortious interference as to Superhawk........................ 57

c.    West's challenge to Instructions 32 and 35 does not undermine the sufficiency of the evidence................................................. 57

d.    OTR established a breach of the non-competition agreement between Solideal and Superhawk. ........................................... 59

e.    Substantial evidence supports the jury's verdict on the claim of tortious interference as to Genie. ............................. 61

    i.    The jury received Instruction 33 on the elements of tortious interference as to Genie. SER121. ............................ 61

E.    The Preliminary Injunction is not before the Court in these appeals. ........................................................... 62

F.    The District Court did not abuse its discretion in awarding OTR Prejudgment Interest............................. 65

    1.    Federal Law Claims............................................... 65

    2.    State Law Claims. ................................................. 67

        a.    Prejudgment interest was proper under Washington law. ........................................... 67

    3.    Washington's 12% interest rate was properly applied................................................................. 69

G.    Having acknowledged that West's Fraud Claim should not have gone to the Jury, the District Court should have granted OTR Judgment or a new trial on its infringement claims........................................... 72

    1.    Standard of Review. .............................................. 72

v

2.   The District Court's Admitted Error in Placing Fraud Before The Jury Requires At Least A New Trial on OTR's Registered Trademark Claims. ............................................... 72

a.   The court erred in submitting the issue of fraud to the jury. ....................................... 72

b.   The District Court, failing to appreciate the magnitude of its error, denied OTR a new trial on trademark matters. .................. 74

3.   The District Court's error was not harmless. ........ 76

4.   Because There Was No Evidence On Which The Jury Could Have Invalidated The '169 Registration On Other Grounds, OTR Was Entitled To Judgment On Its Registered Trademark Claims. ............................................... 79

5.   The District Court Erroneously Foreclosed OTR's Unregistered Trade Dress Claims ............... 82

VII.   CONCLUSION ...................................................... 87

RULE 28-2.7 ADDENDUM.................................................... 89

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aker Verdal A/S v. Neil F. Lampson, Inc.*,
65 Wash. App. 177 (1992) ....................................................... 68

*Au-Tomotive Gold, Inc. v. Volkswagen of Amer., Inc.*,
457 F.3d 1062 (9th Cir. 2006) .................................................. 34

*Blankenship v. Liberty Life Assur. Co.*,
486 F.3d 620 (9th Cir. 2007) ................................................... 70

*In re Bose Corp.*,
580 F.3d 1240 (Fed. Cir. 2009).......................................... 30, 73

*Bretford Mfg., v. Smith System Mfg.*,
419 F.3d 576 (7th Cir. 2005) .............................................. 51, 52

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
2009 WL 160235 (S.D. Cal. January 20, 2009) ........................ 66

*Brookfield Communications, Inc. v. West Coast Ent.*,
174 F.3d 1036 (9th Cir. 1999) ........................................... 72, 82

*Castro v. County of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016) .................................................. 55

*Certification from the United States Court of Appeals for
the Ninth Circuit in Centurion Properties III, LLC v.
Chicago Title Ins. Co.*,
186 Wash. 2d 58 (2016) ........................................................... 58

*Chuman v. Wright*,
76 F.3d 292 (9th Cir.1996) ...................................................... 77

*Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*,
870 F.2d 512 (9th Cir. 1989) ................................................... 66

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
251 F.3d 1252 (9th Cir. 2001) ................................................. 29

*CMSI, Inc. v. Pacific Cycle, Inc.*,
2006 WL 2942794 (W.D. Wash. Sept. 15, 2006) ................. 51, 52

*Colorado v. New Mexico*,
467 U.S. 310 (1984) ................................................................ 30

*CPG Products Corp. v. Pegasus Luggage, Inc.*,
776 F.2d 1007 (Fed. Cir. 1985) .............................................. 64

*Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*,
2010 WL 2132378 (C.D. Cal. May 24, 2010) ........................... 66

*Dastar Corp. v. 20th Century Fox Film Corp.*,
539 U.S. 23 (2003) ..................................................... 41, 50, 51

*Estate of Diaz v. City of Anaheim*,
840 F.3d 592 (9th Cir. 2016) .................................................. 30

*DirecTV, Inc. v. Webb*,
545 F.3d 837 (9th Cir. 2008) .................................................. 48

*Elbert v. Howmedica, Inc.*,
143 F.3d 1208 (9th Cir. 1998) .......................................... 49, 59

*Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co.*,
786 F.2d 1342 (9th Cir. 1985) .......................................... 42, 53

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
654 F.3d 989 (9th Cir. 2011) .................................................. 63

*FLIR System, Inc. v. Sierra Media, Inc.*,
965 F. Supp. 2d 1184 (D. Or. 2013) ....................................... 65

*Freund v. Nycomed Amersham*,
347 F.3d 752 (9th Cir. 2003) .................................................. 57

*Gambini v. Total Renal Care, Inc.*,
486 F.3d 1087 (9th Cir. 2007) ................................................ 72

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*,
874 F.2d 431 (7th Cir. 1989) .................................................. 66

*Halicki Films, LLC v. Sanderson Sales and Marketing,*
    547 F.3d 1213 (9th Cir. 2008) .................................................... 84

*Hansen v. Rothaus,*
    107 Wash. 2d 468 (1986) ......................................................... 68

*Harper v. City of Los Angeles,*
    533 F.3d 1010 (9th Cir. 2008) ............................................. 21, 43

*Hokto Kinoko Co. v. Concord Farms, Inc.,*
    738 F.3d 1439 (9th Cir. 1990) ....................................... 28, 30, 73

*Judge v. Quinn,*
    612 F.3d 537 (7th Cir. 2010) ................................................... 49

*Lahiri v. Universal Music & Video Distribution Corp.,*
    606 F.3d 1216 (9th Cir. 2010) ................................................. 50

*Lifshitz v. Walter Drake & Sons, Inc.,*
    806 F.2d 1426 (9th Cir. 1986) ................................................. 42

*Merck Eprova AG v. Gnosis S.p.A.,*
    760 F.3d 247 (2d Cir. 2014) .................................................... 66

*Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.,*
    513 F.3d 949 (9th Cir. 2008) ................................................... 70

*Ocean Garden, Inc. v. Marktrade Co.,*
    953 F.2d 500 (9th Cir. 1991) ................................................... 72

*OTR Wheel Engineering, Inc. v. West Worldwide Svces., Inc.,*
    602 Fed.Appx. 669 (9th Cir. March 18, 2015) ................. 3, 63, 65

*Puget Sound Energy, Inc. v. Util. Partners,*
    8 Fed.App'x 782 (9th Cir. 2001) .............................................. 67

*Robi v. Five Platters, Inc.,*
    918 F.2d 1439 (9th Cir.1990) ....................................... 28, 30, 73

*Ruvalcaba v. City of Los Angeles,*
    64 F.3d 1323 (9th Cir.1995) .................................................... 21

*Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
    64 F.3d 1282 (9th Cir. 1995) .................................................... 67

*Sprint/United Mgmt. Co. v. Mendelsohn,*
    552 U.S. 379 (2008) ................................................................ 21

*Scoccolo Const., Inc. ex rel. Curb One, Inc. v. City of Renton,*
    158 Wash.2d 506 (2006) .......................................................... 68

*Swinton v. Potomac Corp.,*
    270 F.3d 794 (9th Cir.2001) ......................................... 72, 76, 80

*Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
    14-56366, 2017 WL 1055586 (9th Cir. Mar. 21, 2017) ............. 40

*Tennison v. Circus Circus Enters., Inc.,*
    244 F.3d 684 (9th Cir. 2001) .................................................... 21

*Thompson v. Haynes,*
    305 F.3d 369 (Fed. Cir. 2002).................................................. 64

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,*
    532 U.S. 23 (2001) ............................................................ 28, 81

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992) ................................................................ 84

*Unigard Ins. Co. v. Mutl. of Enumclaw Ins. Co.,*
    160 Wash. App. 912 (Div. 1 2011) ..................................... 70, 71

*United States v. Boulware,*
    558 F.3d 971 (9th Cir. 2009) .................................................... 25

*W.V. Realty, Inc. v. Northern Ins. Co.,*
    334 F.3d 306 (3d Cir. 2003) .................................................... 77

*Wagner v. Cnty. of Maricopa,*
    747 F.3d 1048 (9th Cir. 2013) .................................................. 21

*Wallace v. City of San Diego,*
    479 F.3d 616 (9th Cir. 2006) ............................................. 42, 43

*Wal-mart v. Samara Bros.*,
  529 U.S. 205 (2000) ............................................................. 29

*White v. Ford Motor Co.*,
  312 F.3d 998 (9th Cir. 2002), *as amended* 335 F.3d
  833 (9th Cir. 2003) ........................................................ 74, 75

## Statutes

15 U.S.C. §1052(f) ................................................................ 29

15 U.S.C. §1114 ............................................................... 4, 84

15 U.S.C. §1116(d) ................................................................ 4

15 U.S.C. §1125(a) ................................................................ 4

15 U.S.C. §1117(a) ............................................................... 66

28 U.S.C. §1291 ................................................................... 2

28 U.S.C. §1292(a)(1) ....................................................... 19, 62

15 U.S.C. §1125(a) ......................................................... *passim*

R.C.W. §4.56.110(4) ............................................................ 16

R.C.W. §19.52.020 .............................................................. 16

R.C.W. §19.86.090 .............................................................. 64

R.C.W. §4.56.110 ............................................................... 70

R.C.W. §19.86.020 ............................................................... 4

R.C.W. §19.108.010 ........................................................... 4, 9

## Other Authorities

5 McCarthy on Trademarks and Unfair Competition
  §30:93 (4th ed.) .............................................................. 67

Fed.R.App.P. 4(a)(1)(A) ......................................................... 2

Fed.R.App.P. 4(a)(3) .......................................................... 2

Fed.R.Civ.P. 50(a)(2) ....................................................... 42

Fed.R.Civ.P. 54(b) ....................................................... 2, 62

Fed.R.Evid. 803(6) ......................................................... 26

# I.    INTRODUCTION

Plaintiffs/Appellees/Cross-Appellants/Cross-Appellees OTR Wheel Engineering, Inc. ("OTR Wheel"), Blackstone/OTR, LLC ("Blackstone/OTR") and F.B.T. Enterprises, Inc. ("F.B.T.") (collectively "OTR") hereby respond to the opening brief of Defendants/Appellants/Cross-Appellees/Cross-Appellants West Worldwide Services, Inc. ("WWW"), Samuel J. West, SSL China, LLC, Qingdao STW Tire Co., Ltd., and SSL Holdings, Inc., (collectively "West," except where noted), as follows:

# II.    JURISDICTIONAL STATEMENT

West's jurisdictional statement correctly describes the jurisdiction of the District Court. Judgment was entered on all claims except OTR's injunctive claims on June 30, 2016, ER51-52, as amended October 20, 2016, ER15-16.[1] Although neither judgment addressed OTR's injunctive claims, on joint motion of all

---

[1] Citations to material reproduced in West's Excerpts of Record (by page number) will take the form "ER___." Citations to OTR's Excerpts of Record will take the form "SER___." Citations to other record items will refer to their ECF number, "ECF___." Citations to West's opening brief will take the form "WBR___."

parties the District Court ruled under Fed.R.Civ.P. 54(b) that there was no just reason for delay, and that judgment should be considered final. SER60-62. This Court thus has jurisdiction under 28 U.S.C. §1291.

West filed its initial notice of appeal (ER10-13) on October 31, 2016, within 30 days of the amended judgment under Fed.R.App.P. 4(a)(1)(A). OTR filed its notice of cross-appeal (ER5-9) on November 4, 2016, within 14 days of West's notice as permitted by Fed.R.App.P. 4(a)(3). West filed its notice of cross-appeal from OTR's cross-appeal (ER1-4) on November 18, 2016, within that same 14-day period.

## III. ISSUES PRESENTED (CROSS-APPEAL)

1. Whether, having ruled that West's fraud counterclaim should not have gone to the jury, the District Court should have granted OTR judgment or a new trial on its infringement claims.

2. Whether the District Court's ruling striking OTR's unregistered trade dress claims should be reversed.

(A statutory addendum follows the text of this brief.)

