Nos. 16-35897, 16-35982 and 16-35936 (Consolidated)
_____

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
_____

OTR WHEEL ENGINEERING, INC.,
BLACKSTONE/OTR, LLC, and F. B. T. ENTERPRISES, INC.,

Plaintiffs/Appellees/Cross-Appellants

vs.

WEST WORLDWIDE SERVICES, INC., SAMUEL J. WEST, SSL
CHINA, LLC, QINGDAO STW TIRE CO. LTD., and SSL HOLDINGS,
INC.,

Defendants/Appellants/Cross-Appellees
_____

APPEAL FROM THE U.S. DISTRICT COURT FOR EASTERN
DISTRICT OF WASHINGTON, SPOKANE, NO. 2:14-CV-00085-LRS
_____

REPLY BRIEF OF CROSS-APPELLANTS
OTR WHEEL ENGINEERING, BLACKSTONE/OTR, LLC
AND F.B.T ENTERPRISES, INC.
_____

Robert J. Carlson
LEE & HAYES PLLC
One Convention Place
701 Pike Street
Suite 1600
Seattle, WA 98101
(206) 315-4001
bob@leehayes.com

Joel D. Bertocchi
Kimberly A. Jansen
Jeffrey S. Dixon
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601
(312) 704-3000
jbertocchi@hinshawlaw.com

*Counsel for Appellees/Cross-Appellants*

i

# TABLE OF CONTENTS

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................. 3

    A.    The District Court's Submission of West's Trademark Fraud Defense to the Jury Was Not Harmless Error. ............................................................. 3

    B.    Because There Was No Evidence on Which the Jury Could Have Invalidated the '169 Registration on Grounds Other Than Fraud, OTR Was Entitled to Judgment on Its Registered Trademark Infringement Claims ..................................................... 7

        1.    The Outrigger trade dress had acquired secondary meaning long before West began its infringing activity. ................................................. 7

        2.    OTR amply established the secondary meaning of its Outrigger tread pattern, and West did little or nothing in opposition. ............................... 9

        3.    The Outrigger trade dress is non-functional and is entitled to the presumption of non-functionality, and West produced no evidence to overcome that presumption ............................. 12

    C.    The District Court's Admitted Error in Placing Fraud Before The Jury Requires At Least A New Trial on OTR's Registered Trademark Claims. ........................... 19

        1.    The court acknowledged that submitting the issue of fraud to the jury was error. ..................... 19

        2.    Placing fraud before the jury was prejudicial. ........ 19

            a.    The fraud claim would have prejudiced any jury finding on secondary meaning ........ 19

b.    The fraud claim, and numerous instances of misconduct by West's counsel in connection therewith, prejudiced any jury finding on functionality.................................. 24

D.    The District Court's Erroneous Foreclosure of OTR's Unregistered Trade Dress Claims Was Not Harmless Error.......................................................................... 28

CONCLUSION ............................................................................. 33

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Aromatique, Inc. v. Gold Seal, Inc.*,
    28 F.3d 863 (8th Cir. 1994) .................................................... 8, 9

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
    251 F.3d 1252 (9th Cir. 2001) ................................................. 31

*Disc Golf Association, Inc. v. Champions Discs, Inc.*,
    158 F.3d 1002 (9th Cir. 1998) ........................................... 17, 18

*OTR Wheel Engineering, Inc. v. West Worldwide Services, Inc.*
    602 Fed. App'x. 669 (9th Cir. 2015).......................................... 12

*Swinton v. Potomac Corporation*,
    270 F.3d 794 (9th Cir. 2001) ...................................................... 6

*TrafFix Devices, Inc. v. Marketing Displays*, Inc.
    532 U.S. 23, 33–34 (2001) .......................................... 14, 15, 17

*W.V. Realty, Inc. v. Northern Insurance Company of New York*,
    334 F.3d 306 (3d Cir. 2003) .................................................... 24

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*,
    529 U.S. 205 (2000) .......................................................... 21, 22

*Yamaha International Corporation v. Hoshino Gakki Co.*,
    Ltd., 840 F.2d 1572 (Fed. Cir. 1988) ....................................... 23

**Statutes**

15 U.S.C. §1052(f) ........................................... 8, 9, 22, 23

15 U.S.C. §1091(c) .................................................... 26

15 U.S.C. §1114 ............................................. 28, 30, 31

15 U.S.C. §1125(a) ................................ 3, 28, 30, 31, 33

iv

**Other Authorities**

37 C.F.R. §2.41(a) ........................................................ 23

TRADEMARK MANUAL OF EXAMINING PROCEDURE §1212.05(b)
   (U.S. Patent & Trademark Office April 2017) ........................... 22

# INTRODUCTION

As the issues West appealed are now fully briefed, this Reply addresses only West's responses to arguments OTR raised on cross-appeal, namely (1) whether OTR should have been granted either judgment in its favor or a new trial on its registered trademark infringement claim, and (b) whether the District Court improperly barred OTR's unregistered trade dress infringement claim prior to trial.