# IV.   STATEMENT OF THE CASE

## A.   Pretrial Proceedings.

OTR filed its initial complaint on April 2, 2014. It alleged infringement and counterfeiting of a registered trademark and unregistered trade dress, and pendent Washington state-law claims for unfair competition, trade secret misappropriation, tortious interference with business relations, and unjust enrichment, and sought injunctive relief. A preliminary injunction hearing was held on May 7, 2014. The District Court granted an injunction on May 14, 2014, and later denied reconsideration. SER106-16, SER95-105.[2] West counterclaimed, seeking declarations of invalidity of OTR's registered trademark based on, *inter alia*, fraud on the U.S. Patent & Trademark Office ("USPTO").

OTR amended its complaint on July 20, 2015, adding factual elaboration but retaining the same substantive counts. ER641-78. Count I charged trade dress infringement, counterfeiting and false designation of origin in violation of 15 U.S.C. §§1114, 1116(d) and

---

[2] West appealed the preliminary injunction, and this Court affirmed it with modifications. *OTR Wheel Engineering, Inc. v. West Worldwide Svces., Inc.*, 602 F.Appx. 669 (9th Cir. March 18, 2015).

1125(a); cited registered trademarks included the "OUTRIGGER" tire name and the tire's tread design ("the '169 registration"). ER666-69. Count II charged West with violating the Washington Consumer Protection Act ("WCPA"), R.C.W. §19.86.020 *et seq.* ER669-71. Count III charged trade secret misappropriation in violation of the Washington Uniform Trade Secrets Act, R.C.W. §19.108.010. ER671-72. Count IV charged tortious interference with OTR's business relationships with a customer, a manufacturing partner and a subcontractor of that partner, in violation of Washington law. ER672-73. Count V alleged unjust enrichment. ER673-74. Counts VI and VII lodged injunctive claims. ER674-76. In answering, West reasserted its counterclaims. ECF277.

Before trial the District Court ruled on a number of summary judgment motions and pretrial motions *in limine*. Trial to a jury commenced on June 20, 2016, and lasted nine days.

## B.   Statement of Facts.

Fred Taylor formed a company (now OTR Wheel) to sell wheels and tires for industrial use. SER328-29. In the late 1990's Taylor wanted to get involved in the design and manufacture of tires.

OTR's customers included JLG and Genie Industries ("Genie"), which made aerial work platforms ("AWPs," sometimes referred to as "cherry pickers"). JLG wanted a new look for AWP tires, and Taylor worked to develop a distinctive design. SER331. He envisioned a tire with a steeply-angled tread and a distinctive sidewall that would look different from other tires on the market. SER332-34.

Taylor worked with several tire manufacturers over several years to develop what became the first "Outrigger" branded tire. Development of the manufacturing process took time, effort and expense; among other challenges, because of the Outrigger's straight sidewall it was difficult to get soft heated rubber to flow into the corners of the tire mold when the tire was being pressed and "cured." SER367-68, SER370.[3] In 1999 Taylor was approached by Solideal, a Belgian manufacturer with a new plant in Sri Lanka. SER371-73. Solideal and OTR formed Blackstone/OTR as a partnership to manufacture AWP tires. SER329, SER373-74. They

_____

[3] At trial Taylor described the tire manufacturing process in some detail, accompanied by demonstrative exhibits. SER335-61.

executed non-competition and confidentiality agreements, F.B.T. provided Blackstone/OTR with a license to manufacture Outrigger tires, and OTR provided its building instructions, molds and other equipment, drawings and other necessary material to Solideal. SER374-81, SER267-68.

Even before joining with Solideal Taylor began developing a new "low profile" AWP tire in size 355 (a size commonly used on AWP's). This design used the distinctive Outrigger tread pattern, but had a "high bead ratio," that is, a shorter sidewall and a larger wheel opening.[4] No AWP tire with that look existed at the time. Taylor moved work on this "second generation Outrigger" to Thai manufacturer Deestone, SER384-86, investing in a narrower building drum (on which the pre-cured "green" tire is built) and other equipment, including the new molds. SER387-88, SER253.

---

[4] Size "355" refers to a tread width of 355 millimeters, or 14 inches. SER159. The "bead" is where the tire meets the wheel when mounted. SER326-27.

They had to create new bladders shaped specifically for this tire design. SER371, SER390, SER392-93, SER252, SER254-62.[5]

Developing a production-ready low-profile Outrigger 355-size tire took around two years and involved considerable time and expense, including new equipment and designs and frequent travel; Taylor alone traveled to Sri Lanka at least 10 times in 2000. SER395, SER263. Ultimately the tire was produced in the U.S. (by Specialty Tires of America), in Thailand (by Deestone), and in Sri Lanka (by Solideal, through Blackstone/OTR). Solideal later authorized Chinese manufacturer Superhawk to make the Outrigger, as explained below. SER269, SER281. It was tested and approved by JLG, which has bought them from OTR continuously (and exclusively) since. SER265-66. In 2002 OTR began selling them to Genie, which had been a customer for the earlier generation Outrigger. SER266. Genie has also bought them from

---

[5] In tire manufacturing a "bladder" is a container made of heat-resistant rubber that sits in the center of the green tire when it is cured in the mold. The bladder is inflated with hot water and steam to expand the green tire, move soft tread rubber into the tread part of the mold and create the shape of the inside of the tire. SER348-51, SER248-52.

OTR continuously since—with one interruption, Genie's pre-injunction purchases from West.

WWW "sources" tires, though unlike OTR it is not involved in manufacturing. WWW had sold other types of tires to Genie, and in 2010 owner Sam West told Jeff Tibbitts, a Genie buyer, that he could obtain 355-size tire and wheel assemblies for Genie from a Chinese manufacturer. SER301-02.[6] Sam West knew OTR was Genie's supplier of 355-size AWP tires. SER304. He began seeking a Chinese tire manufacturer, and ultimately contacted Michael Zhang, who had been the manager at Solideal's Chinese facility but was now working for another Chinese manufacturer, Superhawk. SER306, SER308-10, ER297.

Sam West visited Superhawk's Chinese plant in March and December 2011. SER311-12. During these visits West learned that Superhawk was making 355-size tires for Solideal, Blackstone/OTR's partner. At trial he claimed he was "not sure at all" that he knew those tires were branded "Outrigger," though he did know Solideal made some sizes of Outriggers. SER313, SER314.

---

[6] An "assembly" is a tire mounted on a wheel. SER397.

West emailed Zhang about making a 355-size tire for him to sell to JLG and Genie, claiming "[t]his could be a very large business[]" and "hoping to get pricing competitive to the Solideal tires you make." ER299. He assured Zhang that they "could do huge volumes of this tire." ER298.

In the spring of 2012 Sam West talked more with Genie about supplying a 355-size assembly. SER316. Genie only tested proposed new tires during rare and narrow periods, and one was fast approaching. *Id.* On April 6, 2012 West asked Zhang to make 16 355-size tires for testing by Genie. He asked Zhang to put the brand "SH Special Platform," on them, and to make them "as soon as possible." ER302. When Zhang said he would need 50 days to obtain a mold (and thus could not make them until early June), ER302, West responded:

> Don't you make this size now? I really need it much sooner. There is a very limited window to test this product and if [I] don't have our tire ready, they will test someone else's tire. Don't you make this tire for Solideal? Does it come from the same mold now? Could you buff off the Solideal name on the sidewall or just remove the plate and let me get the tire tested? . . . The volume is very high.

ER301.[7] Zhang replied, saying Superhawk did make 355-size tires for Solideal, "but it will be dangerous to use Solideal mold to make this 16 [pieces] now, we have an agreement with Solideal, cann't [*sic*] do now!" ER301. West replied:

> Will your mold be the same as the [S]olideal mold? If we take out the nameplate and all the sidewall information, nobody will know. I hate to ask this of you but we only get one chance at this. Please let me know if we can make it work. Obviously we would not say anything.

ER301. Zhang responded that the mold he would have in June was "slightly different" than Solideal's, and that "if Solideal tyre pass the [Genie] test and then you supply a little different tyre to customer, will this work?" ER308-09. West replied saying "[i]f it is just a mm tread issue I say we do it. If it is very obvious i'm not so sure." He asked Zhang for "your current tire with no writing or

---

[7] Branding on a tire's sidewall can be "engraved" into the mold, as Taylor did, or placed on a "spring plate" attached to or removed from a mold, allowing information to be changed. SER320, SER213. If no plate is used, the sidewall will be blank. SER321. Sidewall markings can also be buffed or ground off tires after they are made, see SER321-22; in fact, when Superhawk was making the Genie test tires for West in May of 2012 a West employee noted that several were held back for "quality issues" and added: "I think that's probably from not scratching the original brand name off the sample tires well enough, if you know what I mean." ER292.

identification on it I will just keep it ready for the test. If you finish your mold before that, we could just switch it out. My thought is if I did have to test the tire with no markings, that the[y] wouldn't recognize the tire with markings if your tread is basically the same." ER307. Zhang said the difference was small and suggested they "make a tyre without brand for testing." ER307.

Zhang said he would "check whether Solideal will place an order for May" for which his minimum would be 50 pieces. ER307. Five days later, on April 16, Zhang told West Solideal had no order in place. ER306. West urged Zhang to make his tires anyway: "I assume that Solideal will order these again correct? Any chance you can risk making the 50 pcs and then sit on the 40 tires until they ask? I just don't want to miss our window.... I know it is asking a lot but this will be great business for us." ER306.

On April 18, West asked if Zhang had had "[a]ny luck making some 355's without sidewall markings? This is urgent." He also asked Zhang to quote prices for two other tires for which he might "award [Zhang] some additional business." Zhang said he "will make 355 shortly." ER305. On April 30 Zhang said the tires would be

ready around May 5. He said they had "removed the brand name and pattern details." SER556-58.

At the same time he asked Zhang to use Solideal's mold to make his tires, West told Tibbitts, Genie's buyer, that he had ordered tires for Genie to test. SER559-60. In early May Tibbitts asked West to confirm that West's supplier also made the 355-size OTR Outrigger tire Genie had been using. SER319. On May 4 West emailed Zhang:

> We may be in luck if I can confirm with you that you have produced the OTR Outrigger tires for Solideal at your plant. Our customer has used these before and if I can assure them that you make for Solideal than [*sic*] we may be able to use your tires without extensive testing. In the previous email you indicated that you also make the 18-625 tire for Solideal branded the OTR Outrigger, so please verify that is the case for the 355/55-625 as well. This is kind of urgent so I am sorry for bothering you on the weekend. Just need confirmation.

ER295. Zhang responded:

> Yes, we are making for OTR outrigger of [size] 355D625*, but not yet make 18-625. As we have none-competition agreement with Solideal, it may cause big trouble with my cooperation with Solideal if they knows I supply you,* what is the situation at you side? Is Solideal now the supplier to them?

ER295 (emphasis added). West forwarded that email to Genie's Tibbitts as "confirmation" that his supplier also made the OTR tire. But before doing so he deleted the language italicized above, including Zhang's references to the non-competition agreement and "big trouble." What West forwarded to Tibbitts thus merely said "Yes, we are making for OTR outrigger of 355D625, what is the situation at you side? Is Solideal now the supplier to them?" ER274, SER655-659.[8]

Several days later Tibbitts told OTR that he was considering switching to another supplier for 355-size ("S60") tires because Genie had been given "a nice savings opportunity on this assembly." ER270, ER272. In June of 2013 Genie stopped buying 355-size tires from OTR and began buying them from WWW. This continued until May of 2014, when the preliminary injunction was entered; Genie then dropped WWW and again began purchasing them from OTR, as it has since. SER404-06, SER266-67.

---

[8] Genie's head of procurement confirmed that, had Genie known what Zhang had said about "big trouble" with Solideal, it would have questioned West's right to use the mold and, if he could not confirm it, "we would most likely have stopped" dealing with him. SER662.

OTR first learned that West had used the Solideal Outrigger mold by accident. Occasionally Genie sent tires or wheels back to OTR for various reasons, including warranty issues. SER398-99. In October of 2012 Sean McFadin, a manager at OTR's Moses Lake, Washington facility, received some wheels from Genie. While on the truck he noticed assemblies with tires that looked identical to OTR Outriggers but that had the names "Stabimate" and "ExtremeLift" on the sides. SER399-400. McFadin photographed the tires. SER400-02, SER561-65. He later learned from the truck's driver that the assemblies were delivered to WWW's facility in Moses Lake. SER403-04. Taylor then learned from Solideal, OTR's partner in Blackstone/OTR, that Solideal was making Outriggers at Superhawk using equipment Solideal had supplied. SER271-72, SER273-74. Solideal's arrangements with Superhawk included confidentiality and non-competition agreements. SER274-80, SER282, SER284-88, SER497-555, SER490-96, SER482-89, SER426-81.