Although the District Court recognized its error in allowing West's trademark fraud defense to go to the jury, West insists that error was harmless because, it argues, the jury probably also found OTR's '169 Registration invalid for either functionality or lack of secondary meaning. But the record reflects no reason to conclude that the jury did any such thing, much less to conclude so with the required degree of confidence. The jury was in fact instructed to find the '169 Registration invalid if it found fraud, and the verdict it returned is consistent with doing so only on that basis, without consideration of either functionality or acquired distinctiveness (secondary meaning).

West can thus do no more than speculate about what (if anything) the jury thought about the latter two issues. And the trial record provides further reason to doubt that West is right. West did not actually introduce substantial evidence of invalidity on any ground other than fraud, while OTR offered considerable proof of its tread's distinctiveness, acquired in part due to years of use before West infringed. And OTR also showed that the tread design was no more functional for trademark purposes than any tire tread, and that the distinctive feature of the tread—its sharply angled lugs— was actually counter-functional.

Based on that record the District Court should have gone further than its JMOL and should have granted judgment for OTR on its claim of registered trademark infringement. At the least, though, OTR is entitled to a trial of its infringement claims free of the obvious taint of West's fraud arguments. The facially inflammatory nature of fraud claims generally, coupled with the way West's counsel repeatedly flogged its fraud accusations at trial, demonstrates that the District Court was wrong to think they made no difference. No jury would have been unmoved by such claims.

The jury's wrongful finding on fraud, and consequent invalidation of the '169 Registration, also underscores the impact of the District Court's error in barring OTR from pursuing its unregistered trade dress claim under 15 U.S.C. §1125(a). The result of that ruling was that OTR was required to show validity of the '169 Registration as a precursor to *any* relief for trade dress infringement. But OTR's complaint plainly alleged infringement under 1125(a) of aspects of the Outrigger tire's design—most notably, its low-profile sidewall—and the overall design went beyond the tread specified in the '169 Registration. Nor was that error harmless; it precluded OTR from presenting the jury with a very different theory of liability—copying of the overall tire appearance—that was amply supported by the record and that would not have been subject to West's unsupported fraud claims.

## ARGUMENT

### A. The District Court's Submission of West's Trademark Fraud Defense to the Jury Was Not Harmless Error.

West speculates that the jury must have found OTR's '169 Registration invalid "as functional and/or as lacking secondary meaning," supposedly because the jury was not "even permitted" to

consider fraud until it had already found invalidity on one of those other grounds. W2BR38.[1] But West has it exactly backwards; because the only basis for invalidity the jury was asked to address specifically was fraud, that is the only basis we know they did address.

As OTR emphasized (at OTRBR73), based on its decision to submit West's fraud defense to the jury the District Court instructed the jury that fraud by OTR was by itself a basis for finding *invalidity* of the '169 Registration. SER119. And the verdict form's question on fraud, Question 2, was to be answered only if the jury had found invalidity. ER53. But despite West's wishful thinking the jury was *never* instructed, on the verdict form or otherwise, that it should not answer the fraud question until it had already found, or even considered, invalidity based on functionality or lack of secondary meaning; instead it was only told to do so if it

---

[1] Citations will take the forms described in OTR's initial brief at p. 1 n. 1. Citations to OTR's opening brief will take the form "OTRBR___." Citations to West's reply-and-response brief will take the form "W2BR___." Citations to West's additional excerpts of record will take the form "AER___." Citations to OTR's finale excerpts of record will take the form "FER___."

had found invalidity generally, that is, for any reason. Accordingly, and contrary to West's insistence, there is no way to determine whether the jury found the '169 registration invalid based on anything other than the fraud defense that the District Court erroneously (by its own admission) allowed the jury to consider.

West is thus wrong in arguing that "the jury was expressly barred from answering the fraud question if it initially found the registered trade dress to be non-functional and to have secondary meaning." W2BR39. What the jury was told, rather, was that it should not answer "the fraud question" (Question 2) if it had answered "Yes" to Question 1. Question 1 asked whether "OTR's registered trade dress is *valid*," ER53 (emphasis added), a concept that the jury had also been told (by Instruction No. 20, SER119) included whether the registration was procured by fraud. Nothing in that instruction or anywhere else told the jury it had to consider functionality or secondary meaning first, or at all, if it found fraud.

Had the jury answered "yes" to Question 1 (validity), it would necessarily have found that the '169 Registration was non-functional and had secondary meaning. But because it said "no" to Question 1 (validity) and "yes" to Question 2 (fraud) it is impossible

to tell whether the jurors even considered, much less decided, whether OTR's tire tread was functional or lacked secondary meaning. All that can be known is that the jury's verdict of invalidity was based, at least in part and perhaps entirely, on West's legally insufficient fraud claims. That (at best) uncertainty requires a new trial. *Swinton v. Potomac Corp.*, 270 F.3d 794, 806 (9th Cir. 2001)

Looking beyond the verdict form and instructions, though, the record indicates that a verdict of invalidity based exclusively on fraud is not only possible, but likely. West's fraud claim was central to its trial strategy, and was really the only substantial defense it offered to OTR's infringement claims. As explained *infra* p. 7-19, West did not introduce any evidence of its own about trademark functionality or secondary meaning and did little to attack OTR's proof on those issues. By contrast, West's legally insufficient claim of fraud was emphasized over and over again in its questioning of witnesses and its closing arguments. OTRBR77-79.