Other evidence confirmed that Superhawk used Solideal's mold to make the "development tires" West submitted to get Genie's 355-size business. For example, at trial, Taylor showed the jury

that the bladder imprint (the pattern imprinted into the rubber on the tire interior by expansion of the bladder during curing) of WWW's test tire was identical to bladders that OTR had created for its 355-size Outriggers and had sent to Solideal for that purpose. SER154-58.

## C.  Verdict and Judgments.

On June 30, 2017 the jury returned its verdict. It found that OTR's trademark registration had been procured by fraud (and thus found the registration invalid), and that West had not misappropriated OTR's trade secrets. But it found in favor of OTR on its false designation of origin claim under the Lanham Act, 15 U.S.C. §1125(a), because West had removed or obscured OTR's "Outrigger" trademark name on Outrigger tires. The jury also found that West had tortiously interfered with three OTR business relationships: (1) OTR's business relationship with Genie; (2) a contract between Solideal (OTR's partner in Blackstone/OTR) and Superhawk; and (3) the business relationship among Solideal, Superhawk and OTR. The jury also found that West had violated the WCPA. The jury awarded OTR $967,015 in actual damages.

ER53-55. The District Court initially entered judgment in that amount the same day. ER51-52.

Following trial, both sides filed post-trial motions. The District Court granted OTR judgment as a matter of law on West's counterclaim to invalidate OTR's trademark registration for fraud on the USPTO. The Court nonetheless declined to grant OTR a new trial on its trademark infringement and counterfeiting claims. ER20-26. It also declined to lift the preliminary injunction, holding that it was fully supported by the claims on which OTR had prevailed. ER42. The Court also awarded OTR prejudgment interest at the 12% rate called for by R.C.W. §§4.56.110(4) and 19.52.020. ER16a-16d.

## V.   SUMMARY OF ARGUMENT

The District Court did not abuse its discretion in its evidentiary rulings. The tire comparison test report West offered tested different tires than those at issue, and West's failure to call the witness who performed the test made it an inadmissible hearsay expert opinion. Testimony from OTR's trademark counsel was properly excluded as a legal opinion, and as the Court noted, the underlying facts came out through another witness. And the Court

properly admitted written agreements the jury found were tortiously interfered with by West, which were produced by Solideal as its business records and the existence of which were confirmed by Superhawk's Zhang.

The District Court correctly ruled that West's trademark fraud counterclaim was not supported by clear and convincing evidence and should not have gone to the jury. What West claims was "left out" of Raymond Evans' declaration to the USPTO, that the Outrigger's tread (like all directional tire treads) contributed to its self-cleaning function, was disclosed in other material submitted by OTR and noted by the Examiner. But Evans never said any aspect of the Outrigger tread was unique except for the angle of its lug bars, which were shown at trial to be actually counter-functional for traction, and certainly not "essential" to function. Patrick Smith's declaration did not mislead the Examiner into thinking he had consulted with tire consumers on distinctiveness merely by not saying he hadn't; the Examiner herself invited OTR to do so after receiving it. And West submitted *no* evidence that anyone connected with OTR's application acted with the required specific intent to deceive the Examiner.

OTR's favorable verdicts on its false designation of origin, tortious interference and WCPA claims were supported by much more than the required substantial evidence. Indeed, Sam West was literally caught red-handed (in emails) heatedly suborning Zhang to use an Outrigger mold in violation of a non-competition agreement with OTR's manufacturing partner so that he could present tires for testing by OTR's customer Genie, dangling promises of future high-volume business, asking Zhang to remove brand markings, ignoring Zhang's warnings that doing so was "dangerous" and assuring Zhang that "nobody will know" and "we will not say anything." And the tires West later produced using molds he purchased featured a tread digitally measured to be identical to OTR's Outrigger tread. Rather than show mere likelihood of confusion, OTR showed *actual* confusion between OTR's Outrigger tires and the un-branded test tires West had made to present to Genie using the OTR mold and bladder, which *were* OTR tires. Nor can West rely on the Supreme Court's *Dastar* decision, which limited the availability of "reverse passing-off" claims for "communicative products" to avoid conflict with copyright law but said nothing about tangible products like

tires. And West failed to preserve several of its challenges to these verdicts by making different arguments below.

West's preliminary injunction arguments are not part of this appeal; West did not cite 28 U.S.C. §1292(a)(1) in its notice of appeal, and the injunction is not a part of the judgment appealed from. Nor was maintaining the injunction an abuse of discretion after the verdicts, given the extensive wrongful conduct the jury attributed to West.

The District Court properly awarded OTR prejudgment interest. Prejudgment interest is available for claims under §1125(a) of the Lanham Act where conduct is intentional, as was shown here. OTR's damages were "liquidated" because they were based on objective sales data and uncontested calculations, making prejudgment interest appropriate under Washington law. The Court properly selected the 12% rate for statutory violations after correctly concluding that the "common thread" of West's wrongful conduct was its violation of the WCPA.

Having agreed that West's fraud counterclaim should not have gone to the jury, the District Court should have granted OTR judgment or a new trial on its infringement claims. The jury was

instructed to find OTR's trademark registration invalid if it found fraud**,** but from the verdict form it is impossible to say whether it would also have found invalidity based on functionality or lack of secondary meaning.

The jury was likely swayed by West's repeated accusations of fraud, a claim inflammatory by nature. In fact, there was no evidence on which the jury could have found **invalidity**; the most the evidence showed was that OTR's tread, while distinctive in appearance, was actually counter-functional for traction, and West never introduced any evidence to contradict OTR's proof that the Outrigger tread's appearance was distinctive and that OTR had used it continuously. In addition, the Court's last-minute ruling barring OTR's unregistered trade dress claims under §1125(a) at trial was error. Those claims were pled and were known to both the District Court and West, and barring them cost OTR a theory of liability based on the overall appearance of the tire, including its low-profile sidewall, that was different than both its false designation claim based on West's Genie test tires and on the tread pattern covered by its registered trademark.

# VI.  ARGUMENT

## A.  The District Court did not abuse its discretion in its evidentiary rulings.

West challenges three evidentiary rulings: (1) exclusion of a Genie tire test report (Exhibit 554); (2) exclusion of deposition testimony of OTR's trademark lawyer; and (3) admission of agreements between Solideal and Superhawk. None were abuses of the District Court's discretion.

### 1.  Standard of Review:

District Courts exercise "broad discretion" in making evidentiary rulings. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008), citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). Reversal is warranted only "if the exercise of discretion is both erroneous and prejudicial." *Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013). A ruling is prejudicial only if, "more probably than not, the lower court's error tainted the verdict," *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 688 (9th Cir. 2001), and if it "substantially prejudiced a party," *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

**2.    The District Court did not abuse its discretion in excluding Exhibit 554, nor did that ruling prejudice West.**

The District Court did not abuse its discretion in excluding the Genie tire comparison test #1236 (Exhibit 554); in addition, its exclusion was harmless error at worst. Indeed, the report had no relevance to whether the West test tires were made by Superhawk using Solideal's Outrigger molds because the report covered *neither* of the two relevant tires.

The District Court correctly identified Exhibit 554 as an expert opinion. As the Court noted, it went "beyond simple observation" to discuss "cutting a cross section of each tire, taking pictures, and commenting on the construction of each tire", as well as performing "a hardness test with the durometer". ER057–58. An ordinary observer would not have known these tests should be performed, how to perform them, or how to interpret them. No ordinary observer would have known that the West ExtremeLift tire had "one or two additional plies and the plies were spaced further apart", or that the "bead (metal cable) of the [West ExtremeLift] tire also appeared to be larger". ER359. And there was no foundation for its

admission as hearsay, as its author (David Cape) did not testify and West's witness did not perform the test.

Nor was Exhibit 554 relevant. West disputed whether Superhawk used the Solideal mold to create the "development tires" submitted for Genie's testing. A relevant test would have compared a *Superhawk-made* Outrigger tire to the West development tires. Instead, Exhibit 554 compared an Outrigger made in a different factory, either in Thailand or Sri Lanka, to a West *ExtremeLift production tire* made later using a different mold. Accordingly West's claim that Exhibit 554 "unequivocally shows that the *very development tire* provided to Genie was not a genuine Outrigger" (WBR20, emphasis added) is simply false; the West tire Cape tested was a *production* tire, not a *development* tire, and the Outrigger tire was not a relevant comparator either. Tires made in different factories may not be identical. See SER217.

Exhibit 554 was irrelevant because it was not probative of the Solideal mold issue. The real reason West wanted it admitted was to establish differences between its ExtremeLift *production* tire and a genuine OTR Outrigger tire, an issue irrelevant to West's test tires, and to establish that West had not misappropriated OTR's trade

secrets. But West made this point anyway in questioning an OTR expert, Jerry Leyden, SER408-16, and the jury found no misappropriation of trade secrets. West was therefore unharmed by the exclusion of Exhibit 554.

### 3. The District Court did not abuse its discretion in excluding OTR'S lawyer's deposition, and its exclusion did not prejudice West.

The District Court also excluded deposition testimony from Todd Deveau, the attorney who prosecuted OTR's application for the '169 Registration before the USPTO, in which West's counsel asked for Deveau's opinion on the candor required of a trademark applicant. But that was inadmissible legal opinion about what had to be disclosed. In addition, as the Court properly noted in ruling on OTR's objection, West was able to question Evans himself about the difference between his email and declaration, ER80, ER86, which it did, SER224-25. Moreover, the complete prosecution history of the '169 Registration was in evidence. ER116–263. The Court did not abuse its discretion in excluding Deveau's legal opinion, and the remainder of Deveau's testimony was cumulative of Evans' testimony, the email and the '169 Registration file.

West's claim that Deveau's intent was *relevant* to its fraud claim is beside the point of his opinion's *admissibility*. Exclusion of legal opinions falls "well within" a trial court's discretion. *United States v. Boulware*, 558 F.3d 971, 975 (9th Cir. 2009). West is also wrong in calling Deveau's testimony about what was "material" to the USPTO a factual statement, as opposed to his opinion as a trademark lawyer. And to top it off, on the supposedly critical issue of Deveau's intent his actual answer was that he did not know why Evans' email differed from his declaration. See SER684 ("To the extent of whether or not something in this e mail is or is not in this declaration, you know, I don't know. If something's left out, I'm not sure I know why it was left out."). West's omission of this additional page of testimony from its excerpts and brief—compare ER779—is conspicuous. Under those circumstances the Court cannot be said to have abused its discretion.

### 4. The District Court did not abuse its discretion in admitting the Solideal-Superhawk Agreements

The District Court ruled that agreements made between affiliates of Solideal and Superhawk regarding Superhawk's production of Outrigger tires were admissible business records,

based on a declaration of a Solideal representative, David Fleischauer. ER275–91 (agreements); ER323–35 (declaration). That ruling was not an abuse of discretion.

At a pretrial conference West's counsel argued, as West does at WBR23–26, that Fleischauer could not attest to the authenticity of business records of Solideal affiliates. SER422-23. As OTR pointed out, though, the agreements were produced by Solideal in response to a subpoena for *Solideal's own* business records, and were thereby represented as such, as explained by the Fleischauer declaration. ER333–35¶¶31–34. In addition, in emails quoted above Superhawk's Zhang confirmed that Solideal and Superhawk had such agreements in place. See *supra* p. 10-12. In admitting the agreements the Court noted that Fleischauer's declaration complied with Fed.R.Evid. 803(6), and correctly added that "[t]he fact that those records weren't created by the declarant is not critical by the very terms of the rule itself". SER420.

In addition, West's assertion of prejudice is thin. West argues that "the agreements improperly intimated that OTR could stand in the shoes of a Solideal-affiliate and enforce the affiliate's contract/business relationship rights with Superhawk." WBR26.