West's counsel strove mightily to make fraud, a claim incendiary by nature, the centerpiece of the trial. It strains credulity to believe that the jury would have ignored those persistent efforts

to raise such a provocative issue and would instead have relied on West's skimpy and unsupported contentions about functionality and lack of secondary meaning.

**B. Because There Was No Evidence on Which the Jury Could Have Invalidated the '169 Registration on Grounds Other Than Fraud, OTR Was Entitled to Judgment on Its Registered Trademark Infringement Claims.**

The trial record does not, in fact, contain an adequate evidentiary basis on which the jury could have invalidated the '169 Registration based on secondary meaning or functionality grounds. This not only underscores the District Court's error in denying OTR's motion for new trial; it also entitled OTR to judgment in its favor on its registered trademark claims. Had the Court properly assessed the evidence supporting a purported jury verdict of invalidity on grounds of functionality or lack of secondary meaning, it would have found insufficient evidence for any verdict other than judgment for OTR. This Court should now do the same.

**1. The Outrigger trade dress had acquired secondary meaning long before West began its infringing activity.**

West argues that the '169 Registration is not entitled to the presumption of secondary meaning as to West because West began

infringing prior to the '169 Registration date, at which time the USPTO Examiner determined that OTR had established secondary meaning or acquired distinctiveness. W2BR45-46. In doing so West relies on an Eighth Circuit decision in which a trademark owner was determined not to be entitled to the benefit of a *presumption* of acquired distinctiveness of its registered marks until their registration date:

> Distinctiveness became an issue in the *ex parte* proceedings before the PTO once the applications for the marks had been rejected for lack of distinctiveness and the applicant had presented evidence of secondary meaning. The PTO resolved the issue in Aromatique's favor when it registered the marks. Aromatique's marks, therefore, may be presumed to have acquired secondary meaning only as of June 21, 1988.

*Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994). The facts of *Aromatique*, though, are readily and critically distinguishable. In *Aromatique* the registrant's first use of the marks at issue occurred less than five years before the defendant's infringing conduct, 28 F.3d at 867-68, making it impossible for the registrant to make a *prima facie* showing of acquired distinctiveness based on five years of use under §2(f) of the Lanham Act, 15 U.S.C. §1052(f). But OTR first started using the Outrigger tire trade dress

in 1998, ER151, some 14 years before West began its infringing activity in April and May of 2012. See SER556–65. The District Court's jury instruction that OTR was entitled to a presumption of secondary meaning, complained of at W2BR46, was therefore correct, as the §2(f) grounds on which the Examiner made her determination of acquired distinctiveness accrued long before West began using OTR's trade dress. See ER119 (Examiner adding statement to the record that the OTR mark "has become distinctive... through applicant's substantially exclusive and continuous use... for at least the five years immediately before the date of this statement"); W2BR46. Thus *Aromatique's* reasoning does not apply here.

**2. OTR amply established the secondary meaning of its Outrigger tread pattern, and West did little or nothing in opposition.**

Even absent the presumption of acquired distinctiveness, OTR submitted ample evidence of secondary meaning, and West did little to undermine it and submitted no contrary evidence of its own. OTR fact witnesses Taylor (SER324-25) and Smith (SER688-90), and experts Leyden (SER294-95), Evans (SER221), and Sarabia (SER231-45), all agreed that the specific tread pattern of the

Outrigger design had acquired distinctiveness. Sarabia emphasized a number of factors supporting his conclusion, including (but not limited to): OTR's long history of exclusive use prior to West's infringement; extensive OTR advertising including "look-see" advertising directed to the distinctive tread; prominent featuring of the tread in the advertising materials of OTR's customers; the fact that West had copied it to sell to an OTR customer; West's prominent advertising of the copied tread on its own website; the insistence of OTR's customer Genie on this exact tread; and the fact that Genie's own personnel were confused. SER 231-45.

OTR's expert Jerry Leyden also addressed secondary meaning. He opined that the Outrigger tire "had a unique and distinctive visual appearance." SER294; see also SER689-90 (witness Smith describes distinctive lug angle). As Leyden further explained, that distinctive angle was unlike other tire designs because "the lugs [on the Outrigger] are more closed than they are open," whereas "usually an open-lug design facilitates traction and the - the actual throwing off of whatever tractive material is captured between the lugs. It facilitates cleaning." SER296. And Ray Evans attested to West's copying of OTR's apparently distinctive design when he

inspected and measured a West tire and an Outrigger tire, and said that "there was no question [the West tire] was an exact clone." SER220. Other than this West tire, Evans had never seen any other tire in his 50 years of experience in the industry that looked like or copied the Outrigger tread. SER221.