But whether OTR was a formal third-party beneficiary of the agreements is irrelevant. West cites no authority for the notion that Washington tortious interference law requires proof of third-party beneficiary status; rather, all that is required was the undisputed business relationships between OTR and Genie, between OTR and its partner (in Blackstone/OTR) Solideal, and Solideal's use of Superhawk (under these very agreements) to further those relationships by making tires, as well as the probability of future economic benefits. See SER121.

**B.     The District Court's Judgment as a Matter of Law that OTR did not procure its '169 Registration by fraud was correct.**

Although the District Court allowed West's claim that OTR defrauded the USPTO to go to the jury, after trial it ruled that West had not introduced the required "clear and convincing" evidence of fraud, and granted OTR judgment as a matter of law ("JMOL"). See ER25-26 ("OTR did not procure their '169 Registration by fraud on the USPTO."). That ruling was plainly correct; indeed, West failed to offer *any* evidence on several elements of its fraud counterclaim.

### 1. Elements of Trademark Fraud.

West's trademark fraud counterclaim presented five elements: (1) false representation regarding a material fact; (2) knowledge or belief the representation is false; (3) intent to induce reliance on the misrepresentation; (4) actual, reasonable reliance by the USPTO Examiner; and (5) damages proximately caused by that reliance. *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1439, 1444 (9th Cir. 1990), citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir.1990). The "reliance" element required West to show that the Examiner would have refused the '169 Registration but for OTR's purported misrepresentation.[9] West asserts two such grounds: "functionality" and "lack of distinctiveness."

*Trade Dress Functionality.* The trade dress of an article is functional if, taken as a whole, the collection of its elements is "*essential* to the use or purpose of the article" or "affects the cost or quality of the article" *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001) (emphasis added). A trade dress that is not essential to use and does not affect cost or quality of an article

---

[9] The registration was actually applied for by plaintiff F.B.T.

is not functional, even though elements of it may be functional. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258-59 (9th Cir. 2001). As explained below, West has not shown that OTR's supposed omission was even *relevant* to, let alone a but-for *cause* of, the Examiner's ultimate determination that functionality did not bar registration.

*Acquired Distinctiveness/Secondary Meaning.* Trademark registration of a design or configuration of the product itself requires a showing of "acquired distinctiveness" or "secondary meaning". *Wal-mart v. Samara Bros.*, 529 U.S. 205, 210-11 (2000). Under §2(f) of the Lanham Act the USPTO may accept, as *prima facie* evidence of distinctiveness, "proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the *five years* before the date on which the claim of distinctiveness is made." 15 U.S.C. §1052(f) (emphasis supplied). As described below, OTR submitted evidence of *fourteen* years of "substantially exclusive and continuous use" of the Outrigger tread design, which convinced the Examiner that its trade dress had secondary meaning.

### 2.  Legal Standards.

Fraud must be proved by clear and convincing evidence, that is, evidence sufficient to leave the jury with a firm belief or conviction that it was highly probable that fraud was committed. *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). Accordingly, the burden of proving trademark fraud is "heavy". *Robi*, 918 F.2d at 1444; *Hokto*, 738 F.3d at 1097; see also *In re Bose Corp.*, 580 F.3d 1240, 1242 (Fed. Cir. 2009) (trademark fraud must be "proven 'to the hilt' with clear and convincing evidence" leaving "no room for speculation, inference or surmise... obviously, any doubt must be resolved against the charging party"; "[s]ubjective intent to deceive, *however difficult it may be to prove*, is an *indispensable* element in the analysis") (emphasis added).

This Court reviews the grant of JMOL *de novo*, affirming where there is no legally sufficient—in this case, clear and convincing—evidentiary basis on which a reasonable jury could find for the non-movant. See *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 n.12 (9th Cir. 2016).

**3.** **As the District Court held, West failed to prove fraud by clear and convincing evidence.**

Though it recites the words "clear and convincing," West does not cite any evidence that could have produced a *firm belief or conviction* that it was *highly probable* that OTR made a knowingly false statement, intending to deceive the Examiner, upon which the Examiner relied. The entire USPTO trademark prosecution file was admitted into evidence. ER96-263. It shows that the Examiner initially (and routinely, SER230) rejected OTR's initial application, citing functionality and non-distinctive design. She specifically noted OTR advertising touting the Outrigger's "State of the Art, Self-Cleaning, Directional Tread." ER228-32.

In arguing that it proved OTR overcame that initial denial by fraud, West falsely characterizes an email from Ray Evans to OTR's trademark counsel (Deveau) describing Evans' impressions of the Outrigger tire. WBR28, citing ER347 (email). The email described the "unique" physical features of the tread design, including its "directional tread pattern that is unique from others due to the spacing of the lugs, the unique angle of the lugs [as measured to the centerline], and how parallel the edges of the tread lugs are to

each other," and noted that "[t]he slots or voids between the lugs are uniform in width from the centerline of the tire out to the shoulder while *most* other tires are not." ER347 (emphasis supplied). Evans then noted that "[a]ll of these design elements *contribute* to the tire's self-cleaning ability that is needed to operate in adverse muddy conditions and also make it readily recognizable as an OTR Outrigger tire." ER347 (emphasis supplied). Evans thus cited a "unique" tread that included four features: one unique in itself; two he did not characterize separately; and one not unique, but merely unlike "most other tires." ER47. Evans' email thus unmistakably describes a *pattern* of elements that is unique, made up of *elements* only one of which is independently unique for a tire tread.

West's arguments on appeal flatly mischaracterize Evans' statements. It claims that Evans actually described "*four* 'unique' features" of OTR's tread. WBR28 (emphasis supplied). But even West acknowledges that all Evans said was that these features "contribute" to the tire's self-cleaning ability. WBR28. In fact, *all* directional tread tires like these are self-cleaning, SER297, SER219, SER222, a point Evans himself made in his declaration,

ER154¶6. And the fact that these features figure in self-cleaning is also mentioned in many other places in the file. ER221-5 (Smith Declaration); ER217 (First Amendment); ER161 (Michelin ad); ER145 (Second Amendment). There is simply no case that the relationship of the tread to self-cleaning was kept from the Examiner.

The gravamen of West's fraud claim is that Evans' declaration to the USPTO did not include the same language regarding tread-cleaning functionality. According to West, this difference represents what must be clear and convincing evidence of a material, knowing false representation, as well as evidence that Evans intended to deceive Examiner Powers. The District court correctly disagreed. ER22-23. In fact, OTR had already provided the Examiner with the information West claims was missing but material in a declaration from Patrick Smith. ER223-24. The District Court thus rejected West's claim that *Evans* needed to say more:

> Patrick Smith had already told this very thing to the Trademark Examiner in a declaration that was filed seven month[s] earlier. Evans never opined in either his email or his declaration that the specific steep lug angle of the Outrigger was *necessary* for the self-cleaning ability of the tread on that tire. And Evans' trial testimony was not to the contrary.

ER23 (emphasis added). In OTR's response to the Examiner's initial denial, OTR explained that "the tread design on *all* R-4 tires includes the use of alternating, interlaced angled lug bars," which are "commonly referred to as 'directional tread,'" and that "[*i*]*t is true* that the use of angled lug bars, or directional tread, which is present on all R4 tires, *serves a self-cleaning function.*" ER216-17 (emphasis added). It is thus undisputed that OTR told the Examiner exactly what West claims Evans left out, seven months before the Evans declaration was filed.

Because Evans in his email addressed the functional contribution of features other than the "uniquely angled" lug bars, none of which he called unique to the proposed trade dress, evidence of intent to deceive the Examiner, or of her reliance on Evans' purported omission, is not only not clear and convincing; it is non-existent. The relevant test of functionality is not whether individual design elements or features of a trade dress "contribute" to a use or purpose, but whether the trade dress embodied collectively by those elements–that is, what OTR was trying to trademark—is "essential" to the use or purpose. *Au-Tomotive Gold,*

*Inc. v. Volkswagen of Amer., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006).

OTR never described its tread design *without* relying on the unique angle of the lugs that characterized it, and thus never made any representation that could have led the Examiner elsewhere. For example, it said so three times in Smith's first Declaration, describing it as "[t]he difference" between the Outrigger and other tires and stating that the lug angle made the tire "immediately recognizable and clearly distinctive" and that the tread design "relates solely to the angle of the lug bars." ER222-23. And OTR also made clear generally that, while "the use of angled lug bars...serves a self-cleaning function," the "steeper angle of the Outrigger lug bars, *and therefore the design claimed* in the above-referenced application, provides no utilitarian advantage over other designs." ER217. Indeed, as expert Jerry Leyden testified, the lug angles were counter-functional; a tire designer seeking to enhance self-cleaning and traction would *not* choose the steep lug angles that were unique to the Outrigger. SER296-98.

West also perfunctorily argues that Smith's declaration was "false" because it supposedly reflected consumer views without his

having consulted consumers. WBR27-28. But Smith never said he had done so in his declaration, see ER221-25; nothing in the declaration suggested he was expressing anything other than his own view, *i.e.*, that consumers "can" recognize the tire by its appearance. ER223. Smith also attached a photograph of an Outrigger next to a competitor so that the reader "can" see the difference:



ER227.

No reader of Smith's declaration would infer that he had consulted customers or observers. As the District judge reasoned, "it is hard to fathom that a sophisticated Trademark Examiner would just assume Smith had in fact actually spoken to tire manufacturers, distributors and customers. If the viewpoints of tire manufacturers, distributors and customers had been critical to the Examiner, she would have demanded more proof." ER24. And the

Court also noted that the Examiner herself "indicated [OTR] could, but was not required to, provide 'dealer and consumer statements of recognition of the applied-for mark as a trademark,'" undercutting both misrepresentation and reliance.[10]

Of course, the distinctiveness of the Outrigger tread pattern was made evident to the Examiner from a number of sources other than Smith's opinion. Evans provided his own opinion, based on 50 years' experience in the industry, that the Outrigger tread was distinctive and immediately recognizable. ER156. The Evans declaration also included an appendix with 25 examples of other, conventional R-4 tread designs. ER160-75. And the Examiner identified a number of examples of conventional industrial tread designs in her own research. ER238-51. And the trademark prosecution file also included evidence of a long period (from 1998 through, at that time, 2012) of continuous use, and sales in excess

---

[10] West also relies on an email from Taylor to Solideal that mentioned the projected registration of the Outrigger trade dress. ER348-51. Those statements were made after the trademark prosecution was completed, and Taylor never made *any* statements to the USPTO. In fact, West has never contended that Taylor made any knowing misrepresentation with the intent to deceive Examiner Powers.

of $48 million of Outrigger branded tires with the distinctive tread. ER151–52.

Because the Examiner was plainly aware of what West now claims was concealed, West also failed to prove reliance by the Examiner on anything Evans or Smith did not say, even if West had shown falsity. There was no evidence from which a reasonable juror could find Examiner Powers issued the registration in ignorance of the assertion that alternating, interlaced angled lug bars contribute to a tire's self-cleaning ability, something she was told repeatedly and figured out herself, or that Smith had not surveyed consumers. West takes no notice of these facts; indeed, it literally ignores the great bulk of the lengthy trademark file, including the Examiner's own research and thorough analysis, in favor of a few selected "omissions" viewed out of context. This is not how fraud cases are evaluated.

Finally, West was also required at trial to prove subjective intent to deceive the Examiner by the same clear and convincing evidence. It makes no argument on appeal that it did so as to Evans or Smith (or anyone else), much less one that could surmount the clear and undisputed evidence that the Examiner actually

considered the subject of each purported omission. Indeed, it is hard to imagine how intent could even be inferred from the supposed omission of a statement in one declaration that is accurately addressed elsewhere in the some process, to the same recipient.

*****

Nothing in West's brief identifies adequate support for any of the elements of its fraud counterclaim. Because there was no evidence from which a reasonable jury could have found that any, much less each, element was proved, the District Court properly granted OTR JMOL on the issue.

## C. The jury's Verdicts on OTR'S false Designation and State-Law Claims were amply supported by the evidence.

In sections III through VI of its brief, West argues that the jury's verdicts in favor of OTR on four of its claims should be reversed: (1) reverse passing off; (2) the WCPA; (3) tortious interference with the business relationship between OTR and Superhawk; and (4) tortious interference with the business relationship between OTR and Genie. West does not seek a new trial

39

on these counts; instead, it apparently seeks outright reversal of the verdict and (implicitly) judgment in its favor.