In response West introduced no evidence at all to overcome the statutory presumption of distinctiveness or to rebut OTR's proof. West proffered an expert (Kenneth Port) who presumably planned to dispute distinctiveness, but his testimony was excluded as a legal opinion, a ruling West does not challenge on appeal. SER91, SER92, SER94. No other witness testified that the tread pattern described in the '169 Registration lacked acquired distinctiveness. West's sole argument is that one Genie witness, David Green, testified that *he* is likely to look to the sidewall, and not the tire tread, for source identification. W2BR47. But the subjective actions of a single individual do not establish that the distinctive appearance of a specific tire tread can never serve as a source identifier, especially in the face of other uncontroverted evidence.

### 3. The Outrigger trade dress is non-functional and is entitled to the presumption of non-functionality, and West produced no evidence to overcome that presumption.

As this Court ruled previously, the '169 Registration entitles the subject registered trade dress to a presumption of non-functionality. See *OTR Wheel Eng'g, Inc. v. West Worldwide Servs.*, 602 Fed. App'x. 669, 671 (9th Cir. 2015). West offered no substantial evidence to rebut that presumption or to contradict OTR's other ample evidence of non-functionality. In its brief West refers to: (a) U.S. Pat. No. 4,481,993 to Ohnishi ("Ohnishi"), AEOR028–33; (b) email correspondence from Ray Evans stating that all features of the OTR tread design contribute to the self-cleaning function, ER347; (c) OTR's advertising of the Outrigger and other tires, see ER343–44, ER345, EOR357–358, AER6, AER8, AER10, AER024; and (d) certain testimony of West's expert Pendino. It is telling that, contrary to West's characterization, *not one* of those four sources of evidence attributed *any* functional benefit to a lug angle of 35–45° from the sidewall of an R-4 tire, which is the significant distinguishing feature of the Outrigger tread cited in the '169 Registration.





Ohnishi, for all its minute detail, devotes scant attention to its lug angle. It specifies various width dimensions, a pitch, two groove angles, two cross-sectional groove areas, and defining various coefficients and ratios key to producing a "strong tractive force" (Ohnishi 1:37–39), but it conspicuously provides no more than a reference label γ for the "backward angle" (Ohnishi 1:23–24) of the lug and groove of the prior art design shown in FIG. 1 (above), and not even that much for its own lug angle (FIG. 2, above). AER29, 31. Even "slanting portion 3(i)" (Ohnishi 2:17) of lug 3 is only given a label, and no dimension is provided from which a value of the "backward angles" of its grooves may be deduced. AER31. If anything, the passage of Ohnishi cited by West, at 5:8–18, suggests

that a lug angle need only be "backward," to apparently any degree, to serve a mud-discharging function. But the rest of the Ohnishi patent suggests that, assuming a "strong tractive force" is the desired function, practically every other dimension of a tire tread matters more than its lug angle.

Indeed, West's expert Pendino admitted that nothing in the Ohnishi patent taught any functional advantage to the Outrigger tread design compared to any other R-4 tread. AER73-74. West is wrong to discount the evidentiary value of this admission by Pendino. See W2BR44–45. Based on a misinterpretation of *TrafFix*, West circularly argues that a functional advantage (*e.g.*, quality or cost) over alternative designs, a factor or element *of* functionality, need not be considered "where functionality has been shown." W2BR44, citing *TrafFix Devices, Inc. v. Mktg. Displays*, Inc. 532 U.S. 23, 33–34 (2001) ("Functionality having been established… [t]here is no need, furthermore, to engage… in speculation about other design possibilities, such as using three or four springs which might serve the same purpose."). However, the Supreme Court in *TrafFix* had already expressly held that "[t]he design serves the important purpose of keeping the sign upright in heavy wind conditions, and

statements in the expired patent applications indicate that it does so in a unique and useful manner and at a cost advantage *over alternative designs*." 532 U.S. at 25 (emphasis added). The dual-spring design in question, the Court noted, was expressly claimed in the claims of the expired utility patents. Id. Thus the question of whether "other design possibilities" existed and were disadvantageous did not need to be revisited, because it had already been answered in establishing functionality. In this case, then, there is no need for speculation about "possibilities"; numerous *existing* R-4 tires have alternative tread designs that provide as good or better self-cleaning and traction at no greater cost than the Outrigger tread design.

As explained at OTRBR31-34, Ray Evans' email, on which West extensively relies, said no more than that all of the Outrigger's design elements "contribute" to its self-cleaning function—the same function present in all R-4 tires. But Evans made clear that he did not believe that any one element, or even the tread as a whole, is *essential* to the Outrigger's function as an AWP tire (as *TrafFix* requires, 532 U.S. at 32), and Evans in fact identified in his

declaration numerous other tread designs suitable for that use. ER155.