This Court "review[s] the district court's decision denying judgment as a matter of law *de novo*... If sufficient evidence is presented to a jury on a particular issue and if the jury instructions on the issue stated the law correctly, the court must sustain the jury's verdict... A jury's verdict must be upheld if supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 14-56366, 2017 WL 1055586, at *9 n.5 (9th Cir. Mar. 21, 2017) (citations and internal quotation marks omitted). In addition, to preserve such a challenge a party must: (1) raise it in a motion for judgment as a matter of law before the case is submitted to the jury; and (2) renew that motion post-verdict.

Because West did not adequately preserve its challenges to the verdicts, and because they are supported by substantial evidence, the judgment entered on them should be affirmed.

1.  **The Jury's Verdict in Favor of OTR on its "Reverse Passing Off Claim" Must be Affirmed.**

    a.  **West has only partially preserved its challenge to the reverse passing off claim.**

After OTR rested, West requested a directed verdict on three issues: (1) "reverse passing off" (false designation of origin) under 15 U.S.C. §1125(a) (SER199); (2) counterfeiting (SER201); and (3) liability of defendants other than WWW (SER206-09). On the §1125(a) claim West acknowledged that it had requested production of a tire using OTR's Solideal mold, but argued that the evidence demonstrated this was never done. SER199. West also argued that there was no proof of "buffing off" of the Outrigger mark. SER200. The trial court denied the motion. SER211. In renewing the motion at the close of all evidence, West simply noted that "with respect to 1125(a), I will just maintain what I had said before." SER163-64. The trial court denied that motion as well.

After the jury's verdict West filed a motion for judgment as a matter of law. On the reverse passing off claim West argued: (1) OTR could not prevail in light of the Supreme Court's decision in *Dastar Corp. v. 20th Century Fox Film Corp.*, 539 U.S. 23 (2003); (2) the evidence was insufficient to prove West "buffed off" the

Outrigger mark or used removable plates to conceal it; and (3) the evidence was insufficient to prove likelihood of source confusion. SER576-90. Of these arguments, only the second was argued before the case went to the jury.

"Under Rule 50(b), when the prerequisite of a timely motion for a directed verdict is not satisfied, a party cannot question the sufficiency of the evidence either before the district court through a motion for judgment notwithstanding the verdict or on appeal." *Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1345 (9th Cir. 1985) (citation and internal quotation marks omitted). A post-trial motion seeking judgment as a matter of law "must be preceded by a motion made at trial that sets forth the specific grounds raised in the renewed motion." *Wallace v. City of San Diego*, 479 F.3d 616, 631 (9th Cir. 2006), citing Fed.R.Civ.P. 50(a)(2). "A directed verdict motion can therefore serve as the prerequisite to a j.n.o.v. only if it includes the specific grounds asserted in the j.n.o.v. motion." *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1429 (9th Cir. 1986).

West made two JMOL motions before the case was submitted, one at the close of OTR's case and one at the conclusion of the

evidence. Neither articulated any argument under *Dastar*, and neither argued that OTR had failed to prove a likelihood of confusion. Accordingly, neither argument was properly preserved for appeal. *Wallace*, 479 F.3d at 631.

### b. Substantial evidence supports the jury's verdict on "reverse passing off."

The jury was instructed that, to prove its "reverse passing off" claim, OTR was required to establish the elements of false designation and likelihood of confusion. SER118. West does not challenge this instruction, thus the jury's verdict must be affirmed so long as substantial evidence supported the conclusion that these elements were proved. *Harper*, 533 F.3d at 1021.

### 2. Substantial evidence supports the jury's finding that West used a false designation of origin.

OTR proved, rather handily and largely in Sam West's own words, that West knowingly obtained Solideal-authorized Outrigger tires from Superhawk's Zhang for testing by Genie, but asked Zhang to remove the Outrigger trademark that would have identified their true origin. As detailed *supra* p. 9, when Zhang told West that it would be "dangerous" to make the tires until he obtained a new mold some 50 days later, West urged him to use the

Solideal mold with the branding removed, claiming urgency, dangling repeated promises of future high sales volume and assuring Zhang that "nobody will know" and "we will not say anything." West specifically asked Zhang to "buff off the Solideal name on the sidewall or just remove the plate" and told Zhang that "[i]f we take out the nameplate and sidewall information, nobody will know," ER301, and "I hate to ask, but we just get one chance." SER317.

Notwithstanding that Sam West asked Zhang to make false designations, West contends that OTR failed to establish false designation because he requested removal of *Solideal's* name, not OTR's *Outrigger* name; this despite the fact that Zhang's email to West of May 4 confirms that the tires Superhawk was making were branded Outrigger. ER295. But West fails to explain why it would matter whether West misrepresented a Solideal tire or an OTR tire as its own product. By asking Zhang to remove the name from the tire, West knew it was falsely designating its true origin.

West next argues that Leyden, OTR's expert, testified that he was unable to find demonstrable evidence of "buffing off" in his inspection of an unbranded sample tire. West mischaracterizes the

testimony. Leyden confirmed that Superhawk used blank plates; he testified that he conducted a "detailed examination to those blank plates because there appeared to be something on the plate," SER214, but found "nothing demonstrable," SER215. West's suggestion that this testimony was conclusive is just wrong. In any event, the jury was free to conclude that Zhang had done what West had asked him to do in plain terms.

But there is more. West makes no mention on appeal of the unbranded "development" tire it introduced as a demonstrative exhibit at trial. On cross-examination, West's expert, Richard Pendino, actually identified four places on that tire where spring plates had molded blank depressions into the sidewall. SER186-87, SER148-51. West argues (with neither authority nor explanation) that Taylor's "[s]elf-serving rebuttal testimony" that those blank areas correspond to where OTR puts its name, phone number, and other contact information on the Outrigger tire is "legally insufficient to sustain a finding that the Outrigger name actually was covered up by a spring plate." WBR39. But the jury was able to compare the test tire to a branded Outrigger tire to determine for itself whether Taylor's description was accurate—and in addition

could rely on West's repeated importuning of Zhang to use blank plates to remove the Outrigger markings, as Taylor described.

West argues that OTR's failure to introduce its original mold gives rise to an adverse inference that it would be unfavorable to OTR. But West never asked for such an inference or corresponding instruction below, much less establish that such an instruction would have been proper. Nor did West actually establish that OTR has the mold; its claim in that respect is based on a hearsay statement by Solideal's Mario Bouchard in an email to Fred Taylor indicating that a number of molds had been removed from Superhawk and were at Solideal's China facility. ER341. Bouchard, of course, is not a representative of OTR. And his hearsay statement shows at most that "a number of molds" were in *Solideal's*, not *OTR's,* possession, though did not identify the mold Superhawk used to make the test tires as one of them. In any event, West argued this point to the jury, SER143, without success. It provides no basis for reversal.

The jury likewise did not credit West's argument that the West-Zhang emails proved that Superhawk used its own mold, not OTR's, to produce the test tires. West cites an April 10, 2012, email

from Zhang indicating that "[Superhawk's] mould is slightly different at pattern design with Solideal." ER308. But it is clear in context that Zhang is referring to the mold he would have in 50 days, as shown by West asking Zhang to switch molds out if his mold was ready early, ER307. Moreover, West repeatedly urged Zhang to use the Solideal mold, and the jury was entitled to conclude he did.

Finally, again misapprehending the testimony of Leyden, West argues that OTR cannot establish false designation because Leyden noted differences in internal construction between the test tire and a Thailand-made genuine Outrigger tire. But Leyden found differences in the internal construction (plies) of the two tires, not their tread design. ER343, ER431. Leyden explained that the structural differences he observed (specifically, differences in "ply lay-up") were unsurprising given that they were made in different factories by different companies. ER433, ER435. And West presented no evidence that the dis-branded development tire was structurally (or at all) different from a genuine Outrigger produced *in China by Superhawk*. The jury was instructed that it "should consider both direct and circumstantial evidence," SER117, and it

was free to infer that Zhang actually did what West begged him to do. In any event, even absent direct evidence, "[c]ircumstantial evidence may be sufficiently persuasive." *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008). Construed in the light most favorable to OTR, the evidence showed that (1) In April 2012 Superhawk had only one mold for the tire West urgently needed; (2) that mold belonged to Solideal and produced Outrigger-branded tires; (3) Superhawk needed 50 days to create a mold of its own; (4) West asked Zhang to use the Solideal mold but remove the existing branding; (5) West's own expert identified four places where it appeared that had happened; and (6) those blank spots corresponded with the location of Outrigger branding information on an OTR tire. That evidence was more than enough to support the verdict.

### 3. Substantial evidence supports the jury's finding of likelihood of confusion.

As explained above, West failed to preserve its argument that the evidence was insufficient to support a finding of likelihood of confusion. It is also forfeited by the sparseness of West's argument on this point. "[P]erfunctory and undeveloped arguments, and

arguments that are unsupported by pertinent authority, are waived." *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010).

West's reliance on excluded evidence and testimony also dooms this argument. It insists that the evidence demonstrates that Genie knew the test tires were not genuine Outriggers because Genie purportedly compared "the parties' respective tires." But West unabashedly relies on evidence never presented to the jury–excluded testimony of Genie's representative (Green) regarding its testing of different tires. WBR42-43, citing ER538–542[11] and ER359–81.) In ruling on the sufficiency of evidence, though, "[t]he record should be taken as it existed when the trial was closed." *Elbert v. Howmedica, Inc.*, 143 F.3d 1208, 1209 (9th Cir. 1998). West cannot challenge the jury's verdict based on evidence it never heard.

In any event, West's own confusion in framing this argument underscores the likelihood of confusion. West confidently asserts

---

[11] West included excerpts from Green's deposition at ER527–80, but did not include the highlighting clearly designating what testimony was and was not admitted into evidence that is in the record, see ECF527-3. OTR has included a copy of the deposition with highlighting at SER623-682.

that Genie "knew" the test tires were not genuine Outriggers. But that's precisely the problem; the test tires were genuine Outriggers, with just their branding removed. By insisting that Genie thought West's tires weren't Outriggers when they were, West has conceded *actual* confusion.

### 4. *Dastar* does not support reversal.

Finally, West contends that *Dastar* stands for the proposition that "absent a valid underlying intellectual property protection (*i.e.*, patent, copyright, trade dress or trade secret), there can be no false designation of origin." WBR31. But that's not what *Dastar* held. *Dastar* did not limit Lanham Act false designation claims to cases involving protectable intellectual property; rather, it limited them to "producers of tangible goods." *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010). In fact, *Dastar* explicitly recognized that §1125(a) prohibits the reverse passing off of *goods* falsely marked, noting that "every Circuit to consider the issue found §43(a) broad enough to encompass reverse passing off." 539 U.S. at 30. *Dastar* addressed the narrow circumstance in which a plaintiff alleges a defendant has falsely designated the origin of a "communicative product... valued not

primarily for its physical qualities, such as a hammer, but for the intellectual content that it conveys, such as a book or... a video," and declined to extend the Lanham Act to cover false designation of such items to avoid "conflict with the law of copyright." 539 U.S. at 33. But *Dastar* did not address cases where it is alleged that a defendant's produced tangible goods are so similar to the plaintiff's as to confuse consumers. That is the issue that was presented to the jury in this case, and thus *Dastar* does not undermine these verdicts.

West's reliance (WBR33-34) on *Bretford Mfg., v. Smith System Mfg.*, 419 F.3d 576, 578 (7th Cir. 2005), and *CMSI, Inc. v. Pacific Cycle, Inc.*, 2006 WL 2942794 (W.D. Wash. Sept. 15, 2006) is misplaced. In *Bretford* the defendant sought to copy plaintiff's design for an adjustable height table. Faced with a request from a potential customer to see a sample table, and unable to fabricate its own leg assemblies, the defendant affixed a leg assembly from a Bretford table to its own tabletop. The Seventh Circuit found these facts insufficient to establish a reverse passing off claim.

While the appeal of *Bretford* to West is clear, it does not, as West wishes, hold that a defendant in a hurry can use a

competitor's product in place of its own. The Seventh Circuit did not absolve the defendant in *Bretford* because it thought *Dastar* required "valid underlying intellectual property protection" of the Bretford design; rather, Bretford's claim failed because the Bretford legs were only one component of the table. The defendant was, as claimed, the "origin" of the finished table "no matter who made any component or subassembly." *Bretford*, 419 F.3d at 581. In this case OTR's tire was not a component of a final product manufactured by West. OTR's genuine Outrigger tire *was* the final product West represented as its own.