West fails to identify any reference to the benefit of a particular lug angle of an R-4 tire in OTR's advertising; instead, it points to an advertisement for OTR's Traction Master agricultural tire, which references the benefit of its "45 degree lug". See AER024; W2BR43, n. 16.[2] But that tire does not incorporate tread design registered in the '169 registration, making West's reference irrelevant.

Finally, West flatly mischaracterizes (their expert) Pendino's testimony. Contrary to West's assertion that Pendino "testified that it was his opinion that OTR's *tire lug angle* provides superior traction," W2BR43-44 (emphasis added; citing AER73-74), Pendino said nothing at all about the lug angle in the cited portion of his testimony; rather, he merely said that he agreed with OTR's advertising claims that its "Directional R4 tread" provided certain benefits. Pendino provided no further clarification on the issue, but

---

[2] The cited advertisement states "The *45 degree lug* provides self-cleaning and traction benefits", which West strategically misquotes as "expressly describ[ing] the superior benefits of a '45° Angle'". See AER24 (emphasis added); W2BR43, n.16.

OTR's expert, Jerry Leyden, did, and was not contradicted. Leyden testified (ER296-98) that because 35–45° lug bar angles from the tire shoulder (as described in the '169 Registration) were not what a designer would choose if he or she wanted to *enhance* self-cleaning and traction—the only tire tread "function" ever identified by West in this case—the use of those angles in the Outrigger actually cut *against* function by making it *less effective* in self-cleaning and traction than tires with less steep (that is, more open) angles. ER296-98.

Leyden's uncontradicted testimony thus described the exact opposite of trademark functionality under *TrafFix*. Tacitly admitting as much, West desperately claims that this Court has "expressly rejected" counter-functionality as proof of non-functionality. See W2BR45, citing *Disc Golf Ass'n, Inc. v. Champions Discs, Inc.*, 158 F.3d 1002 (9th Cir. 1998). But in that case the Court found one argument about a design disadvantaging golfers "unconvincing" precisely because it had already concluded that two other functional advantages, independent of the one it rejected, had already been established:

> A product feature need only have some utilitarian advantage to be considered functional.... It is clear from Patent '189 that the parabolic design improves "catchability" and the identification of caught discs. These are utilitarian purposes.

Id. at 1007 (emphasis in original). For purposes of this case, then, *Disc Golf* stands for no more than the relatively unarguable notion that a functional disadvantage caused by one feature does not necessarily negate established functional advantages of other features. In this case, though, traction and self-cleaning are the *only* functional features West attributes to the Outrigger tire's distinctive lug angle, and Leyden testified, without contradiction, that a 35–45° lug angle range is actually disadvantageous for those two functions. ER296–98. *Disc Golf* is thus inapposite.

In short, West offered no evidence to overcome the presumption of non-functionality, much less the considerable evidence OTR offered in establishing that its tread design was not functional in the trademark sense. All tire treads are "functional" in that they allow the rubber to meet the road. But because OTR established that its trademarked steep-lugged tread design did not help (and actually hurt) self-cleaning and tractive function, and

because West did not show otherwise, judgment should have been entered for OTR on its infringement claims.

## C. The District Court's Admitted Error in Placing Fraud Before The Jury Requires At Least A New Trial on OTR's Registered Trademark Claims.

### 1. The court acknowledged that submitting the issue of fraud to the jury was error.

In reversing its earlier conclusion, the District Court correctly held that West had not introduced substantial evidence to support any of the required elements: "the evidence of record permits only one reasonable conclusion: OTR did not procure their '169 Registration by fraud on the USPTO. There is not 'substantial evidence' to support the jury's verdict to the contrary." ER25-26.

### 2. Placing fraud before the jury was prejudicial.

#### a. The fraud claim would have prejudiced any jury finding on secondary meaning.

Contrary to the District Court's ruling and West's superficial conclusions, OTR raised and preserved arguments that the jury's finding on secondary meaning, if any, was tainted by the fraud claim.

As an initial matter, West's reference to 'the jury's finding on secondary meaning" is presumptuous; as explained above, because

the jury considered fraud there is no way to know whether it even *made* a "finding on secondary meaning."

Further, the District Court was wrong to say that all of OTR's arguments in support of a new trial pertained solely to functionality (although it is true that OTR identified several instances of prejudicial misconduct by West's counsel, and improper and prejudicial admissions of evidence pertaining to functionality, see, *e.g.,* SER604-15; ER26-28).