*CMSI* is likewise unavailing. In that case the defendant "approached CMSI to discuss selling CMSI scooters under the Schwinn mark." 2006 WL 2942794, at *1. When that idea did not work out, the defendant began selling scooters virtually identical to CMSI's, with only trivial differences. On a motion for preliminary injunction, the court assumed that the defendant "knew that Benzhou [a Chinese manufacturing facility] manufactured scooters for CMSI, and commissioned Benzhou *to manufacture a scooter virtually identical* to CMSI's Milano model." *Id.* (emphasis added). But that court's observation that reverse passing off requires more

than mere copying does not help West because Superhawk did more than just copy the Outrigger tire; it used the Outrigger bladder and mold to produce a genuine Outrigger which West then passed off as its own.

## D.    The Jury's WCPA verdict must be affirmed.

### 1.    West has not preserved its challenge to the WCPA verdict.

As noted *supra* p. 41, West initially moved for JMOL on only three issues: "reverse passing off," counterfeiting and liability of defendants other than WWW. In renewing the motion at the close of the evidence, West added arguments on OTR's trade secret claim (SER160), trade dress claim (SER161), and fraud (SER165). Asked if there were claims West was not seeking directed verdict on, counsel responded:

> Well, we believe that unfair competition and—consistent with the Court's earlier orders, we believe that unfair competition and—unfair competition of the [WCPA] and interference relate directly to these so they are interdependent with the trade dress and trade secret claims. They rise or fall with them.

SER165. As noted above, a JMOL motion at the close of evidence is required to preserve a challenge to the sufficiency of evidence on appeal. *Farley*, 786 F.2d at 1345. West's passing mention of the

WCPA articulated no argument and identified no law or facts that might entitle West to judgment on OTR's WCPA claim. Nor did West preserve his current challenge to that verdict in its post-verdict motion for JMOL under Rule 50(b). In that motion West simply argued that OTR could not establish a violation of the WCPA because the jury rejected OTR's trademark, counterfeiting, and trade secret misappropriation and because West claimed it was entitled to judgment on the false designation and tortious interference claims notwithstanding the jury's verdict. SER601-02. In other words, West merely argued that OTR could not prove a WCPA violation unless it proved one of those torts as an underlying predicate.

On appeal, in contrast, West now argues that OTR could not prevail under the WCPA because it failed to establish that West's conduct impacted the public interest. WBR43 No such argument appears in West's post-verdict Rule 50(b) motion; accordingly the issue is not preserved for appeal.

## 2. Substantial evidence supports the jury's WCPA verdict.

### a. The jury was properly instructed on the elements of OTR's claim under the WCPA. SER124.

On appeal, West challenges only the sufficiency of evidence on the public interest element. West's forfeiture of the issue aside, its argument also fails because OTR presented evidence "adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

The jury was instructed that one way OTR could prove West's conduct affected the public interest was to "find that West's use of the OTR trade dress or the removal of the '*Outrigger'* trademark name from Outrigger tires or the obscuring of the '*Outrigger'* trademark name on Outrigger tires [was] likely to cause confusion in the marketplace." SER126. West does not challenge this instruction, nor does it argue that OTR failed to present substantial evidence of likely confusion in the marketplace. As discussed above, West has conceded that it caused Genie, a buyer in the marketplace, to be confused into thinking a real Outrigger was a

West test tire. That evidence of confusion was more than enough to sustain the WCPA verdict.

### 3. The jury's verdict in favor of OTR on its tortious interference claims must be affirmed.

Finally, West seeks reversal of the jury's verdict on OTR's claims for tortious interference with respect to its contracts and relationships with both Superhawk and Genie.

### a. West has not preserved its challenge to the tortious interference verdicts.

West has again failed to preserve these arguments by failing to include them in its Rule 50(a) motion prior to submitting the case to the jury. Like its WCPA argument, West's only reference to tortious interference claims in its motion for directed verdict was a passing mention that it believed a claim or claims for "interference relate[d] directly to [and] are interdependent with the trade dress and trade secret claims. They rise or fall with them." SER165. West made no effort to elaborate as to which interference claims or relationships it was referring to or how they depended on other claims. West has forfeited these arguments.

### b. Substantial evidence supports the jury's verdict on the claim of tortious interference as to Superhawk

Although West argues that these instructions were wrong and that several exhibits used to prove this claim should not have been admitted, it challenges sufficiency only as to the third element, contract breach. All three arguments fail.

### c. West's challenge to Instructions 32 and 35 does not undermine the sufficiency of the evidence.

West argues that the District Court erred in giving Instruction 32 because OTR was not an intended third-party beneficiary of the contracts between Superhawk and Solideal. West does not argue that the instruction did not correctly state the law; rather West argues that the evidence was insufficient to prove tortious interference under some other instruction. The District Court correctly ruled that West's failure to include this argument in its pre-verdict Rule 50(a) motion bars it. ER40, citing *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). Further, in reviewing sufficiency of evidence the court considers the instruction the jury actually received. Any purported defect in it presents a separate issue entirely.

To the extent West means to challenge Instructions 32 and 35 independent of sufficiency of evidence, its argument misconstrues Washington law on tortious interference with business expectancy. West believes that where a plaintiff claims a defendant induced the breach of a contract, the plaintiff must be a party to the contract. Not so. At this Court's request, the Supreme Court of Washington recently identified the elements of such a claim:

> (1) the existence of a valid contractual *relationship or business expectancy*, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose *relationship or expectancy* has been disrupted.

*Certification from the United States Court of Appeals for the Ninth Circuit in Centurion Properties III, LLC v. Chicago Title Ins. Co.*, 186 Wash. 2d 58, 81 (2016). In other words, OTR did not need to have a "relationship" with Superhawk; it needed only a business expectancy from the Solideal/Superhawk agreement that West induced Superhawk to breach; one such expectancy was that Solideal would not import Superhawk-made tires into the U.S. West does not argue that the evidence was insufficient to show that OTR had a business expectancy from the Solideal/Superhawk

agreements. Its argument thus does not support reversal of the jury's verdict.[12]

### d. OTR established a breach of the non-competition agreement between Solideal and Superhawk.

Finally, West cursorily argues that OTR failed to demonstrate breach of a Solideal/Superhawk contract. It begins with the stunning assertion that "Superhawk itself was not a party to any agreement until 2013, after the alleged misconduct began." WBR49. West made no such argument in its Rule 50(a) motion at the close of evidence or its Rule 50(b) motion following the verdict. West cites a 2013 Processing Agreement (ER275-82), but ignores every other contract introduced into evidence, including a 2005 agreement (ER289-91) that contains a non-compete provision extending for 10 years beyond termination (ER291). Taylor explained that the parties to the agreement at ER289-91 were "the Chinese name for Superhawk and Solideal." ER278. Of course, the jury could also rely

---

[12] West alternatively argues that the jury's Solideal/Superhawk tortious interference verdict should be reversed because OTR could not prove its claim without introducing the relevant agreements. As noted above, in ruling on sufficiency a court considers the evidence actually presented to the jury, not evidence that should or should not have been excluded. *Elbert*, 143 F.3d at 1209.

on Zhang's 2012 emails telling West "we have agreement with Solideal, cann't [*sic*] do now," ER301, and "we have none-competition agreement with Solideal," ER295. Sam West's request to "take out the nameplate and all the sidewall information, nobody will know," ER308, confirms he knew about the agreement and understood he was interfering with it.

West also argues that "the agreements" he otherwise ignores "only prohibited making competing products *without [Solideal's] prior written consent.*" WBR50 (emphasis original). According to West, "Superhawk received written consent to manufacture 'bias tires' for its own benefit in 2009, and thus there was no breach." WBR50. But consent to make "bias tires" is not consent to make Outriggers, much less unbranded Outriggers for an OTR competitor. Zhang knew Solideal had not given such consent; otherwise he would not have thought West's request "dangerous." And West conveniently overlooks that the agreement it cites requires "no use of Solideal molds" and "no copying of Solideal tread patterns." ER352. The jury's verdict that West tortiously interfered with OTR's business expectancy from the Superhawk/Solideal agreements should not be disturbed.

### e. Substantial evidence supports the jury's verdict on the claim of tortious interference as to Genie.

#### i. The jury received Instruction 33 on the elements of tortious interference as to Genie. SER121.

West does challenge this instruction, or dispute that it intentionally induced or caused termination of the business relationship between OTR and Genie; West argues only that it did not compete improperly

The jury was instructed that "'Interference by improper means' is interference that violates a statute, a regulation, a recognized rule of common law, or an established standard of the trade or profession." SER123. West's violations of both statute and common law were (as discussed above) amply proven. West took Genie's business from OTR by interfering with the non-competition agreement between Superhawk and Solideal, and by falsely designating a dis-branded Outrigger as its own. That these wrongful acts caused West to get (and OTR to lose) Genie's business was obvious to the jury, but in any event West made no causation arguments either in its pre-verdict Rule 50(a) motion or its post-

verdict Rule 50(b) motion. The jury's verdict finding tortious interference with OTR's relationship with Genie should be affirmed.

## E.    The Preliminary Injunction is not before the Court in these appeals.

West argues that the District Court erred in leaving the preliminary injunction in place after the verdicts. WBR52-54. Unfortunately for West, that injunction is not part of these appeals. Although West placed the words "PRELIMINARY INJUNCTION APPEAL" on its notice of appeal, it did not cite 28 U.S.C. §1292(a)(1) there (ER10) or in its brief's jurisdictional statement (WBR2).[13] More critically, the judgment West appeals did not include any injunction. ER15-16. West acknowledged as much when it joined a motion asking the District Court for a Rule 54(b) finding that the judgment was final even though the District Court had not made the same preliminary injunction permanent. SER566-69. The District Court granted that motion. SER60-62. And this Court has

---

[13] Oddly, West also failed to include the entire preliminary injunction order in its excerpts of record, opting instead for only three of its 11 pages. ER679-81. While OTR is tempted to leave West with the consequences of this default, it includes the entire order. SER106-116.

already declined to stay the injunction pending this appeal. SER691-92.

In any event, the District Court was right to leave it in place. Preliminary injunction rulings are reviewed for abuse of discretion, with subsidiary factual findings reviewed for clear error. *OTR Wheel*, 602 F.App'x. at 670, citing *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011). Two grounds independently support that ruling. *First*, if OTR is successful in seeking a new trial on its trademark infringement claims, as argued *infra* on cross-appeal, the injunction would remain in place as the District Court originally issued it (and as this Court affirmed). West does not argue to the contrary. As noted, the Court has already declined to stay the injunction pending this appeal.

*Second*, as the District Court noted, the injunction remains appropriate given the extensive wrongful conduct the jury *did* pin on West. In leaving the injunction in place despite the trademark infringement verdicts the Court noted that it continued to be supported by other verdicts, including false designation under the same statute, the Lanham Act:

The jury also found West culpable of false designation of origin under the Lanham Act in that they provided Genie with test tires from which the "Outrigger" trademark had been removed and passed those tires off as their own. It is this act of unfair competition which resulted in Genie deciding to purchase West's "ExtremeLift" production tires... If the injunction were lifted, West would have free reign to sell their "ExtremeLift" tires to Genie and any other customer.

ER42-44. Based on these violations, the District Court did not abuse its discretion in leaving the injunction in place. False designation under the Lanham Act is an appropriate ground for injunctive relief, see *Thompson v. Haynes*, 305 F.3d 369, 383 (Fed. Cir. 2002); *CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1014 (Fed. Cir. 1985), as are WCPA violations, see R.C.W. §19.86.090 ("Any person who is injured in his or her business or property by a violation of [the WCPA] may bring a civil action in superior court to enjoin further violations...."). The injunction includes provisions barring West from:

(b) Directly or indirectly using OTR's Outrigger trade dress, or any colorable imitations thereof, in connection with the sale, offer for sale, advertising or promotion of any goods or services; [and]

(c) Directly or indirectly: (i) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product or

service which tends to relate or connect such product or service in any way to OTR's *Outrigger* model tires[.]