But OTR sought a new trial because the jury verdict was necessarily tainted by West's fraud claim, FER29-30, as well as the misconduct of West's counsel, FER31-37, and the District Court's rulings on evidentiary issues, FER37-44. The fraud claim, and thus the taint associated with it, clearly reached issues of secondary meaning as well as functionality. West's fraud case focused on the declaration of Pat Smith provided to the trademark examiner to show the distinctiveness of the Outrigger design. West included the inflammatory and prejudicial accusation that Pat Smith knowingly misrepresented to the Examiner that he had spoken to manufacturers, distributors, and customers who had told him that they could identify the OTR Outrigger tire solely by seeing its tread

design, when in fact the Examiner well knew he had not, see OTRBR33-34, 35-37, as the District Court acknowledged in the same ruling in which it wrongly concluded that OTR had only raised functionality objections in relation to the fraud claim, ER24-25. West also accused Smith of intentionally deceiving the Examiner, and argued that the Examiner in fact relied on Smith's alleged deception. But West now contradicts itself by arguing:

> The evidence cited by OTR—opinions that the Outrigger tread design looks different than other treads—relates not to a learned association, but rather to inherent distinctiveness. However, the Supreme Court foreclosed establishing distinctiveness for a product design trade dress based on inherent distinctiveness. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) ("We hold that, in an action for infringement of unregistered trade dress under §43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning").

W2BR51.

By West's own reasoning, then, if indeed Smith's alleged misrepresentation related not to a learned secondary meaning but *only* to inherent distinctiveness, the Examiner could not have relied on it in issuing the '169 Registration—as West contends she did—because the Supreme Court has established that product design trade dress cannot be inherently distinctive as a matter of law. See

*Wal-Mart*, 529 U.S. at 211. Having an appearance recognizably different than that of other products is obviously relevant to secondary meaning: consumers could not possibly learn to associate the appearance of a product with a single source without being able to tell it apart from competing products.

Indeed, §2(f) of the Lanham Act requires proof of use that is not only continuous, but "substantially exclusive" for five years preceding the date on which a claim of acquired distinctiveness is made. 15 U.S.C. §1052(f). However, "substantially exclusive" allows for use by others that is "inconsequential or infringing". TRADEMARK MANUAL OF EXAMINING PROCEDURE (U.S. Patent & Trademark Office April 2017) §1212.05(b).[3] Thus, an applicant's evidence was held to be "adequate to sustain applicant's burden of establishing that its peg [guitar] head designs have acquired the requisite secondary meaning for registration", despite "evidence that four other guitar head designs of other makers were [merely] 'like' those that Hoshino

_____

[3] Available at:
https://tmep.uspto.gov/RDMS/TMEP/current#/current/TMEP-1200d1e11156.html (last checked June 30, 2017).

sought to register." *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, Ltd., 840 F.2d 1572, 1581-83 (Fed. Cir. 1988). The court so held despite the fact that "the record [was] lacking in direct evidence of consumer testimony or perceptions as to whether the specific guitar heads employed by Hoshino function as significant indications of source," noting that "applicants may submit any 'appropriate evidence tending to show that the mark distinguishes [applicant's] goods." *Id.* at 1583, citing 37 C.F.R. §2.41(a).

After reviewing Patrick Smith's Second Declaration attesting to 14 years of continuous use, ER151, and in view of previously submitted evidence of the substantial exclusivity of that use, the Examiner found that OTR had established secondary meaning under §2(f). Nothing in that decision contravened any of those guiding principles. In granting JMOL on West's fraud claim the District Court correctly reasoned that no reasonable jury could have failed to recognize that Smith was simply offering his "sincerely held objective opinion... based on his knowledge of the tread design of other R-4 tires... and based on his experience in the tire industry." ER24. But by the time the Court reached that conclusion the jury had been allowed to hear and consider inherently inflammatory

arguments to the contrary, arguments that dominated West's case and its closing arguments.

In a case that included other accusations of deceptive or otherwise even criminal-type conduct, a jury might be expected not to be unduly swayed by unsupported accusations of fraud. In this otherwise typical, and even a bit technical, business competition and infringement case, though, the jury could not help but be swayed by such accusations. In view of the foregoing, if the jury found the '169 Registration invalid for lack of secondary meaning of the claimed trade dress, its finding was likely prejudiced by the fraud claim, requiring at least a new trial.

### b. The fraud claim, and numerous instances of misconduct by West's counsel in connection therewith, prejudiced any jury finding on functionality.

It should go without saying that erroneously putting any accusation of fraud before a jury is likely to prejudice the accused party. That basic level of prejudice was then aggravated by West's counsel. See *W.V. Realty, Inc. v. N. Ins. Co. of New York*, 334 F.3d 306, 316-17 (3d Cir. 2003) (new trial warranted by erroneous admission of "bad faith" and "fraud" evidence and repeated

references by counsel and witnesses). In the trial of this case, West's counsel took full advantage of the District Court's later-regretted decision to let West's fraud claims go to the jury. For example, the District Court sustained OTR's objections to West's counsel's misstatements regarding Evans' email communications with Deveau, OTR's trademark counsel. SER227-28. And West's counsel referred to OTR's '169 Registration as "the only registration ever on a tire tread pattern." SER144. Arguing that OTR had committed fraud to get it, counsel stated:

> Plaintiffs' own expert in the tire industry, Mr. Leyden, had never heard of trade dress on a tire tread. Mr. Pendino, who'd been in the tire industry for 31 years, had never heard of the trade dress on a tire tread. How is OTR the only company to get it on a pattern where *both parts of that lug perform a function*? We know the answer to that now. They submitted two false Declarations to do it.