SER116, as modified by this Court, 602 F.App'x. at 673. This is just what the jury found West did.[14] The Court should decline to disturb the preliminary injunction and leave to the District Court the question whether it needs to be modified after this appeal is decided.

## F. The District Court did not abuse its discretion in awarding OTR Prejudgment Interest.

### 1. Federal Law Claims.

West now argues that prejudgment interest is unavailable on OTR's false designation claim as a matter of law. WBR64. West claimed otherwise below, citing *FLIR System, Inc. v. Sierra Media, Inc.*, 965 F. Supp. 2d 1184, 1202 (D. Or. 2013) and arguing that "[w]hether prejudgment interest is awarded on Plaintiff's federal false designation claim is left to the sound discretion of the Court... guided by equity." SER617. West has thus waived its "matter-of-

---

[14] One of this Court's modifications was to remove language barring West from making false descriptions, which the Court then said had not been claimed to have injured OTR. After trial, though, the jury found that it had done so.

law" argument.[15] The argument is also wrong; prejudgment interest is available in §1125(a) cases despite the fact that 15 U.S.C. §1117(a) does not expressly mention it. *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 263-64 (2d Cir. 2014); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989) (federal common law authorizes prejudgment interest despite §1117(a)'s silence). This Court has also affirmed an award of prejudgment interest for a Lanham Act violation that included false designation of origin. See *Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512, 514 (9th Cir. 1989). The contrary conclusion in an unpublished District Court case, *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, 2009 WL 160235, at *5 (S.D. Cal. January 20, 2009), contains no analysis and is unpersuasive.

There is no clear standard for awarding prejudgment interest on Lanham Act claims in the Ninth Circuit. See, *e.g., Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*, 2010 WL 2132378, at *1 (C.D. Cal. May 24, 2010) (reviewing cases from other Circuits). *Cyclone*

---

[15] Indeed, because the parties did not disagree below, the District Court did not address the question. See ER16a-16f.

concluded prejudgment interest in Lanham Act claims was left to the sound discretion of the trial court, and awarded it because in that case the violation was not innocent or inadvertent. *Id.*; see also 5 McCarthy on Trademarks and Unfair Competition §30:93 (4th ed.) (majority view is to award prejudgment interest on Lanham Act violations, especially where conduct is intentional). Certainly the conduct reflected by the jury's verdicts was intentional, as was West's concealment of it. Accordingly the award of prejudgment interest on OTR's false designation claim was proper.

## 2. State Law Claims.

### a. Prejudgment interest was proper under Washington law.

There is no dispute that Washington law controls the award of prejudgment interest on OTR's state law claims. See *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 64 F.3d 1282, 1290 (9th Cir. 1995). Under Washington law "prejudgment interest is appropriate when the amount is "liquidated" or when it is for an amount due upon a specific contract and can be expressly determined under the contract. *Puget Sound Energy, Inc. v. Util. Partners*, 8 F.App'x 782, 783 (9th Cir. 2001) (citation omitted). A

claim is liquidated "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Hansen v. Rothaus*, 107 Wash. 2d 468, 472 (1986) (internal quotation omitted).

In this case, the jury award is "liquidated" under Washington Law. It was based on West's own objective sales data, tendered in discovery and calculated by OTR's expert, Francis Burns. The District Court noted that Burns' lost profit calculation was based on the number of tire/wheel assemblies West sold to Genie during a defined period and the profits OTR would have realized from the sale of the same number of assemblies during that period, ER16b-16c, and that "[r]ecords from Defendants and Plaintiffs allowed for this straightforward mathematical calculation. This was objective sales data requiring no speculation," ER16c. Nor does it matter that the amount was disputed, see *Aker Verdal A/S v. Neil F. Lampson, Inc.*, 65 Wash. App. 177, 190 (1992) ("A claim does not have to be agreed upon, stipulated or admitted in order to be liquidated."), or that West was able to persuade the jury to award less, *Scoccolo Const., Inc. ex rel. Curb One, Inc. v. City of Renton*, 158 Wash.2d

506, 520 (2006) (sum is liquidated "even though the adversary successfully challenges the amount and succeeds in reducing it.").

West's argument that OTR's state law claims did not include a categorical prohibition of future sales (WBR47) is hard to take at face value, especially since it cites no support. Burns testified to one amount of damages using a straight-forward calculation addressing all of OTR's claims. See ER16b ("The damages sought on those claims were the same as on all of the claims pled by Plaintiffs because Plaintiffs sought only a single award of damages."). West was always on notice that OTR was seeking one measure of damages and at trial Mr. Burns testified that he was "asked to calculate the economic harm to OTR as a result of West's sale of accused tires assemblies." SER198. West did not call its own expert or present any different calculation. See ER16c. Given that evidence the district Court properly ruled that OTR's damages were liquidated.

### 3.    Washington's 12% interest rate was properly applied.

West's argument (WBR67-69) that the District Court should have applied the federal interest rate instead of Washington's misapplies the cases it cites, misstates the District Court's order,

and ignores controlling Ninth Circuit law. West claims that *Blankenship v. Liberty Life Assur. Co.*, 486 F.3d 620, 628 (9th Cir. 2007), governs, but ignores *Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 961 (9th Cir. 2008)—which OTR cited and the District Court relied on in ruling that state law set the prejudgment rate where OTR prevailed on four state law claims and one federal claim. See ER16c-16d. West's claim that federal law always applies to federal claims (WBR68) runs afoul of *Oak Harbor*, which held that the federal rate need not apply if the substantive nature of the claims on which interest is awarded do not derive "from federal law alone." *Oak Harbor*, 513 F.3d at 961 (emphasis added) (applying Washington rate to prejudgment interest award where plaintiff prevailed on a state law claim). OTR's judgment was not based solely on federal law; it instead reflected multiple state law statutory (WCPA) and common-law violations.

The District Court also applied the correct Washington rate. Where a judgment contains mixed state claims for relief, then the court only applies one interest rate. *Unigard Ins. Co. v. Mutl. of Enumclaw Ins. Co.*, 160 Wash. App. 912, 925 (Div. 1 2011). The governing statute, R.C.W. 4.56.110, sets a specific rate for tort

claims (5.5%) and a default rate for all other claims (12%). The District Court properly applied the "all other claims" rate.

"In determining the appropriate interest rate, a court should examine the component parts of the judgment, determine what the judgment is primarily based on, and apply the appropriate category." *Unigard*, 160 Wash. App. at 925. West's reliance on the District Court's preliminary injunction order is irrelevant, especially when compared to its analysis of the verdicts on which the award at issue were actually based. As the Court correctly noted, the WCPA claim provided "the common thread between the false designation of origin claim and the tortious interference claims." ER16d. This was confirmed in the jury instructions, which linked the false designation claim to the WCPA violation, SER126, and provided that the first element of the WCPA claim (unfair or deceptive act or practice) could also be satisfied by West's tortious interference. SER124-25. And the Court also correctly noted that the verdict form told the jury that whether it found a WCPA violation depended on whether it found other violations, including false designation and tortious interference. ER16d, citing ER53-55. The District

Court thus correctly applied the Washington rate applicable to statutory violations.

**G. Having acknowledged that West's Fraud Claim should not have gone to the Jury, the District Court should have granted OTR Judgment or a new trial on its infringement claims.**

**1. Standard of Review.**

A District Court's determinations of questions of law are reviewed *de novo.* "An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1093 (9th Cir. 2007), citing *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir.2001). *Ocean Garden, Inc. v. Marktrade Co.,* 953 F.2d 500, 502 (9th Cir. 1991). Matters committed to the District Court's discretion are reviewed to determine whether the court abused its discretion; *Brookfield Communications, Inc. v. West Coast Ent.,* 174 F.3d 1036, 1045 (9th Cir. 1999).

**2. The District Court's Admitted Error in Placing Fraud Before The Jury Requires At Least A New Trial on OTR's Registered Trademark Claims.**

**a. The court erred in submitting the issue of fraud to the jury.**

At trial OTR timely moved for JMOL on its and West's

trademark fraud counterclaim, citing the elements required for such a claim under *Robi v. Five Platters, Inc.,* 918 F.2d 1439 (9th Cir. 1999), and *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) and arguing that West had not met its burden as to any of them. SER167-69. The District Court denied the motions. SER170-71.[16] As a consequence of that denial, the Court instructed the jury on West's fraud counterclaim, telling them that "[i]f you find West has proven all of the aforementioned [fraud] elements by clear and convincing evidence, you must find that OTR's registered trade dress is invalid." SER119. The verdict form indicates that the jury found fraud and, as it was instructed to do, then found OTR's '169 Registration invalid. ER53.

After the verdict OTR renewed its JMOL motion under Rule 50(b). After fully evaluating the parties' briefing and all evidence adduced at trial, the Court reversed its earlier conclusion, holding that West had not introduced substantial evidence to support any of the required elements: "the evidence of record permits only one

_____

[16] This Court has more recently set forth those elements in *Hokto*, 738 F.3d at 1097-98.

reasonable conclusion: OTR did not procure their '169 Registration by fraud on the USPTO. There is not 'substantial evidence' to support the jury's verdict to the contrary." ER25-26. As argued *supra* pp. 27-39, that conclusion was correct.

> **b.** **The District Court, failing to appreciate the magnitude of its error, denied OTR a new trial on trademark matters.**

The District Court's post-trial ruling on OTR's JMOL motion acknowledged that, as a matter of law, no reasonable juror could find that West had proven fraud. Implicit in this conclusion is that the jury should not have considered the issue at all. Instructing them to do so was a serious, indeed prejudicial, error: "Prejudicial error results from jury instructions that, when viewed as a whole, fail to fairly and correctly cover the substance of the applicable law." *White v. Ford Motor Co.,* 312 F.3d 998, 1012 (9th Cir. 2002), *as amended* 335 F.3d 833 (9th Cir. 2003).[17]

---

[17] In this appeal OTR does not challenge the wording of the Court's trademark fraud instruction; rather it argues that, based on its post-trial JMOL ruling, no fraud instruction should have been given at all.

Despite reversing course on fraud, the District Court declined to grant OTR's motion for new trial on trademark counterfeiting and infringement of its registered trademark because it was "not persuaded that West's fraud claim tainted the jury's verdict on the validity of OTR's registered trade dress." ER26. The Court apparently concluded that the jury somehow found that OTR's registered trade dress "is functional and/or lacks secondary meaning" *Id.* The Court's logic was revealed in a footnote:

> Question No. 1 on the Special Verdict Form [ER53]was whether the jury found by a preponderance of the evidence that the '169 registered trade dress was valid (non-functional and has secondary meaning [*sic*]). Only if it answered that question "No' was the jury to go on to Question No. 2 and determine if there was clear and convincing evidence that the registration had been procured by fraud.

ER26.

The Court thus thought the verdict form told the jury to consider fraud only after it addressed functionality and lack of secondary meaning. But it has that exactly backward: nothing on the form barred the jury from considering fraud first, or even from considering only fraud and skipping functionality or secondary meaning entirely. In fact, the most plausible reading of the responses to Questions 1 and 2 is that the jury found fraud and on

that basis held the Registration invalid, thus avoiding *any* consideration of functionality or secondary meaning.[18] Nothing on the verdict form, and nothing in the instructions, required the jury to decide whether West had overcome the statutory presumptions of non-functionality and secondary meaning as well as considering fraud on the USPTO; to the contrary, it mentioned three grounds on which the '169 registration could be invalidated, but only asked the jury specifically to address one of them—the one the Court later ruled was *not* supported by substantial evidence. While we can be certain the jury arrived at an erroneous conclusion on validity, we cannot know if the jury made any permissible conclusion.

### 3.    The District Court's error was not harmless.

The District Court recognized its error in letting the jury consider fraud, but wrongly ruled that error harmless. Where a court cannot determine whether a jury considered a legal basis it should not have considered, the verdict must be reversed. *Swinton,*

---

[18] This interpretation is particularly likely given the haste with which the jury returned its verdict: "The jury was excused to begin deliberations at 2:46 p.m. and at 5:06 p.m., returned with its verdict." ER18.