SER146 (emphasis added). But West's counsel knew this was a blatant falsehood; OTR had sought to introduce other tire tread trademark registrations, SER604-06, SER607-08, SER609-12, SER613-15, but West vehemently objected (in writing, SER618-21, and orally, SER173-76), and the District Court excluded them, SER183-84. West even admitted to the Court during argument on

the other registrations that West's own (excluded) expert had reviewed those other trademarks for tire treads. SER177-81. To argue that these items did not exist after successfully convincing a judge to exclude them compounded the prejudice of allowing an inflammatory accusation of fraud to go to the jury in the first place.

In addition to complaining of an "*ad hominem* attack"[4] on West's counsel, West offers the sad excuse that one of the registrations it told the jury did not exist was not for a "product design", and two of the purportedly nonexistent trademarks are not "registered on the Principal Register". [W2BR40, n. 15] This argument is somewhat belied by the fact that West fought so hard to exclude them. In addition, a trade dress mark must be deemed non-functional by the Examiner to qualify for registration on the Supplemental Register. 15 U.S.C. §1091(c) ("[for] the purposes of

---

[4] West wrongly implies that OTR is substituting a somehow irrelevant attack on counsel's personal character. To the contrary, the issue is entirely what counsel said, and its tortured relationship to the record. The fact that West's counsel's *statements* were "false" is obviously relevant to their prejudicial effect on the jury. That they were "blatantly" so is also, as well as to the pattern of misconduct in West's presentation of its fraud case and its prejudicial effect, underscoring the need for a new trial.

registration on the supplemental register, a mark may consist of...any matter that as a whole is not functional...") Whether a trademark is registered on the Principal Register or Supplemental Register is thus irrelevant to the argument West's counsel made to the jury, in which he misrepresented that *no* tire tread trade dress registrations existed other than the '169 Registration and insinuated that this was because all tire treads were supposedly functional and that OTR had committed fraud. Both those premises were false; as to the former, U.S. Trademark Registrations No. 4,030,010, SER609–12, and No. 4,030,011, SER613–15, both listed on the Supplemental Register, covered tire tread designs for Tire Mart, Inc. The Examiner in each of those instances found the tires' trade dress to be non-functional. See id.

\* \* \* \* \*

The District Court's conclusion that the jury's invalidity verdict was likely cause by conclusions regarding functionality and secondary meaning rather than West's unsupported fraud accusations was an abuse of discretion. As explained above, there was not enough evidence on either point to support such findings, and no instruction or direction to the jury that they had to make

them if they found fraud. Nor could a jury in a case like this reasonably be expected not to be influenced by claims in the nature of fraud. OTR is thus entitled to judgment on its registered trademark infringement claims, or at least a new trial untainted by West's unsupported fraud claims.

## D. The District Court's Erroneous Foreclosure of OTR's Unregistered Trade Dress Claims Was Not Harmless Error.

OTR's Amended Complaint included in its claims of infringement the allegation that West used the overall Outrigger tire appearance to sell production tires using the copied Outrigger design. ER668 ¶73 (alleging that West's commercialization of counterfeit tires bearing the OTR Marks constitutes "a false designation of origin... in violation of the Lanham Act, 15 U.S.C. §§1114 *and* 1125(a)" (emphasis added)). However, because the "OTR Marks" referred to in ¶73 are defined as OTR's trademark registrations, ER643 ¶3, West contends that the §1125(a) unregistered trade dress claim asserted in ¶73 is limited to "those [features] claimed in the '169 trade dress registration". W2BR54. West reasons from this that OTR's amended complaint "fails to identify the low profile [sidewall] of the Outrigger tires as forming

any part of the protected trade dress," W2BR54, despite the fact that the low profile is clearly depicted in the drawing of the '169 Registration, showing a tire bearing the subject tire tread design claimed as the mark:



(Image reproduced from '169 Registration, ER101.) Although a portion of the sidewall is dotted out to indicate that it is not claimed as part of the '169 Registration mark, the overall appearance of the tire bearing the subject tread remains plain to see. Indeed, the '169 Registration file history, including OTR's originally submitted drawing (without dotted lines) and its original description of the requested mark as including "the tire sidewall being substantially square to the tread", put West on notice that OTR considered the sidewall to form a significant part of the distinctive overall appearance of the Outrigger tire, and thus part of the unregistered

trade dress underlying its request for the '169 Registration. See ER254, 260.

West's obtuse interpretation of ¶73 is undermined by its illogical supporting supposition that OTR would have redundantly alleged §1114 and §1125(a) violations for infringement of the same mark, the latter claim requiring OTR to prove validity while the former did not. Paradoxically, the District Court thought this very redundancy demonstrated that OTR *would not* be prejudiced by the preclusion of its unregistered trade dress claim:

> Finally, because the registered trade dress was found invalid as functional and/or lacking secondary meaning, any *unregistered trade dress based on the same features* as the registered trade dress *would also be invalid, particularly so considering there are no presumptions of validity* which attach to unregistered trade dress, unlike registered trade dress.