270 F.3d at 806. In this case because the jury found fraud, it is certain that the jury addressed an issue, indeed a separate defense, that was not properly before it. But the verdict form did not also ask the jury separately to indicate what they thought about the trademark's functionality or secondary meaning. Because there is no way determine whether the jury relied on what the Court later ruled was not correctly before it, this Court cannot conclude that the District Court's error was more probably harmless than not. Allowing a jury to find a party liable in the absence of evidence linking the party to the misconduct claimed—as the District Court ruled post-trial—is erroneous as a matter of law. See *Chuman v. Wright,* 76 F.3d 292, 294 (9th Cir.1996).

Of course, it should go without saying that erroneously putting any accusation of fraud before a jury is likely to prejudice the accused party. That basic level of prejudice was then aggravated by West's counsel. See *W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306, 316-17 (3d Cir. 2003) (new trial warranted by erroneous admission of "bad faith" and "fraud" evidence and repeated references by counsel and witnesses). Because it improperly had the fraud theory before it, he was apparently able to convince the

jury, often through mischaracterization of evidence, that OTR committed a fraud on the USPTO. For example, the District Court sustained OTR's objections to counsel's misstatements regarding Evans' email communications with Deveau, OTR's trademark counsel. SER227-28.

The most egregious example of this type of misconduct by West's counsel in his fraud arguments was his description of OTR's '169 Registration as "the only registration ever on a tire tread pattern." SER144. Arguing that OTR had committed fraud to get it, counsel argued that:

> Plaintiffs' own expert in the tire industry, Mr. Leyden, had never heard of trade dress on a tire tread. Mr. Pendino, who'd been in the tire industry for 31 years, had never heard of the trade dress on a tire tread. How is OTR the only company to get it on a pattern where both parts of that lug perform a function? We know the answer to that now. They submitted two false Declarations to do it.

SER146. But West's counsel knew this was a blatant falsehood; OTR had sought to introduce other tire tread trademark registrations, SER604-06, SER607-08, SER609-12, SER613-15, but West vehemently objected (in writing, SER618-21, and orally, SER173-76, and the District Court excluded them, SER183-84.

West admitted to the Court during argument on the other registrations that West's own (excluded) expert had reviewed those other trademarks for tire treads. SER177-81. To argue that these items did not exist after successfully keeping them out compounded the prejudice of allowing an inflammatory accusation of fraud to go to the jury in the first place.

### 4. Because There Was No Evidence On Which The Jury Could Have Invalidated The '169 Registration On Other Grounds, OTR Was Entitled To Judgment On Its Registered Trademark Claims.

As noted above, whether the jury intended to invalidate the '169 Registration on grounds other than fraud cannot be determined. But there would have been no evidentiary basis for it to do so. This not only underscores the District Court's error in denying OTR's motion for new trial; it also entitled OTR to judgment in its favor on its registered trademark claims

The District Court was "not persuaded that West's fraud claim tainted the jury's verdict on the validity of OTR's registered trade dress." ER26. The Court did not then address functionality and secondary meaning. In doing so the Court failed to consider the likelihood that "the jury's verdict may have resulted from a

misapprehension of law"—that is, from its belief that it had to consider fraud—"rather than from factual determinations in favor of the prevailing party." See *Swinton*, 270 F.3d at 805-06. Had the Court considered the evidence for finding invalidity on other grounds, though, it would have found that proof wanting as well.

Turning first to whether the Outrigger tread design had acquired distinctiveness, while OTR witnesses Taylor (SER324-25), and Smith (SER688-90), and experts Leyden (SER294-95), Evans (SER221), and Sarabia (SER231-45) all agreed that the design had acquired distinctiveness, West introduced no evidence to overcome the statutory presumption of distinctiveness. It proffered an expert (Kenneth Port) who presumably planned to dispute distinctiveness, but his testimony was excluded as a legal opinion. SER91, SER92, SER94. No other witness testified that the tread pattern described in the '169 Registration lacked acquired distinctiveness.

Regarding functionality, West called only one witness to support a claim of functionality: expert Richard Pendino. But as Pendino cheerfully admitted, he knew nothing about functionality in the trademark sense, and his claim that the tread was "functional" amounted to no more saying it had function, SER188,

and not, as trademark functionality requires, whether OTR's design was "essential" to function under *TrafFix,* 532 U.S. at 32:

> Q.   And did you say, "Well, I don't need to write a report for that. I can tell you that a tire tread has a function."
>
> A.   Yes, that's-that's general. All tire treads have functions.
>
> Q.   But you wrote a 52-page report. Did you need to do that in order to be able to tell him that?
>
> A.   No, but I doubt whether he would have paid me just to say, "Yeah, it's functional."

SER189. Pendino also claimed he reviewed the trademark prosecution history, but when asked whether it showed that the Examiner considered whether the tread was functional in the essential sense, he said "I imagine it was in there. It didn't register with me." SER191.

Pendino thus could not identify an aspect of the outrigger tread design that improved function, much less was essential to it. He also admitted that there were numerous tread patterns available for use on AWPs. SER152-53. This also supported the notion that the steep-angled lug pattern of the Outrigger was not "essential" for AWP tires. Indeed, as Leyden testified, because those angles were

not what a designer seeking to enhance self-cleaning and traction would not choose, they cut against function. ER296-98.

In short, West offered no evidence to overcome the presumption of non-functionality. As discussed above, it is impossible to state that the jury actually considered functionality *or* acquired distinctiveness, rather than just fraud. But if they did consider those elements, the evidence would not have supported a verdict of invalidity based on them. The denial of a new trial cannot be harmless error.

### 5. The District Court Erroneously Foreclosed OTR's Unregistered Trade Dress Claims

In §1125(a) the Lanham Act recognizes intellectual property rights in unregistered trademarks and trade dress that stem from common law rights against unfair competition. Because it does not depend on registration like other parts of the Act do, it "protects against a wider range of practices." *Brookfield*, 174 F.3d at 1046 n.8. Intellectual property rights in unregistered trademarks and trade dress are independent of registration; registration simply gives an owner certain presumptions in the legal arena. OTR thus owns unregistered trade dress rights in its Outrigger tire tread design

arising from its use. Those rights exist regardless of whether OTR has a trademark registration.

OTR pled claims for infringement of unregistered trade dress under §1125(a) in addition to its registered infringement and counterfeiting claims. OTR alleged two forms of unregistered infringement by West—false designation of origin of the Genie test tires (by removing branding), WER668 ¶75, and using the overall appearance of the Outrigger, under which Blackstone and OTR Wheel had been selling tires, to sell production tires, WER668 ¶73. That OTR was pursuing unregistered claims was well known to both West and the District Court. For example, when the Court granted West's motion to dismiss OTR Wheel's and Blackstone/OTR's *registered* claims (because Plaintiff F.B.T. owns the '169 Registration), it ruled that neither had standing to pursue registered mark claims, and both were limited to *unregistered* claims under §1125(a). SER70-71. Consistent with that ruling, West addressed the differing burdens between "common law" trade dress claims and registered trademark claims in both its proposed and amended pretrial orders. SER622, SER17.

Three days before trial, though, the Court reversed itself, barring OTR Wheel and Blackstone/OTR from pursuing unregistered trade dress rights:

> Plaintiffs are limited to pursuing trade dress claims based on in the '169 registration, and may not pursue separate *unregistered* trade dress claims. Plaintiff F.B.T. Enterprises, Inc., as the registrant and the owner of OTR intellectual property rights, is pursuing a *registered* trade dress claim pursuant to 15 U.S.C. §1114, whereas Plaintiffs OTR Wheel Engineering, Inc., and Blackstone/OTR, LLC, are pursuing *registered* trade dress claims pursuant to 15 U.S.C. §1125(a), as nonregistrants/non-owners with a cognizable interest in the allegedly infringed *registered* trade dress. *Halicki Films, LLC v. Sanderson Sales and Marketing*, 547 F.3d 1213, 1226 (9th Cir. 2008).

SER63-64. (emphasis original). The Court's belief that OTR Wheel and Blackstone/OTR were pursuing *registered* trade dress claims *under § 1125(a)* reflected confusion that led to error on this issue. It is well settled that §1125(a) (Lanham Act §43(a)), which is silent on registration, addresses unregistered trademarks and trade dress, and not registered trademarks. "Section 43(a) 'prohibits a broader range of practices than does §32,' which applies to registered marks... but it is common ground that §43(a) protects qualifying *unregistered* trademarks," *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505

U.S. 763, 768 (1992). Ultimately, in its post-trial motion order, the District Court acknowledged its mistake. ER33.

That confusion was also not harmless; it foreclosed OTR from presenting an alternative theory of unfair competition. OTR's unregistered trade dress encompassed the overall commercial impression from the appearance of the Outrigger tire, including the low-profile sidewall, whereas the '169 Registration was confined to the tread. The prejudice to OTR from limiting its infringement claims to the tread surface in the '169 Registration is illustrated by West's reliance on other AWP tires with the same type treads, such as the Galaxy Beefy Baby. When the overall appearance (tread and sidewall) is considered, the Outrigger looks markedly different from the Beefy Baby; the low profile of the Outrigger sidewall (shown at right in the photo below, SER425, is noticeably unlike the higher profile of the conventional Beefy Baby tire:



If, on the other hand, an observer focuses focus only on the tread pattern (covered by the '169 Registration), the distinction between the sidewalls is lost:



SER424. While the steeply angled lugs of the Outrigger are still distinct, the differing sidewalls is left out of this comparison.

In its post-trial order the Court acknowledged that it had mistakenly said that Blackstone/OTR and OTR Wheel could pursue "registered" rights under §1125(a), but claimed it had meant no more than that they had "standing" to pursue rights under §1125(a)—that is, "unregistered" rights. ER33, citing SER70. From the outset of this action, OTR's Complaint alleged that West infringed a separately-defined intellectual property asset (unregistered trade dress) arising under a separate section of the Lanham Act (§1125(a)) than the '169 Registration. The District Court's 11th-hour order precluding OTR from proceeding on that cause of action was erroneous, and must be reversed.

## VII.  CONCLUSION

The judgment in favor of OTR on its false designation, tortious interference and WCPA claims and the District Court's grant of JMOL on West's trademark fraud counterclaim should be affirmed. The District Court's denial of a new trial OTR's registered infringement claim and its striking of OTR's unregistered trade dress claims should be reversed, and a new trial ordered on those claims.

Respectfully submitted this 17th day of April, 2017.

/s/ Joel D. Bertocchi

Robert J. Carlson
LEE & HAYES PLLC
One Convention Place
701 Pike Street
Suite 1600
Seattle, WA 98101
(206) 315-4001
bob@leehayes.com

Joel D. Bertocchi
Kimberly A. Jansen
Jeffrey S. Dixon
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601
(312) 704-3000
jbertocchi@hinshawlaw.com

*Counsel for Appellees/Cross-Appellants/Cross-Appellees*

# CIRCUIT RULE 28-2.7 ADDENDUM

## 15 U.S.C. § 1125(a)

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

* * * * *

## 15 U.S.C. § 1064

A petition to cancel a registration of a mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed as follows by any person who believes that he is or will be damaged...

> (3) At any time if the registered mark... is functional, or has been abandoned, or its registration was obtained fraudulently or contrary to the provisions of section 1054 of this title or of subsection (a), (b), or (c) of section 1052 of this title for a registration under this chapter, or contrary to similar prohibitory provisions of such prior Acts for a registration under such Acts....

* * * * *

## RCW 19.86.020

*Unfair competition, practices, declared unlawful.*

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

* * * * *

## RCW 19.86.093

*Civil action—Unfair or deceptive act or practice—Claim elements.*

In a private action in which an unfair or deceptive act or practice is alleged under RCW 19.86.020, a claimant may establish that the act or practice is injurious to the public interest because it:

(1) Violates a statute that incorporates this chapter;
(2) Violates a statute that contains a specific legislative declaration of public interest impact; or
(3)(a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons.

## CERTIFICATE OF COMPLIANCE

[FRAP 28.1(e)(2) and Circuit Rule 28.101(c)]

I certify that, pursuant to Fed.R.App.P. 28.1(e)(2) and Circuit Rule 28.1-1(c), the attached brief is proportionally spaced, has typeface of 14 points or more and contains 16,466 words.

*/s/ Joel D. Bertocchi*

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, OTR states that it is not aware of any related cases pending before this Court.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF System on April 17, 2017. All participants in the case are registered CM/ECF users, and that service will be accomplished by the Appellate CM/ECF System.

*/s/ Joel D. Bertocchi*