ER36 (emphasis added). Both West and the District Court have it backwards: OTR would not have pled a §1125(a) claim intending merely to assert an "unregistered trade dress based on the same features as the registered trade dress." Instead, the only reasonable interpretation of ¶73 was that OTR asserted something more than the tread design mark of the '169 Registration. That "something

more" was the tire's overall appearance, including the sidewall, and its relationship to the tread.

Nor was the District Court correct to conclude that "[i]f something is 'functional,' (*i.e.*, the low profile of the Outrigger tire) it is not part of a valid trade dress, registered or unregistered." ER36. To the contrary, this Court has noted that a trade dress that is not essential to use and does not affect cost or quality of an article is *not* functional for trademark purposes, even though elements of it may contribute to an item's function. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252 (9th Cir. 2001). The jury would not have been bound to discount the importance of other aspects of the the Outrigger's appearance, including its short sidewall, by the limits of the '169 Registration, and might have come to a different conclusion in view of *Clicks Billiards* had OTR been permitted to pursue its unregistered trade dress claim. And that claim was pled in OTR's complaint; indeed, were it not, OTR's §1114 and §1125(a) claims would have been, at least in part, redundant.

The preclusion of OTR's unregistered trade dress claim by the District Court was also not harmless. It foreclosed OTR from presenting an alternative theory of unfair competition to the jury,

one also based on aspects of the Outrigger's appearance that were shown at trial to be distinctive but that were not covered by the '169 Registration (and thus not advanced by OTR's registered trademark infringement claim). OTR's unregistered trade dress encompassed the overall commercial impression from the appearance of the Outrigger tire, including the low-profile sidewall and its relation to the tread, whereas the '169 Registration was confined to the tread.

The prejudice to OTR from limiting its infringement claims to the tread surface in the '169 Registration is illustrated by West's reliance at trial on the existence and appearance of other AWP tires with the same types of treads, such as the Galaxy Beefy Baby. West invoked the appearances of these other tires in defending against OTR's *registered mark* infringement claims. As shown by photographic illustration in OTR's opening brief at OTRBR86, the differences in appearance between the Outrigger and the Beefy Baby, while apparent just from their treads, are undeniably more apparent when the two tires' radically different shapes and sidewalls are included; the Outrigger's low sidewall is plainly unlike the conventional sidewall of the Beefy Baby.

To use the District Court's words, OTR's unregistered trade dress, because it included the distinctive sidewall, was simply not "based on the same features" (ER36) as its '169 Registration. And an unregistered trade dress claim would have offered OTR two distinct advantages lost when the District court barred it: it would not have required the jury to make a threshold finding that OTR possessed a valid registration, nor would it have been subject to West's improper fraud claims. By precluding OTR from advancing its unregistered claim based on the overall look of its tire (including its different and distinct sidewall), though, the District Court unfairly foreclosed OTR from a significant avenue for relief.

From the outset of this action, OTR's Complaint alleged that West infringed a separately-defined intellectual property asset (unregistered trade dress) arising under a separate section of the Lanham Act (§1125(a)) than the '169 Registration. The District Court's 11th-hour order precluding OTR from proceeding on that cause of action was erroneous, and must be reversed.

## CONCLUSION

The District Court's denial of a new trial on OTR's registered trademark infringement claim and its striking of OTR's unregistered

trade dress claim should be reversed. Judgement should be entered in favor of OTR on its registered trademark infringement claim, or in the alternative OTR should receive a new trial on that claim. OTR's unregistered trade dress claim should also be tried.

Respectfully submitted this 30th day of June, 2017.

*/s/ Joel D. Bertocchi*

| | |
|---|---|
| Robert J. Carlson | Joel D. Bertocchi |
| LEE & HAYES PLLC | Kimberly A. Jansen |
| One Convention Place | Jeffrey S. Dixon |
| 701 Pike Street | HINSHAW & CULBERTSON LLP |
| Suite 1600 | 222 North LaSalle Street |
| Seattle, WA 98101 | Suite 300 |
| (206) 315-4001 | Chicago, IL 60601 |
| bob@leehayes.com | (312) 704-3000 |
| | jbertocchi@hinshawlaw.com |

*Counsel for Appellees/Cross-Appellants*

## CERTIFICATE OF COMPLIANCE

[FRAP 28.1(e)(2) and Circuit Rule 28.1-1(d)]

I certify that, pursuant to Fed.R.App.P. 28.1(e)(2) and Circuit Rule 28.1-1(d), the attached brief is proportionally spaced, has typeface of 14 points or more and contains 6,374 words.

*/s/ Joel D. Bertocchi*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing reply brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF System on June 30, 2017. All participants in the case are registered CM/ECF users, and that service will be accomplished by the Appellate CM/ECF System.

*/s/ Joel D. Bertocchi*