Nos. 16-35897 and 16-35936 (Consolidated)

_____

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

OTR WHEEL ENGINEERING, INC.,
BLACKSTONE/OTR, LLC, and F. B. T. ENTERPRISES, INC.,

*Plaintiffs/Appellees/Cross-Appellants,*

v.

WEST WORLDWIDE SERVICES, INC., SAMUEL J. WEST, SSL
CHINA, LLC, QINGDAO STW TIRE CO. LTD., and SSL HOLDINGS,
INC.,

*Defendants/Appellants/Cross-Appellees.*

_____

APPEAL FROM THE U.S. DISTRICT COURT FOR THE EASTERN
DISTRICT OF WASHINGTON, SPOKANE
NO. 2:14-CV-00085-LRS

_____

PETITION FOR PANEL REHEARING OF
OTR WHEEL ENGINEERING, BLACKSTONE/OTR, LLC
AND F.B.T ENTERPRISES, INC.

_____

Robert J. Carlson
LEE & HAYES PLLC
One Convention Place
701 Pike Street
Suite 1600
Seattle, WA 98101
(206) 315-4001
bob@leehayes.com

Joel D. Bertocchi
AKERMAN LLP
71 South Wacker Drive
47th Floor
Chicago, IL 60606
(312) 634-5700
joel.bertocchi@akerman.com

*Counsel for Plaintiffs-Appellees, Cross-Appellants*

# TABLE OF CONTENTS

I.   INTRODUCTION AND STATEMENT OF ISSUES ..................... 1

II.  ARGUMENT ........................................................... 1

    A.   The Record Actually Contains *No* Evidence From Which The Jury Could Have Concluded That The Steep Lug Angle Of The Outrigger Tire Was "Essential" To Its Function Or Had Not Acquired Secondary Meaning........ 1

        1.   There Was No Evidence That The Steep Angle Of The Outrigger's Lugs Was Functional, Much Less Essential To Function, And Ray Evans' E-Mail Did Not Say Otherwise. ......................................... 4

        2.   The Court Asked The Wrong Question Of The Wrong People in Finding Substantial Evidence Of Distinctiveness...................................................... 7

    B.   OTR's Claim Under §43 Of The Lanham Act Included An Unregistered Trade Dress Claim, As The District Court's And West's Actions Confirmed...................................... 11

        1.   OTR's Amended Complaint pleaded infringement of both registered and unregistered rights. ........... 12

        2.   West and the District Court were aware that OTR asserted unregistered, common-law trade dress infringement. ....................................................... 15

        3.   The District Court erred in forbidding OTR from pursuing its unregistered trade dress claims, and the error was not harmless. .......................... 17

III. CONCLUSION ...................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.,*
    457 F.3d 1062 (9th Cir. 2006) ...................................................... 4

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
    251 F.3d 1252 (9th Cir. 2001) ...................................................... 4

*GoTo.com, Inc. v. Walt Disney Company,*
    202 F.3d 1199 (9th Cir. 2000) .................................................. 14

*Matal v. Tam,*
    137 S. Ct. 1744 (2017) ............................................................. 14

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,*
    532 U.S. 23 (2001) ....................................................................... 4

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992) .................................................................. 14

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,*
    529 U.S. 205 (2000) ............................................................. 9, 10

**Statutes**

15 U.S.C. §1052(f) ........................................................................ 7

15 U.S.C. §1114 ..................................................... 12, 14, 15, 16

15 U.S.C. §1116(d) ............................................................. 12, 16

15 U.S.C. §1125 ............................................................................ 1

15 U.S.C. §1125(a) ............................................................. *passim*

15 U.S.C. §1125(a)(3) .............................................................. 12

**Other Authorities**

Fed. R. App. P. 40 ....................................................................... 1

Plaintiffs/Appellees/Cross-Appellants OTR Wheel Engineering, Inc., Blackstone/OTR, LLC and F.B.T. Enterprises, Inc. (collectively "OTR"), pursuant to Fed. R. App. P. 40, hereby petition the panel in this case for rehearing of its decision announced on July 24, 2018 (hereinafter "Opinion", copy attached), as follows:

## I.     INTRODUCTION AND STATEMENT OF ISSUES

The panel should rehear two aspects of its decision: its ruling that there was sufficient evidence from which the jury could have concluded that the steep lug angle of the Outrigger tire—the *only* feature of the tire tread that was trademarked—was functional and had not acquired distinctiveness (Opinion 27-28); and its ruling that OTR did not sufficiently plead an unregistered trade dress claim under § 43 of the Lanham Act, 15 U.S.C. §1125 (Opinion 28-30).

## II.     ARGUMENT

**A.     The Record Actually Contains *No* Evidence From Which The Jury Could Have Concluded That The Steep Lug Angle Of The Outrigger Tire Was "Essential" To Its Function Or Had Not Acquired Secondary Meaning.**

After upholding the District Court's ruling that the trademark fraud claim of Defendants West Worldwide Services, Inc., Samuel J. West, SSL China, LLC, Qingdao STW Tire Co., Ltd., and SSL

1

Holdings, Inc., (collectively "West") was not supported by clear and convincing evidence (Opinion 18-24), the Court considered whether the jury's invalidity verdict could be upheld on other grounds. Ultimately the Court ruled that the record contained "substantial evidence" from which the jury could have concluded that "the tire tread trade dress" was functional or had not acquired distinctiveness. Addressing issues that were the subject of extensive testimony at trial, expert and otherwise, the Court addressed both issues briefly:

> There was substantial evidence available for the jury to conclude that the tire tread trade dress was either functional or non-distinctive…. While OTR argued that the specific angle of the tire tread did not affect the functionality of the tread, the jury could have concluded otherwise. For example, in Ray Evans' email, he wrote that "[a]ll of these design elements contribute to the tire's self cleaning ability that is needed to operate in adverse muddy conditions and also make it readily recognizable." Likewise, in looking at the Outrigger tire, the jury could have concluded that the tread design was too similar to other tread designs to have acquired secondary meaning.

Opinion 27-28.

The record does not support either conclusion. *First*, the Evans e-mail, as the Court itself acknowledged elsewhere, addressed the functionality of the overall tread, which was unquestionably functional (as it is with all tires), but which was not trademarked. It

did *not* address the functionality of the only part of the tire that *was* trademarked: its steep lug angle. And on *that* issue it was, in fact, undisputed below that the steep angle of the Outrigger lugs was not only not *essential* to function; it was actually counter-functional.

*Second*, in ruling that the jury could have found non-distinctiveness simply by comparing how tires looked, the Court continued to focus on the "tread design" rather than what was actually trademarked. But it also assigned conclusive weight to the tire's appearance—*i.e.*, its "inherent distinctiveness"—which is something the Supreme Court has said *cannot* actually show secondary meaning. And finally, the Court placed in the hands of lay jurors the visual distinctiveness of a specialty product sold only to the makers of aerial work platforms ("AWPs"), for which jurors could not be market proxies. The notion that uncontested and extensive testimony on the manufacturer's use of a product sold only in a limited market, the sort of evidence the Supreme Court says is required, can be overcome (or ignored) by jurors just by looking at whether two things they would never buy resemble one another sets a dangerous precedent for trademark cases.

**1.    There Was No Evidence That The Steep Angle Of The Outrigger's Lugs Was Functional, Much Less Essential To Function, And Ray Evans' E-Mail Did Not Say Otherwise.**

In evaluating evidence of functionality the Court started with the wrong premise by considering whether "the tire tread trade dress" was functional. See Opinion 27. But as the Court recognized elsewhere in the Opinion, the "tire tread trade dress" was not trademarked; rather, it was only one aspect (the steep angle) of one feature (the lugs) of the tread. See Opinion 23 ("It was the angle of the tread that OTR sought to protect with its registration."). Accordingly the functionality of the overall "tread" or "tread design" was irrelevant to whether, as was required, the specific trademarked feature—the steep lug angles—was "essential to the use or purpose" of the tire, see *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006), regardless of whether elements of the overall tread were functional, see *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258-59 (9th Cir. 2001).

Confined to what was actually trademarked, the Court's conclusion that there was sufficient proof of functionality is simply

not supported by the record. As an initial matter, Evans' e-mail (ER347) never addressed the lug angles as a separate, trademarkeable feature, much less a functional one. Most of his e-mail talked about the Outrigger's distinctive appearance, and it is only in that context that Evans even mentioned "the unique angle of the lugs" as one of four elements that made the Outrigger *look* different (but not function differently). And when he did mention function, it was only to refer to "all of these design elements," and then only to say that they collectively "contribute" to—as opposed to being *essential* to—self-cleaning. ER347. Evans thus never addressed either the functionality of the lug angles or whether any element, or even all of them, was "essential" to function.

The Court's focus on the "tire tread trade dress" instead of what was actually trademarked is critical. All lugs, as parts of a tread, are surely functional; without lugs there would be no tread. Indeed, the Court itself noted the distinction between the overall tread and the lug angles when it observed that the same Evans e-mail did not falsely claim functionality. Opinion 23. But there was, quite literally, *no* evidence that the particular *angle* of the Outrigger lugs even helped functionality, much less was essential to it. West's expert

testified that he had only considered the "general" functionality of the overall tread. SER189 ("All tire treads have functions."). By contrast, the witnesses who did focus on the angles made it clear they were not functional, as the Court itself noted. See Opinion 23 ("Smith went on to argue [to the USPTO] that the distinctive angle of the Outrigger tread did not affect the self-cleaning function of the tires. It was the angle of the tread that OTR sought to protect with its registration."). And OTR's expert, Jerry Leyden, who also addressed angles, explained that the steep angle of the Outrigger's lugs made it harder for mud to be expelled, which worked against traction and self-cleaning. See SER296-98 ("[T]he lack of openness of the design as well as the angle of the lugs are in the wrong direction if you're trying to maintain or enhance a tractive capability... The Outrigger tire is – has steeper lugs and... it's not the right way to go... if you're interested in enhancing a traction capability in off-road applications.").

Leyden's testimony, which West never challenged, made it clear that the trademarked lug angles made functionality worse, not better. West introduced no evidence to the contrary. Accordingly the Court

should rehear its ruling that "substantial evidence" supported a finding of functionality.

### 2. The Court Asked The Wrong Question Of The Wrong People in Finding Substantial Evidence Of Distinctiveness.

At trial OTR introduced extensive evidence that the Outrigger trademark had acquired distinctiveness in the market for AWP tires, including (1) the fact that OTR had developed the distinctive look of the Outrigger at the specific request of one of the AWP industry's biggest manufacturers, which has purchased it ever since (SER331-34), (2) the testimony of at least two lay and three expert witnesses on its use by OTR, including in advertising,[1] and (3) OTR's "substantially exclusive and continuous" use of the trademarked feature for at least 14 years as of the time West started trying to copy it, far more than the mere 5 years required under § 2(f) of the Lanham Act, 15 U.S.C. §1052(f) (see ER119 (USPTO examiner), ER151, SER556-65). By contrast, West's sole witness on the subject was excluded (SER 91-94).

---

[1] Witnesses Taylor (SER324-25), and Smith (SER688-90), and experts Leyden (SER294-95), Evans (SER221), and Sarabia (SER231-45).

As with functionality, then, the evidence on acquired distinctiveness was entirely one-sided, and the Court did not say otherwise. Instead it found "substantial" evidence of lack of secondary meaning based solely on an assumed comparison by jurors of how tires looked: "[I]n looking at the Outrigger tire, the jury could have concluded that the tread design was too similar to other tread designs to have acquired secondary meaning." Opinion 28.

There are three problems with this approach; it asked the wrong question, it applied the wrong rule of law and it asked the wrong people to answer that wrong question. First, as was the case with functionality, the Court continued to focus on "the tread design," which was not what was trademarked. The Court did not hold, then, that there was substantial evidence from which the jury could have concluded, by looking at other tires, that that the steep angle of the Outrigger's lugs were "too similar" to the lug angles of other tires.

The second, more critical, problem is that the appearance of the Outrigger compared to other tires—its "inherent distinctiveness"—does not determine secondary meaning. As the Supreme Court has explained, a product design's appearance compared to others—its "inherent distinctiveness"—cannot determine whether the design can

be trademarked; rather, the issue is whether it has *acquired* secondary meaning in the market where it is sold. See *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 214-15 (2000).

Under *Samara Bros.* distinctiveness is not, therefore, about how a trade dress looks compared to others; it is about what its owner has done with it. That is why OTR's extensive evidence about distinctiveness—recall, West introduced none—focused on how OTR had used its Outrigger trade dress in the market, and not on comparing appearances. (It was that kind of evidence—continuous and exclusive use—that actually convinced the USPTO that the design *had* acquired distinctiveness, see Opinion 22.) And that is also why, when the jury was instructed on acquired distinctiveness, it was *not* told to make the comparison the Court relied on; it was never told to take into account, or even to consider, whether the Outrigger or any part of it looked "similar" to other tires. Rather, it was told that a product "acquires secondary meaning" when it is used by its maker in a way that prompts consumers to identify it with its source. See Jury Instr. 15, attached as APP3-4.

In its distinctiveness instruction the District Court listed a number of factors for jurors to consider, including consumer

perception, advertising, utility, extent and exclusivity of use of the trade dress, whether West had copied the design (which the jury found they had), and actual confusion (which the Court noted West had conceded, Opinion 18). *Id.* But nowhere in that instruction did the Court invite jurors to consider whether the Outrigger's lug angles, or even its "tread design," looked like those of other tires. (Indeed, had it done so the instruction would have contravened *Samara Bros.* by incorporating inherent distinctiveness.) Accordingly what this Court relied on in finding "substantial evidence" of lack of acquired distinctiveness was a comparison the jury was not actually allowed to make.

The latter point suggests an additional problem with the Court's ruling. In relying on lay jurors' assumed comparison of the Outrigger to other tires, the Court invited them to compare products they would never buy. The Outrigger is not a car or truck tire of the type jurors would be familiar with; rather, it is marketed and sold only to the few companies that make AWPs. It is *that market's* view of whether the Outrigger is distinctive—as addressed by OTR's evidence of distinctiveness and by the jury instruction—that matters. But lay jurors would be a poor proxy for the likes of Genie and JLG, since

they would never buy an AWP tire. For this reason whether lay jurors thought the Outrigger looked "similar" to other tires was actually irrelevant—which is why the District Court instructed them to consider a number of other factors, but not visible "similarity." Accordingly the Court should also rehear its ruling that "substantial evidence" supported a finding of lack of distinctiveness.

**B.    OTR's Claim Under §43 Of The Lanham Act Included An Unregistered Trade Dress Claim, As The District Court's And West's Actions Confirmed.**

In holding that OTR had not pleaded an unregistered trade dress claim the Court said that "OTR appeared to rely on the validity of its registration and did not put the court or West on notice of its intent to proceed with an unregistered trade dress claim. Our review of the first amended complaint, which emphasized OTR's registrations, confirms that impression." Opinion 30. The record says otherwise; both the content of the amended complaint and the actions of West and the District Court in light of it demonstrate that they both knew OTR was pursuing a claim for infringement of its trade dress as an unregistered intellectual property asset under 15 U.S.C. §1125(a), in addition to claims based on its status as a registered trademark.

## 1. OTR's Amended Complaint pleaded infringement of both registered and unregistered rights.

Count I of the amended complaint, entitled "Federal Trademark Counterfeiting and Infringement," cited 15 U.S.C. §§1114, 1116(d), and 1125(a). ER666-69. In that count OTR defined three registered "OTR Marks" in ¶69, one of which, detailed in ¶72, was the "*Outrigger* Trade Dress" referred to below as the "'169 mark." In ¶73, though, OTR accused West of violating both §§1114 *and* 1125(a) of the Lanham Act by manufacturing, importing and distributing tires "bearing any or all of the OTR Marks, *or bearing any marks closely simulating the OTR Marks.*" ER668 (emphasis added). OTR alleged that this constituted both infringement under §1114, which refers to actions taken "without the consent of the registrant," and also to infringement under §1125(a), which makes no reference to registration other than to point out, at §1125(a)(3), that actions can be brought on marks "not registered on the principal register."

West was thus clearly on notice that OTR was claiming that West's tires infringed the *Outrigger* Trade Dress as both a registered and unregistered asset; that is, that OTR relied on both its registration (under §1114) and its common-law rights (under

§1125(a)). Neither West nor the Court disputed that point. Instead, in its opinion the Court misconstrued ¶73 as solely relating to OTR's reverse-passing-off claim. See Opinion at 29 ("OTR asserted a violation of section 43 in paragraph 73, but that paragraph referred to the claim for reverse passing off, not to a claim for infringement of an unregistered trade dress."). But ¶73's reference to "bearing any or all of the OTR Marks [which had been defined in ¶69 as registered marks], or bearing any marks closely simulating the OTR Marks," ER668, put West on notice of a claim of conventional passing off in addition to its reverse passing off claim, *i.e.*, using the OTR Marks on West tires in order to confuse the buyer into believing these counterfeit tires were genuine OTR tires. The evidence also supported the conclusion that West performed both types of false designation under §1125(a), first reverse-passing-off genuine OTR tires as having originated with West (see Opinion 10-18), and later passing off West tires as OTR's by using the distinctive OTR Trade Dress on West's Extremelift-branded tires.

Contrary to the Panel's misunderstanding, OTR's amended complaint clearly asserted *both* claims under §1125(a). It is well settled that §1125(a) (Lanham Act §43(a)), which is silent on

registration except to say it is not required, addresses unregistered trademarks and trade dress, and not registered trademarks. "Section 43(a) 'prohibits a broader range of practices than does §32,' which applies to registered marks… but it is common ground that §43(a) protects qualifying *unregistered* trademarks," *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); accord *Matal v. Tam*, 137 S. Ct. 1744, 1752 (2017) ("Most important, even if a trademark is not federally registered, it may still be enforceable under § 43(a) of the Lanham Act").

The Opinion cites *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000) for the proposition that §43(a) [§1125(a)] protects against infringement of both registered and unregistered marks and trade dress, and concludes "OTR's reference to section 43 did not by itself signal an unregistered trade dress claim." Opinion 29. But the Court's reading of the complaint did not account for OTR's express reference in the same count to §1114 in connection with its registered mark infringement claim. OTR alleged infringement of its *registered* trademark under §1114, and simultaneously alleged West's false designation of origin under §1125(a). Just as in *Two Pesos*, this signaled a reader of the amended

complaint that OTR invoked different sets of rights under the two statutes. And as shown below, West was aware of the difference.

## 2. West and the District Court were aware that OTR asserted unregistered, common-law trade dress infringement.

The record also shows that West was aware that OTR did not rely solely on its trademark registration in its trade dress claims, and that it would have to defend a claim of unregistered trademark infringement in addition to reverse passing off. West's own submission to the Amended Joint Pretrial Order asserted that two of the OTR entities bore the burden of proving the *Outrigger* trade dress was non-functional and had acquired secondary meaning because, according to West, the two OTR entities did not own the '169 trade dress registration. SER 17, SER 622. That assertion would have made no sense if West believed OTR was only making registered and reverse-passing-off claims.

The District Court also recognized that the OTR entities were asserting trade dress rights based both on registration (under §1114) and common-law rights (under §1125(a)), when it addressed the different statutory rights in its November 30, 2015 Order on West's Motion to Dismiss: "OTR Wheel does not have standing to pursue the

remedies under 15 U.S.C. §§1114(1) and 1116(d), and instead is limited to pursuing the remedies available under 15 U.S.C. §1125(a) of the Lanham Act (false designation or origin) *for alleged infringement of a non-registered common law mark.*" SER70 (emphasis added). And the District Court drew the same distinction in regard to Plaintiff Blackstone/OTR: "Blackstone, like OTR Wheel, is limited to pursuing a trademark claim under 15 U.S.C. §1125(a).… Only F.B.T. [which owned the registered trademark] can assert claims under 15 U.S.C. §§ 1114(1) and 1116(d)." SER71. Again, these assertions, made in response to arguments from West, would have made no sense if the Court thought OTR was only asserting registered mark infringement and reverse-passing-off claims.

It was also clear from what OTR pleaded in asserting those common-law rights that its claims under §1125(a) went beyond the reverse-passing-off claim that was tried. Paragraph 73 expressly accused West of a number of actions in connection with the counterfeit tires it had sold, including "importation, marketing, advertising, shipping and/or sale." ER668. None of those actions would have applied to West's reverse passing off of the Genie test tires as its own, which was the subject of the reverse-passing-off claim

that the Court upheld (see Opinion 12-18). Those allegations made it clear to West and to the District Court that OTR was asserting unregistered trade dress infringement under § 43 in addition to its other claims, and both acted accordingly.

### 3. The District Court erred in forbidding OTR from pursuing its unregistered trade dress claims, and the error was not harmless.

Despite what was in the complaint and how West and the District Court responded to it, the District Court entered a ruling three days before trial that barred OTR Wheel and Blackstone/OTR from pursuing unregistered trade dress rights:

> Plaintiffs are limited to pursuing trade dress claims based on in [sic] the '169 registration, and may not pursue separate *unregistered* trade dress claims.

SER63. That ruling not only barred OTR from pursuing a separate passing-off, false-designation-of-origin claim based on the overall commercial appearance of the *Outrigger* tire; it prevented OTR from asserting *any* common-law rights in its design, even rights co-extensive with the description of the mark in the '169 registration. For that reason, the Court's observation that "OTR's unregistered claim was only precluded to the extent that it asserted a broader claim than the registered claim" (Opinion at 30) was also incorrect.

What the District Court actually said was that the only infringement claim OTR could pursue was its registered claim "based on... the '169 registration." That ruling ruled out even unregistered claims that were coextensive with that registration.

The District Court's instructions to the jury bear out this understanding. Had the District Court not barred all claims other than registered claims, it would have instructed the jury, in compliance with Ninth Circuit Model Jury Instruction 15.8 and as OTR requested (see APP5-6), to consider whether *all* the evidence showed that OTR owned a valid trade dress.[2] But because the District Court forbade *any* unregistered claim, it gave its own version of Model Instruction 15.8 (see APP2), which instructed the jury that OTR's trade dress claim was based only on its certificate of registration.

---

[2] OTR's proposed Instruction No. 7 (APP6) followed the form of Model Instruction 15.8, including the last paragraph of the model, stating "However, if the Defendants show by a preponderance of the evidence that the trademark is functional or has been abandoned or that the registration was fraudulently obtained, then the facts stated in the certificate are no longer conclusively presumed to be correct. You should then consider whether all of the evidence admitted in this case, in addition to this certificate of registration, shows by a preponderance of the evidence that the mark is valid ...."

Moreover, the harm to OTR from the District Court's error was profound. As detailed in OTR's brief, OTR was prohibited from presenting its alternative theory of West's unfair competition, the passing-off claim under §1125(a). The value of that claim was obvious; it would have allowed OTR to assert rights in its trade dress that would not have been subject to West's claims of fraud on the USPTO—claims the District Court and this Court later threw out.

Consistent with the final paragraph of the Opinion, emphasizing that a certificate of registration shifts the burden of proof but is not a prerequisite to a trade dress claim, the Court should rehear the issue of the District Court's erroneous ruling limiting OTR's claim to infringement of a registered trademark in its product configuration.

## III.   CONCLUSION

For the foregoing reasons, OTR requests that the Court rehear its rulings (1) that there was "substantial evidence" that OTR's trademarked steep lug angles were functional and lacked distinctiveness (Opinion 27-28), and (2) that OTR was properly barred from asserting an unregistered trade dress claim (Opinion 28-30).

Respectfully submitted this 14th day of August, 2018.

/s/ Joel D. Bertocchi

| | |
|---|---|
| Robert J. Carlson | Joel D. Bertocchi |
| LEE & HAYES PLLC | AKERMAN LLP |
| One Convention Place | 71 South Wacker Drive |
| 701 Pike Street | 47th Floor |
| Suite 1600 | Chicago, IL 60606 |
| Seattle, WA 98101 | (312) 634-5700 |
| (206) 315-4001 | joel.bertocchi@akerman.com |
| bob@leehayes.com | |

*Counsel for Plaintiffs-Appellees, Cross-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Circuit Rule 35-4 and 40-1(a), that the attached petition for panel rehearing contains 3,896 words and is prepared in a format, type face, and type style that complies with Fed. R. App. P. 32(a)(4)-(6).

*/s/ Joel D. Bertocchi*

August 14, 2018

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Petition for Panel Rehearing of OTR Wheel Engineering, Blackstone/OTR, LLC and F.B.T Enterprises, Inc. for with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF System on August 14, 2018. All participants in the case are registered CM/ECF users, and service will be accomplished by the Appellate CM/ECF System.

*/s/ Joel D. Bertocchi*

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| OTR WHEEL ENGINEERING, INC.; BLACKSTONE/OTR, LLC; F.B.T. ENTERPRISES, INC., *Plaintiffs-Appellees/ Cross-Appellants*, <br><br> v. <br><br> WEST WORLDWIDE SERVICES, INC.; SAMUEL J. WEST, individually, and his marital community; SSL CHINA, LLC; QINGDAO STW TIRE CO. LTD.; SSL HOLDINGS, INC., *Defendants-Appellants/ Cross-Appellees.* | Nos. 16-35897 <br> 16-35936 <br><br> D.C. No. 2:14-cv-00085-LRS <br><br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted March 7, 2018
Seattle, Washington

Filed July 24, 2018

Before: Johnnie B. Rawlinson, Richard R. Clifton,
and Morgan Christen, Circuit Judges.

Opinion by Judge Clifton

# SUMMARY[*]

## Lanham Act

The panel affirmed the district court's judgment after a jury trial, holding defendants liable for reverse passing off under the Lanham Act.

The parties were competitors in the business of selling industrial tires. Defendant West asked a supplier of plaintiff OTR to provide him with sample tires from OTR's molds, and he asked the supplier to remove OTR's identifying information from the tires so that he could use the tires to obtain business from one of OTR's customers.

The panel held that West could be found liable for reverse passing off because he did not simply copy OTR's intellectual property, but rather passed off genuine OTR products as his own.

The panel affirmed the district court's conclusion that West did not establish that OTR committed fraud on the United States Patent and Trademark Office. The panel confirmed that fraud on the PTO must be established by clear and convincing evidence.

The panel affirmed the district court's order denying a new trial on the issue of trade dress validity.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed the district court's rejection of a proposed jury instruction asserting a claim for infringement of an unregistered trade dress.  The panel explained that a registered claim converts to an unregistered claim if the registration is invalidated; thus, a plaintiff does not need to separately plead the identical unregistered claim.  But where the unregistered claim would cover something more than the registered claim, a plaintiff must put a defendant on notice of such through the pleadings.

The panel addressed additional issues in a concurrently filed memorandum disposition.

---

**COUNSEL**

Christine Marie Lebrón-Dykeman (argued), R. Scott Johnson, and Jonathan L. Kennedy, McKee Voorhees & Sease P.L.C., Des Moines, Iowa; John J. White Jr. and Kevin B. Hansen, Livengood Alskog PLLC, Kirkland, Washington; for Defendants-Appellants/Cross-Appellees.

Joel David Bertocchi (argued), Kimberly A. Jansen, and Jeffrey S. Dixon, Hinshaw & Culbertson LLP, Chicago, Illinois; Robert J. Carlson, Lee & Hayes PLLC, Seattle, Washington; for Plaintiffs-Appellees/Cross-Appellants.

---

4    OTR WHEEL ENG'G V. WEST WORLDWIDE SERVS.

**OPINION**

CLIFTON, Circuit Judge:

OTR Wheel and Samuel West are competitors in the business of selling industrial tires.[1] West asked one of OTR's suppliers to provide him with sample tires from OTR's molds, and he asked the supplier to remove OTR's identifying information from the tires. West wanted to use the tires to obtain business from one of OTR's customers. OTR sued West, asserting various claims under the Lanham Act and state law.

The primary issue before us is whether West can be found liable for reverse passing off under the Lanham Act. Pursuant to the Supreme Court's opinion in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), a claim for reverse passing off cannot be brought to prevent the copying of intellectual property. We conclude that West did not simply copy OTR's intellectual property but passed off genuine OTR products as his own, so we affirm the judgment holding him liable for reverse passing off.

---

[1] This case involves multiple plaintiffs and multiple defendants. Plaintiffs are OTR Wheel Engineering, Inc.; Blackstone/OTR, LLC; and F.B.T. Enterprises, Inc. Defendants are West Worldwide Services, Inc.; Samuel J. West, individually, and his marital community; SSL China, LLC; Qingdao STW Tire Co. Ltd.; and SSL Holdings, Inc. In briefing, the parties refer to each side generally as "OTR" for the Plaintiffs/Appellees/Cross-Appellants and "West" for the Defendants/Appellants/Cross-Appellees. Where Plaintiffs prevailed, the judgment was for all Plaintiffs against all Defendants. Likewise, where Defendants prevailed, the judgment was for all Defendants against all Plaintiffs. There is no need to draw any distinctions among plaintiffs or among defendants. We therefore follow the parties in referring to each side simply as OTR and West.

OTR WHEEL ENG'G V. WEST WORLDWIDE SERVS.      5

In this opinion, we also address other issues raised regarding the Lanham Act. In particular, we affirm the district court's conclusion that West did not establish that OTR had committed fraud on the United States Patent and Trademark Office (PTO). In doing so, we confirm that fraud on the PTO must be established by clear and convincing evidence. We also affirm the district court's order denying a new trial on the issue of trade dress validity, giving us cause to explain how a finding of fraud on the PTO affects a plaintiff's burdens in establishing a trademark claim. Finally, we affirm the district court's rejection of a proposed jury instruction asserting a claim for infringement of an unregistered trade dress. We explain that a registered claim converts to an unregistered claim if the registration is invalidated. Thus, a plaintiff does not need to separately plead the identical unregistered claim. But where the unregistered claim would cover something more than the registered claim, a plaintiff must put a defendant on notice of such through the pleadings.

The other issues raised by the parties—those that do not touch on the Lanham Act—do not warrant discussion in a precedential opinion. We address those remaining issues in a concurrently filed memorandum disposition.

## I.  Background

### A.  Statutory Framework

The Lanham Act prohibits conduct that would confuse consumers as to the origin, sponsorship, or approval of goods or services. *See Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017); *see also TrafFix Devices, Inc. v. Mktg. Displays, Inc.,*

6      OTR Wheel Eng'g v. West Worldwide Servs.

532 U.S. 23, 28 (2001).  To prevent consumer confusion, the
Act allows the producers of goods and services to enforce
trademark rights.  15 U.S.C. §§ 1114, 1125(a); *see also  Wal-
Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209–10
(2000).  A trademark is "any word, name, symbol, or device
. . . [used or intended to be used] to identify and distinguish
[goods] from those manufactured or sold by others and to
indicate the source of the goods."  15 U.S.C. § 1127.  In
addition, the Lanham Act protects more than words and
symbols.  It also protects a product's "trade dress," which
includes the packaging, dressing, and design of a product.
*TrafFix Devices*, 532 U.S. at 28; *Wal-Mart*, 529 U.S. at 209.

## B.  Factual History

OTR sells tires for industrial use.  One of OTR's products
is a tire called the "Outrigger."  OTR obtained a registered
trademark on the Outrigger name and a registered trade dress
on the Outrigger tire tread design.  OTR partnered with a
company called Solideal to make size "355" Outrigger
branded tires for the Chinese market. The 355-size tires are
commonly used for aerial work platforms, which are mobile
platforms sometimes referred to as "cherry pickers." In order
to produce the 355-size tires in China, Solideal contracted
with a plant operated by a Chinese company called
Superhawk.

West is in the same business as OTR, and he wanted to
sell tires to one of OTR's customers, Genie.  In December of
2011, West began discussions with Superhawk, the Chinese
manufacturer, about making a 355-size tire for West to sell to
Genie.  In the spring of 2012, West asked Superhawk for 16
of the 355-size tires for testing by the potential customer.
Superhawk advised West that it would take 50 days to make

a mold for West's tires. West responded, in writing, "I really need it much sooner. . . . Don't you make this size for Solideal [OTR's partner]? . . . Could you buff off the Solideal name on the sidewall or just remove the plate and let me get the tire tested?"

Superhawk initially refused, saying that it would be "dangerous" to use Solideal's mold because Superhawk had an agreement with Solideal. West responded by asking, "Will your mold be the same as the [S]olideal mold? If we take out the nameplate and all the sidewall information, nobody will know." West then asked Superhawk to make 50 tires for Solideal even though no Solideal order had been placed. Superhawk stated that it would make the 355-type tires "shortly."

In May of 2012, Superhawk confirmed to West that Superhawk's 355-size tires were OTR Outrigger tires made for Solideal. In the summer of 2013, Genie stopped buying the 355-size tires from OTR and began buying them from West.

## C.  Procedural Background

OTR brought Lanham Act claims against West for trade dress infringement, trade dress counterfeiting, and reverse passing off. OTR also asserted state law claims under the Washington Consumer Protection Act (WCPA), for trade secret misappropriation, and for tortious interference with various contracts and business relationships.

The case went to trial, with mixed results. The jury found West liable for reverse passing off in violation of the Lanham Act. The jury also found West liable for violating the WCPA

and for tortiously interfering with a contract between Solideal and Superhawk, as well as with business relationships involving OTR, Genie, Solideal, and Superhawk. West was not found liable for trade dress infringement, trade dress counterfeiting, trade secret misappropriation, or tortious interference with a contract between OTR and Genie.

The jury also found that OTR's claim for protected trade dress on its tire tread was invalid and that the trade dress registration had been obtained through fraud on the PTO. On a post-trial motion, the district court set aside the jury's determination that OTR had obtained its trade dress registration through fraud. The court otherwise entered judgment based on the jury's findings, including the finding that the protected trade dress claim was invalid. The court directed the PTO to cancel OTR's trade dress registration.

For the claims on which OTR prevailed, the jury determined that OTR should be awarded actual damages in the amount of $967,015. In addition to those damages, the judgment entered by the district court awarded prejudgment interest to OTR under state law and post-judgment interest at the rate authorized by 28 U.S.C. § 1961(a). The court maintained a preliminary injunction against West pending the outcome of this appeal.

In a separately filed memorandum disposition, we reverse the district court on the issue of prejudgment interest, vacate the preliminary injunction, and affirm as to all the remaining issues.

## II. Discussion

The parties raise four issues concerning the Lanham Act. First, West challenges the jury's finding that West is liable for reverse passing off OTR's tires as his own. West argues that the verdict is precluded by *Dastar*, in which the Supreme Court held that a reverse passing off claim cannot be brought to prevent the copying of intellectual property. Thus, we must determine whether West's conduct amounted to mere copying. We conclude that, instead of simply copying OTR's design, West used tires from an anticipated OTR order and passed those tires off as his own. We also address the parties' arguments regarding waiver and whether the jury's verdict was supported by substantial evidence.

Second, the jury found that OTR had obtained its tire tread trade dress registration through fraud on the PTO, but the district court set that finding aside as a matter of law. West challenges the district court's order. In considering West's challenge, we confirm that fraud on the PTO must be established by clear and convincing evidence. We agree with the district court that West did not establish fraud by clear and convincing evidence.

Third, the jury determined that OTR's protected trade dress claim was invalid. OTR challenges that verdict, arguing that it was driven by the jury's finding of fraud on the PTO. Given that the court set aside the fraud finding, OTR argues that the court should have also set aside the invalidity finding. In addressing OTR's arguments, we explain how a finding of fraud on the PTO affects a plaintiff's burdens in establishing a trademark claim. We conclude that the jury's finding of invalidity was supported by substantial evidence.

Fourth, in addition to a claim based on its registered trade dress, OTR submitted a proposed jury instruction asserting a claim for infringement of unregistered trade dress.  The trial court rejected the proposed instruction on the grounds that OTR had not pled an unregistered trade dress claim.  OTR challenges the court's order, arguing that it had pled an unregistered claim that encompassed "something more" than what was covered by the registered claim.  We hold that the trial court did not abuse its discretion in rejecting the jury instruction.  In the process, we note that the unregistered claim was only precluded because it asserted "something more" than the registered claim and OTR had not made clear in its pleadings that it asserted something more.  A claim does not need to be registered to be enforceable, and if a registration is defeated it merely shifts the parties' burdens at trial.

## A.  False Designation of Origin: Reverse Passing Off

The jury found West liable for "reverse passing off" an Outrigger tire as his own development tire.  West challenges that verdict.

### 1.  Standard of Review

A jury's verdict must be upheld if supported by substantial evidence.  *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017).  Substantial evidence is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion from the same evidence.  *Id.*  The credibility of the witnesses and the weight of the evidence are issues for the jury and are generally not subject to appellate review.  *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 651 n.5 (9th Cir. 2005).  We have a duty under the

Seventh Amendment to harmonize a jury's answers on a special verdict form if a fair reading allows for it.  *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 771 (9th Cir. 2005).

### 2.  Waiver

In challenging the verdict for reverse passing off, West argues: 1) the claim was precluded by the Supreme Court's holding in *Dastar*; 2) there was not substantial evidence that he removed the identifying information from an Outrigger tire; and 3) OTR did not establish a likelihood of confusion. OTR responds in part by arguing that West waived his arguments regarding *Dastar* and the likelihood of confusion by failing to raise them in a motion for judgment as a matter of law before the case went to the jury.

Rule 50 governs the timing of a motion for judgment as a matter of law.  Pursuant to Rule 50(a), a "motion for judgment as a matter of law may be made at any time before the case is submitted to the jury."  Fed. R. Civ. P. 50(a)(2). If the court does not grant the motion, Rule 50(b) allows a party to file a renewed motion for judgment as a matter of law after the judgment is entered.  Fed. R. Civ. P. 50(b).  But "[f]ailing to make a Rule 50(a) motion before the case is submitted to the jury forecloses the possibility of considering a Rule 50(b) motion."  *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009).

Likewise, a "party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). Such arguments are also waived for purposes of appeal.  *See*

*Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1345 (9th Cir. 1985).  In his Rule 50(a) motion, West argued that OTR had failed to prove that  West removed the Outrigger mark from tires in commerce.  West did not mention *Dastar* or the likelihood of confusion.  Thus, these arguments would normally be waived.

But if a party fails to object to a Rule 50(b) motion on the basis of waiver, then the party waives its waiver defense. *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 838–39 (9th Cir. 2003) ("[W]here a defendant does not object to an improperly-filed Rule 50(b) motion, and does not raise the issue of default for failure to abide Rule 50(a) before the trial court, then the procedural flaw in the Rule 50(b) motion is waived . . . ."), *abrogation on other grounds recognized in Thomas v. Dillard*, 818 F.3d 864, 885 (9th Cir. 2016); *see also Williams v. Runyon*, 130 F.3d 568, 572 (3d Cir. 1997) (citing six other circuits for the same holding).  When West presented his *Dastar* and likelihood-of-confusion arguments to the district court in his post-trial Rule 50(b) motion, OTR did not raise waiver in its opposition.  Thus, OTR has waived its waiver defense, and we will consider all three of West's arguments.

3.    Merits

Section 43(a) of the Lanham Act prohibits a person from using "in commerce any word, term, name, symbol, or device . . . which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods." 15 U.S.C. § 1125(a).  The term "origin" in section 43(a) lends itself to two causes of action for "passing off" based on false designation of origin: passing off and reverse passing off.  "Passing off . . . occurs when a producer misrepresents his own goods or services as someone

else's.  'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own." *Dastar*, 539 U.S. at 27 n.1 (citation omitted).

### a.  Effect of the Supreme Court's holding in *Dastar*

West argues that the claim for reverse passing off was precluded by *Dastar*.  In *Dastar*, the Supreme Court explained that the term "origin" in section 43 "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.  Thus, a reverse passing off claim cannot be brought to prevent the copying of intellectual property.  Copying is dealt with through the copyright and patent laws, not through trademark law. *Id.* at 33–34.

West argues that, at worst, by using OTR's mold, he copied OTR's tire instead of passing off a genuine Outrigger as his own.  We do not need to determine, however, whether use of the OTR mold would create a mere copy or a genuine OTR product.  There was evidence that West did pass off actual OTR tires.  West asked Superhawk to make tires to fill an anticipated order for Solideal, OTR's partner, in advance and to hold most of the tires until Solideal placed the order.  West wanted to take ten of these OTR tires to provide to Genie as his own development tires.[2]  The jury could therefore conclude that the development tires were taken from part of an anticipated OTR (Solideal) order and were genuine OTR products, not just copies.

---

[2] In his email, West wrote: "Any chance you can risk making the 50 pcs and then sit on the 40 tires until they ask?"

To support his argument that he only copied OTR's tire, West cites the Sixth Circuit's opinion in *Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 796 F.3d 576 (6th Cir. 2015). In *Kehoe*, a manufacturer produced goods for a customer. After filling the customer's order, the manufacturer continued to use the same molds to manufacture additional units that it could sell in competition with the customer. *Id.* at 580. The Sixth Circuit determined that the manufacturer's conduct constituted copying and that a reverse passing off claim was therefore precluded by *Dastar*. *Id.* at 587. In *Kehoe*, though, the manufacturer did not pass off products that had been produced as part of the customer's order. West did. "The right question, *Dastar* holds, is whether the consumer knows who has produced the finished product." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005). Here, the product was produced for OTR, and West attributed it to himself.[3]

b.  Removal of the Outrigger's identifying information

West argues that there was not substantial evidence to support the jury's conclusion that he removed the Outrigger identifying information from the sidewall of the development tire. We disagree.

West asked Superhawk for some tires for testing. Superhawk told West that it would take 50 days to make a mold for West's purposes. West responded, "I really need it much sooner. . . . Don't you make this size for Solideal? . . .

---

[3] Accordingly, we do not need to determine whether we agree with the holding in *Kehoe*.

Could you buff off the Solideal name on the sidewall or just remove the plate and let me get the tire tested?"

Superhawk told West that it would be "dangerous" to use Solideal's mold because Superhawk had an agreement with Solideal. West persevered in his request, however. He asked, "Will your mold be the same as the [S]olideal mold? If we take out the nameplate and all the sidewall information, nobody will know." He asked Superhawk to make 50 Solideal tires even though an order for those tires had not been placed yet by Solideal. Superhawk responded that the tires would be made "shortly."

At trial, West's expert identified a number of areas where spring plates had been used in the mold for West's development tire. Spring plates are put into molds for the purpose of imprinting information onto tires. OTR's expert testified that the spring plate indentations corresponded to the location of information that would, if it appeared on the tire, identify the tire as an OTR tire.

These emails and this testimony constituted substantial evidence that West used an Outrigger mold for his development tire and added blank spring plates over areas that would have imprinted the Outrigger's identifying information onto the tires. West argues that he did not know that the tires were Outriggers when he asked Superhawk to remove the identifying information. But before West used the development tire, he had an email exchange with Superhawk confirming that the 355-size tire was "Solideal branded the OTR Outrigger."

West also argues that the evidence did not support a conclusion that a plate had been placed in the mold over the

Outrigger identifying information. West contends that such a plate would leave obvious marks on the mold but that OTR did not produce the actual mold for trial. OTR responds that the molds were with Superhawk (the Chinese manufacturer), not with OTR or Solideal. Thus, OTR did not control the mold, and West provided no definitive evidence to the contrary. West raised this same argument with the jury, but the jury apparently was not persuaded. There was sufficient evidence to support the jury's finding.

West next points to his expert's testimony, arguing that a blank spring plate would have left deeper imprints on the tire. The jury was not required to believe that testimony, however. It was up to the jury to weigh witness testimony and compare it to the rest of the evidence. *Watec Co.*, 403 F.3d at 651 n.5.

West also cites an internal Solideal email in which one individual related a discussion with Superhawk. Superhawk told Solideal that it did not use Solideal's mold. The jury could have discounted this self-serving statement by Superhawk, especially since the jury saw Superhawk's email to West stating that it would be "dangerous" to use Solideal's mold due to Superhawk's agreement with Solideal. The jury could rationally conclude that Superhawk was not candid in telling Solideal what it had done for West out of fear of losing business or of legal liability.

Finally, West argues that his development tire was structurally different than an Outrigger, and therefore the development tire was not a genuine Outrigger. This argument fails because, as noted above, the jury saw enough evidence to conclude that the development tires were taken from an order that was intended for OTR and Solideal. The argument also fails because the structural evidence came in through an

OTR expert witness who testified that he compared the structure of West's development tire, which was made in China by Superhawk, with the structure of an Outrigger made in Thailand by someone else. The expert testified that the structural differences could have been explained by differences in manufacturing between countries and between manufacturers. He also testified that the difference in the internal structure of the tires did not affect the tire tread pattern.

### c.  Likelihood of consumer confusion

To prove a claim under section 43(a), a plaintiff must establish a likelihood of consumer confusion. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). Thus, in order to prevail on its claim for reverse passing off, OTR was required to prove that consumers would likely be confused as to the origin of Outrigger tires that had their identifying information removed. The likelihood-of-confusion inquiry "generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir.2012). Thus, the jury had to determine whether a hypothetical consumer would likely be confused. Evidence of actual confusion was not required. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011). The jury was shown pictures of an OTR production tire and the West development tire. Comparing the two tires, a reasonable jury could conclude that consumers would be confused by tires that lack the identifying information.

West argues that Genie, the customer, was not actually confused.  West's argument fails for two reasons: First, in his briefing for us, West argues that the development tire was not an Outrigger and that Genie "knew" the tire was not an Outrigger.  Thus, West concedes that Genie thought the tire was not a genuine Outrigger.  Given that the jury concluded that the tire was an Outrigger, West effectively concedes actual confusion.  Second, the only evidence cited by West in support of this argument was proposed evidence that was not actually admitted at trial.  It was, instead, excluded by the district court, and the exclusion was not erroneous.  As it was never before the jury, the jury cannot be faulted for not being persuaded by it.  That evidence cannot support an argument that the jury's verdict was not supported by substantial evidence.

## B.  Fraud on the U.S. Patent and Trademark Office

OTR obtained a trade dress registration for the tread design of its Outrigger tire.  OTR brought a claim against West for infringing its trade dress. West argued that the registration was invalid because it was obtained through fraud on the PTO.  The jury agreed.  On a post-trial motion, however, the district court granted OTR's motion to set aside the jury's finding as a matter of law.  Specifically, the district court concluded that, applying the clear and convincing evidence standard, there was not substantial evidence to support the verdict on that issue.  On appeal, West argues that the jury's verdict should be reinstated.

### 1.  Standard of Review

A grant of a motion for judgment as a matter of law is reviewed de novo.  *Spencer v. Peters*, 857 F.3d 789, 797 (9th

OTR Wheel Eng'g v. West Worldwide Servs.    19

Cir. 2017).  "In reviewing a grant of judgment as a matter of law, we apply the same standard used by the district court in evaluating the jury's verdict.  A jury's verdict must be upheld if it is supported by substantial evidence."  *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) (internal citations omitted).  Substantial evidence is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion from the same evidence.  *Unicolors*, 853 F.3d at 984.  The evidence must be viewed in the light most favorable to the nonmoving party, in this instance West, and all reasonable inferences must be drawn in favor of that party.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50 (2000).  If conflicting inferences may be drawn from the facts, the question must be left to the jury.  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008).

### 2.  Standards for fraud on the PTO

A party harmed by a trademark's registration can seek to cancel the mark on certain specified grounds, including that the trademark was obtained through fraud on the PTO.  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) (citing 15 U.S.C. §§ 1064, 1119).  To succeed on a claim for cancellation based on fraud, a claimant must establish the following elements: 1) a false representation regarding a material fact; 2) the registrant's knowledge or belief that the representation is false; 3) the registrant's intent to induce reliance upon the misrepresentation; 4) actual, reasonable reliance on the misrepresentation; and 5) damages proximately caused by that reliance.  *Id.*

In a civil case, fraud must normally be established by clear and convincing evidence.  *United States v. U.S. Dist. Court for Cent. Dist. of Cal.*, 858 F.2d 534, 543 n.5 (9th Cir.

1988).  The Federal Circuit explicitly applies the clear and convincing standard to petitions to cancel trademarks for fraud on the PTO.  *In re Bose Corp*., 580 F.3d 1240, 1243 (Fed. Cir. 2009).  The district court concluded that the clear and convincing standard should apply here to West's claim that OTR had committed fraud on the PTO, and it so instructed the jury in this case.  We agree and join the Federal Circuit in requiring clear and convincing evidence for the elements of fraud on the PTO.

Accordingly, drawing all inferences in favor of West, we review whether there was substantial evidence whereby a reasonable jury could have found fraud on the PTO, recognizing that fraud must be proved by clear and convincing evidence.  *See Nakamoto v. Ashcroft*, 363 F.3d 874, 882 (9th Cir. 2004); *see also Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1337–38 (Fed. Cir. 2010) ("[W]e review whether . . . there was substantial evidence whereby a reasonable jury could have reached its verdict . . ., recognizing that [the question of fact] must be proved by clear and convincing evidence.").  "Clear and convincing evidence requires greater proof than preponderance of the evidence.  To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that [the asserted factual contentions are] highly probable.'"  *Sophanthavong v. Palmateer*, 378 F.3d 859, 866–67 (9th Cir. 2004) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

In granting OTR's motion to set aside the jury's finding of fraud, the district court concluded that there had not been clear and convincing evidence to support the fraud claim.  The court addressed two pieces of evidence that remain relevant to this appeal.  First, the court considered an email

written by a consultant noting that the Outrigger tread design contributed to the tire's self-cleaning ability.  The same consultant also submitted a declaration to the PTO without mentioning the self-cleaning function of the tread design. The court determined that OTR did not omit a potentially material fact because the self-cleaning nature of the Outrigger had already been disclosed to the PTO on a prior occasion. Second, the court considered a declaration written by an OTR manager claiming that the Outrigger is immediately identifiable based on its tire tread design.  The court concluded that this was a sincerely held subjective opinion, not a false statement of fact.

### 3.  Patrick Smith Declaration

We first address the declaration claiming that the Outrigger is immediately identifiably based on the tread design.  The declaration was provided to the PTO by Patrick Smith, an OTR manager.  Smith provided the declaration in response to a decision by the PTO examiner.  In that decision, the PTO examiner had denied the application for trade dress registration because she found the tread design to be functional and non-distinctive.  Smith responded to the non-distinctiveness finding by declaring that the "design of OTR's Outrigger tire is so distinctive that R-4 tire manufacturers, distributors and customers can immediately identify the Outrigger tire solely by seeing its tread design."  West argues that this statement was fraudulent because it was made without gathering any data from manufacturers, distributors or customers.

As an initial matter, Smith did not purport to convey the results of any survey of customers, manufacturers, or distributors.  Thus, the statement, by itself, did not constitute

clear and convincing evidence of a false representation regarding a material fact. Furthermore, even if the statement was false, West did not provide any evidence that Smith knew the statement to be false.

West also failed to establish actual, reasonable reliance on the purported misrepresentation. Smith submitted his declaration on September 27, 2011. The examiner responded on October 30, 2011, again denying the application. The examiner rejected OTR's September 27 arguments regarding functionality and distinctiveness. She explained that OTR had not presented evidence of acquired distinctiveness under "Section 2(f)." Section 2(f) provides that an applicant may establish acquired distinctiveness by proving substantial, exclusive, and continuous use of a mark in commerce for five years. 15 U.S.C. § 1052(f).

On April 30, 2012, OTR submitted another amendment to its application, this time seeking to establish substantial, exclusive, and continuous use of the trade dress in commerce. The amendment contained another declaration from Smith in which he related that OTR had sold $48 million worth of Outrigger tires over a period of 14 years. The examiner amended her opinion on May 31, 2012, finding that the Outrigger tread design had acquired distinctiveness under section 2(f).

Smith's initial declaration regarding distinctiveness appears to have been irrelevant to the examiner's decision. In that first declaration, Smith stated that the design was distinctive because it was immediately recognizable, but the examiner was not convinced. The examiner appears to have found distinctiveness solely because of Smith's second declaration establishing acquired distinctiveness through

OTR Wheel Eng'g v. West Worldwide Servs.    23

continuous use in commerce.  Accordingly, there was not
clear and convincing evidence that the examiner relied on
Smith's first declaration in reaching her conclusion on
acquired distinctiveness.

### 4.  Ray Evans Email

We next address the email discussing the functionality of
the Outrigger design.  The email was written by Ray Evans,
a tire engineering consultant for OTR.  In the email, Evans
described four ways that the Outrigger tires were unique.  He
then went on to write that "[a]ll of these design elements
contribute to the tire's self cleaning ability that is needed to
operate in adverse muddy conditions and also make it readily
recognizable."  West argues that this statement demonstrates
that all four design elements were functional.  Functional
features are not eligible for trade dress protection.  West
argues that Evans committed fraud on the PTO by omitting
this information on functionality from a declaration he later
sent to the PTO in support of OTR's application for trade
dress registration.

The PTO examiner had already been informed by Patrick
Smith that the tread design made the tires self-cleaning,
however.  He told the examiner that "[a]ll R-4 tires . . . are
self-cleaning."  Smith went on to argue that the distinctive
angle of the Outrigger tread did not affect the self-cleaning
function of the tires.  It was the angle of the tread that OTR
sought to protect with its registration.

Given that OTR had already acknowledged that the tread
design made the tires self-cleaning, there was no omission of
a material fact.  Accordingly, we agree with the district court

that West failed to establish by clear and convincing evidence that OTR committed fraud on the PTO.

## C.   The validity of OTR's claim for protectable trade dress

As discussed above, the jury found that OTR's trade dress registration had been obtained through fraud, but the district court set that finding aside.  The jury also found that the trade dress claim was invalid, and the district court sustained that finding, denying OTR's motion for a new trial on the issue of validity and the claims based on the asserted trade dress. OTR appeals that denial.  A district court's ruling on a motion for new trial is reviewed for an abuse of discretion.  *Flores v. City of Westminster*, 873 F.3d 739, 755–56 (9th Cir. 2017).

The validity question was posed as Question No. 1 on the special verdict form.  Question No. 1 asked the jury whether it found "by a preponderance of the evidence that OTR's registered trade dress is valid (is non-functional and has secondary meaning)."  The jury answered "No."

Question No. 1 went to the elements required to prevail on an infringement claim in a trademark case.  To prevail on such a claim, a plaintiff must show that: 1) it has a valid, protectable mark, and 2) the defendant's use of the mark is likely to cause consumer confusion.  *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).  To be valid and protectable, a mark must be distinctive and non-functional.  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (distinctiveness); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) (functionality).   The jury was instructed on those requirements, and Question No. 1 highlighted them by noting that to be valid the trade dress had to be "non-functional" and

have "secondary meaning." Secondary meaning is required to establish the distinctiveness element of a design trade dress claim. *Wal-Mart*, 529 U.S. at 215–16.

The fraud question was posed as Question No. 2, which asked whether the jury found "by clear and convincing evidence that OTR's certification of registration regarding its trade dress was procured by fraud." The jury answered "Yes."

If a defendant can establish that a registered mark was obtained through fraud on the PTO, then the registration will be cancelled. *See Hokto Kinoko*, 738 F.3d at 1097. But the fate of a registration does not automatically determine a trademark's validity. Registration merely provides a presumption of validity. *Talking Rain Beverage Co. Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003). At trial, a registered mark is presumptively valid and therefore distinctive and non-functional, and the burden is on the defendant to prove otherwise. *Tie Tech*, 296 F.3d at 782–83.

If a trademark is not registered, then a plaintiff may still assert a claim for infringement of its protectable trade dress right, but that plaintiff bears the burden to establish distinctiveness and non-functionality. *Talking Rain*, 349 F.3d at 603. Thus, if a mark is cancelled, a claim for infringement may still be pursued based on an unregistered mark. *Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1131 (9th Cir. 2006) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir.2001)). In other words, fraud on the PTO "does not affect the mark's validity, because a trademark need not be registered to be enforceable." *Specialized Seating, Inc. v. Greenwich*

*Industries*, LP, 616 F.3d 722, 728 (7th Cir. 2010) (emphasis omitted); *cf.* J. Thomas McCarthy, 6 McCarthy on Trademarks and Unfair Competition § 31:60 (5th ed. 2018). Thus, if a defendant establishes that a mark was obtained through fraud on the PTO, the burden shifts back to the plaintiff to establish distinctiveness and non-functionality. *See Tie Tech*, 296 F.3d at 783; *see also Talking Rain*, 349 F.3d at 603. The plaintiff always maintains the burden to establish consumer confusion.

Given that the answer to Question No. 2 on fraud would have established the parties' burdens as to Question No. 1 on validity, the fraud question might logically have been posed before the validity question. Nobody objected to the special verdict form, however, and that specific defect has not been cited as a basis for appeal.

OTR argues that the jury found the trade dress invalid only because it had already found that the registration was fraudulently obtained. In other words, OTR argues that the jury's answer to Question No. 2 on fraud dictated its answer to Question No. 1 on validity. In support of its argument, OTR points to a jury instruction directing the jury to find the registration invalid if it was found to be fraudulently obtained.[4] But OTR's argument amounts to speculation. It does not seem to us especially likely that the jury skipped Question No. 1 on validity, answered Question No. 2 on

---

[4] This instruction could have been clearer, but it has no practical impact in this case. As noted above, a finding of fraud would negate the registration, but it would not necessarily mean that OTR could not have a valid trade dress claim. It would shift the burden back to OTR to establish non-functionality and secondary meaning because that burden is on a plaintiff pursuing a claim for trade dress infringement in the absence of a valid registration.

fraud, and then went back to answer Question No. 1 based on that jury instruction.  The special verdict form itself provided the jury with directions to the contrary.  Rather than being told to start with Question No. 2, the form listed the validity question as Question No. 1, and then provided the direction: "If your answer is 'Yes," DO NOT answer Question No. 2 and proceed to Question No. 3. If your answer is 'No,' please answer Question No. 2."  The sequence of the questions on the special verdict form may have been in tension with the jury instruction, but the jury did not indicate any confusion or ask the court for any clarification.  It seems to us more likely that the jury simply followed the special verdict form.

Nor is there any conflict in the jury's answers.  The first question asked the jury to determine whether the trade dress was non-functional and had secondary meaning.  The question did not mention fraud, and it did not direct the jury to consider the fraud question first.  Accordingly, the jury was able to answer the question without considering fraud, and there is no evidence the jury did otherwise.

More broadly, we have a duty under the Seventh Amendment to harmonize a jury's answers on a special verdict form if a fair reading allows for it.  *Bains LLC*, 405 F.3d at 771.  Here, it is fair to assume that the jury answered Question No. 1 as it was written, without reference to fraud.  If OTR thought that the special verdict form was confusing, the time to object was before the form was given to the jury.  There was no objection at that time.  We are not free to discard the jury's verdict because one of the parties argues after the fact that the jury might have been confused.

There was substantial evidence available for the jury to conclude that the tire tread trade dress was either functional

or non-distinctive and thus to answer "No" to Question No. 1.  While OTR argued that the specific angle of the tire tread did not affect the functionality of the tread, the jury could have concluded otherwise.  For example, in Ray Evans' email, he wrote that "[a]ll of these design elements contribute to the tire's self cleaning ability that is needed to operate in adverse muddy conditions and also make it readily recognizable."  Likewise, in looking at the Outrigger tire, the jury could have concluded that the tread design was too similar to other tread designs to have acquired secondary meaning.

OTR also argues that it should obtain a new trial on its trade dress claim because the jury was prejudiced by West's claim that OTR had committed fraud on the PTO.  Like the district court, we are not persuaded that the verdict was tainted by West's fraud arguments.  It is far from unusual for juries to have to sort through conflicting claims.  They are capable of doing so.  The district court did not abuse its discretion in denying OTR's motion for a new trial.

## D.  *OTR's unregistered trade dress claim*

OTR submitted a proposed jury instruction asserting a claim for infringement of OTR's unregistered trade dress pursuant to 15 U.S.C.  § 1125(a)(1).  The trial court rejected the proposed instruction on the grounds that OTR had not pled an unregistered trade dress claim.

The question here is whether OTR's complaint contained enough information to put the district court and West on notice that OTR had presented an unregistered trade dress claim.  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

OTR WHEEL ENG'G V. WEST WORLDWIDE SERVS. 29

Fed. R. Civ. P. 8(a)(2). "A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).

OTR did not state in its complaint that it was pursuing a claim for infringement of an "unregistered" trade dress. Likewise, OTR has not cited anything in the record demonstrating that OTR clearly asserted an unregistered trade dress claim prior to close of discovery. A defendant suffers prejudice if a plaintiff is allowed to proceed with a new theory of recovery after close of discovery. *Id.*

OTR argues that it pled an unregistered trade dress claim by asserting a claim under section 43 of the Lanham Act, 15 U.S.C. § 1125. It was not enough to simply cite section 43, however, because that section covers both registered and unregistered marks. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000) ("[T]he provision at issue here—§ 43—protects against infringement of unregistered marks and trade dress as well as registered marks." (citing *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046 (9th Cir.1998)). OTR's reference to section 43 did not by itself signal an unregistered trade dress claim.

Indeed, the references to section 43 tended to put West on notice as to other specific claims. For example, in paragraph 75 of the complaint, OTR asserted a violation of section 43 in reference to the registered "Outrigger" word mark. Likewise, OTR asserted a violation of section 43 in paragraph 73, but that paragraph referred to the claim for reverse passing off, not to a claim for infringement of an unregistered trade dress.

In short, OTR appeared to rely on the validity of its registration and did not put the court or West on notice of its intent to proceed with an unregistered trade dress claim. Our review of the first amended complaint, which emphasized OTR's registrations, confirms that impression. The district court did not abuse its discretion by refusing to instruct the jury on an unregistered trade dress claim when that claim had not been properly raised.

We pause to note that OTR's unregistered claim was only precluded to the extent that it asserted a broader claim than the registered claim. As noted above, registration only provides a presumption of validity, shifting the burden to the defendant to rebut either distinctiveness or non-functionality. *Tie Tech*, 296 F.3d at 783. If a registration is cancelled, for example, due to fraud on the PTO, then the claim survives but becomes more difficult to prove. *See Bazaar Del Mundo Inc.*, 448 F.3d at 1131. Perhaps appreciating that fact, OTR argues that its unregistered claim encompassed "something more" than what was covered by the registered claim. OTR describes that "something more" as the OTR tire's "overall appearance, including the sidewall and its relationship to the road." To assert this broader claim, however, OTR was required to clearly plead the claim in the complaint, and it did not.

## III.   Conclusion

We affirm the district court on all of the Lanham Act issues before us. We address the remaining issues in a concurrently filed memorandum disposition.

**AFFIRMED.**

FILED

**NOT FOR PUBLICATION**

JUL 24 2018

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| OTR WHEEL ENGINEERING, INC.; BLACKSTONE/OTR, LLC; F.B.T. ENTERPRISES, INC., <br><br>      Plaintiffs-Appellees-<br>     Cross Appellants, <br><br> v. <br><br> WEST WORLDWIDE SERVICES, INC.; SAMUEL J. WEST, individually, and his marital community; SSL CHINA, LLC; QINGDAO STW TIRE CO. LTD.; SSL HOLDINGS, INC., <br><br>      Defendants-Appellants-<br>     Cross-Appellees. | Nos.  16-35897<br>       16-35936 <br><br> D.C. No. 2:14-cv-00085-LRS <br><br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted March 7, 2018
Seattle, Washington

Before: RAWLINSON, CLIFTON, and CHRISTEN, Circuit Judges.

---

        *     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

A jury found West liable to OTR for violating the Lanham Act prohibition against false designation of origin (specifically by reverse passing off OTR tires as being West's product); tortiously interfering with a contract between OTR's partner, Solideal, and the manufacturer of OTR tires for Solideal, Superhawk; tortiously interfering with a business relationship between OTR and its customer Genie and also with a business relationship among OTR, Solideal, and Superhawk; and violating the Washington Consumer Protection Act.[1] West appeals the judgment entered against it, and OTR cross-appeals the denial of a new trial as to some of its Lanham Act claims.

The facts of this case have been related in detail in a concurrently filed opinion that discusses some of the issues raised on appeal. *See OTR Wheel Engineering, et al v. West Worldwide Services, et al*, 16-35897 (9th Cir. 2018). That opinion deals with the Lanham Act issues raised by this appeal. In this

---

[1] This case involves multiple plaintiffs and multiple defendants. Plaintiffs are OTR Wheel Engineering, Inc.; Blackstone/OTR, LLC; and F.B.T. Enterprises, Inc.. Defendants are West Worldwide Services, Inc.; Samuel J. West, individually, and his marital community; SSL China, LLC; Qingdao STW Tire Co. Ltd.; and SSL Holdings, Inc. In briefing, the parties refer to each side generally as "OTR" for the Plaintiffs/Appellees/Cross-Appellants and "West" for the Defendants/Appellants/Cross-Appellees. Where Plaintiffs prevailed, the judgment was for all Plaintiffs against all Defendants. Likewise, where Defendants prevailed, the judgment was for all Defendants against all Plaintiffs. There is no need to draw any distinctions among plaintiffs or among defendants. We therefore follow the parties in referring to each side simply as OTR and West.

memorandum disposition, we affirm the jury's verdicts on tortious interference and the Washington Consumer Protection Act. We also affirm three challenged evidentiary rulings. We vacate the preliminary injunction and remand to the district court to consider West's claim against the injunction bond. We also reverse the district court's order granting OTR prejudgment interest.

1. **Tortious Interference**

West seeks to challenge the jury's verdict against him on some of the tortious interference claims. But West cannot challenge the sufficiency of the evidence for the tortious interference claims because he did not raise those arguments in a Rule 50(a) motion before the district court. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

West did object to the tortious interference jury instructions, arguing that the instructions should require the jury to find that OTR was an intended beneficiary of the contract between Solideal and Superhawk. The challenge to those instructions is properly before us. *United States v. $11,500.00 in United States Currency*, 869 F.3d 1062, 1067 (9th Cir. 2017). A district court's formulation of civil jury instructions is reviewed for an abuse of discretion, and will not be reversed if harmless. *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1085 (9th Cir. 2017). But

review is de novo whenever the challenge is based on a question of law. *Spencer v. Peters*, 857 F.3d 789, 797 (9th Cir. 2017).

Instruction 35 asked the jury to determine whether West interfered with a business relationship between Superhawk, Solideal, and OTR. As written, the instruction matches the elements of tortious interference with a business relationship. *See Hoffer v. State*, 755 P.2d 781, 791 (Wash. 1988). Thus, the instruction is not erroneous.

Instruction 32 asked the jury to determine whether West tortiously interfered with a contract between Solideal and Superhawk. But the instruction did not state that OTR must have been the party whose contractual relationship had been interfered with. Thus, the instruction may have been erroneous. *See Calbom v. Knudtzon*,  396 P.2d 148, 151 (Wash. 1964).  Even if the instruction was erroneous, however, any error was harmless. The jury was instructed to calculate damages if it found tortious interference with a contract *or* a business relationship. The jury was directed to consider OTR's lost profits due to West's interference and the increased operation costs OTR incurred as a result of West's actions. The interference at issue here is the same, regardless of whether the offending conduct was interference in a contract or a relationship. The damages should be the same.

Thus, even if no tortious interference with a contract could properly have been found, the damages would remain unchanged.

## 2. Washington Consumer Protection Act

West argues that no reasonable jury could find that he violated the Washington Consumer Protection Act (WCPA). A jury's verdict must be upheld if supported by "substantial evidence." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017). Substantial evidence is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion from the same evidence. *Id.*

West argues that the WCPA claim was derivative of the trade dress and trade secret claims, on which OTR did not prevail. OTR did prevail on its reverse passing off claim, though, which was a violation of the Lanham Act, and which could support the jury verdict in favor of OTR on the WCPA claim.

West also argues that OTR failed to establish the public interest element of a WCPA claim. West waived that argument, however, by failing to include it in his Rule 50(a) motion.

## 3. Evidentiary Rulings

West challenges three of the district court's evidentiary rulings. Evidentiary rulings are reviewed for an abuse of discretion. *Spencer*, 857 F.3d at 797. To

reverse on the basis of an erroneous evidentiary ruling, the court must conclude both that the district court abused its discretion in its decision and also that the error was prejudicial. *Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013).

West sought to admit a report comparing a Genie tire with one of West's tires. The district court excluded the report and related testimony on the grounds that the report was an expert opinion and the report's author was not available to testify. We agree with the district court that the report was an expert opinion. Thus, it was appropriate to exclude the report and to exclude the lay witness from testifying as to the report's contents. Fed. R. Evid. 701(c), 702.

West sought to admit a statement made by OTR's patent attorney during his deposition. The district court excluded the statement on the grounds that it was a legal opinion. West cannot establish prejudice as to the exclusion because the statement pertained to information that had previously been provided to the PTO by Patrick Smith.

Finally, West sought to exclude the admission of various written agreements between Superhawk and Solideal. West is unable to establish prejudice as to these agreements. The documents established the relationship between Superhawk and Solideal. The jury was told about that relationship by the witness who described

6

the documents. He described the relationship before the documents were admitted into evidence, and West did not object to his testimony. The jury also learned about that relationship from the emails between Superhawk and West discussing whether to secretly use the Solideal mold.

## 4.  Preliminary Injunction

West seeks to appeal the district court's decision to maintain the preliminary injunction pending appeal. We review the district court's order maintaining the preliminary injunction for abuse of discretion. *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994).

OTR argues that we do not have jurisdiction to review the injunction because preliminary injunctions are interlocutory, and according to OTR, this is not an interlocutory appeal. But a party may file an interlocutory appeal from an order refusing to dissolve an injunction. 28 U.S.C. § 1292(a)(1). In his notice of appeal, West clearly signaled his intent to appeal the preliminary injunction by titling the appeal, "Preliminary Injunction Appeal" and by specifying that he was appealing the court's order on his motion to suspend or lift the preliminary injunction. Accordingly, we have jurisdiction to review the order on the preliminary injunction. *See* Fed. R. App. P. 3(c)(4) (An "appeal must not be

dismissed for informality of form or title of the notice of appeal."); *cf. Rabin v. Cohen*, 570 F.2d 864, 866 (9th Cir. 1978).[2]

The decision by the district court to leave the preliminary injunction in effect pending appeal was explicitly intended to maintain it "pending the Ninth Circuit's determination whether to uphold the jury's verdict finding OTR's registered trade dress invalid." As we have upheld that verdict, there appears to be no reason for that preliminary injunction to remain in effect.

OTR argues that even if its trade secret and infringement claims failed, its successful claims justify the retention of the preliminary injunction. We disagree. That does not appear to have been the intent of the district court. The comments by the court cited by OTR pertained to the possibility of West claiming against the bond for the restrictions imposed under the injunction prior to trial, not to maintaining the preliminary injunction pending appeal. Moreover, OTR's successful claims would not ordinarily support the entry of injunctive relief, and the jury verdict here did not appear to support OTR's argument for maintaining the preliminary injunction. OTR prevailed on claims for reverse passing off, tortious

---

[2] This would be West's second interlocutory appeal relating to the preliminary injunction, but there is no rule against multiple interlocutory appeals. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). Given that the underlying merits have been decided, there are different legally relevant factors at issue in this second interlocutory appeal.

interference, and violating the WCPA. Those claims assert singular harms and are therefore suitable to be remedied with damages, not an injunction. Indeed, by awarding only part of the damages calculated by the OTR expert, the jury indicated that further damages are not being suffered.

OTR has not cited any expert testimony indicating that West could not have developed and marketed his own product by now. West can presumably approach a customer without passing off an OTR tire, tortiously interfering in any of OTR's contracts or business relationships, or committing an unfair or deceptive act under the WCPA. Absent the existence of a trade dress or some other intellectual property, West should not be enjoined from competing.

At this point, it appears appropriate to vacate the preliminary injunction. If there is a basis for further injunctive relief, it can be considered by the district court on remand, as the permanent injunction question is not before us. The district court may also consider West's claims on the injunction bond.

## 5. Prejudgment Interest

Applying Washington law, the district court awarded OTR prejudgment interest at a rate of 12 percent. Whether interest is permitted as a matter of law is reviewed de novo. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716 (9th Cir. 2004). The court's selection of an appropriate rate of interest, however, is

reviewed for an abuse of discretion. *Dishman v. UNUM Life Ins. Co.*, 269 F.3d 974, 988 (9th Cir. 2001).

It was proper to apply Washington law in determining the availability and rate of prejudgment interest. *See Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 961 (9th Cir. 2008).

Under Washington law, prejudgment interest is awardable for liquidated claims. *Hansen v. Rothaus*, 730 P.2d 662, 664 (Wash. 1986). A claim is liquidated in Washington when "the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Id.* at 665. "The rationale for this rule is that it would be unfair to hold a defendant accountable for interest on an amount that is unquantifiable and unforeseeable prior to a jury verdict. A defendant cannot stop the running of interest by paying the plaintiff if that defendant does not know the amount due." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1047 (Wash. 2014).

OTR's damages expert had actual data on the number of tire assemblies West sold between June 2013 and May 2014. He also had data on the price and cost per unit. He used these data to calculate lost profits, adding some extra

shipping costs OTR incurred to meet Genie's demand to quickly ramp up production.

The data on the number of sales was based on an assumption, however. OTR's expert assumed that if West had not used OTR's development tire, then OTR would have accounted for all of the sales to Genie between June 2013 and May 2014. To support this assumption, the expert stated that he saw a declaration by a Genie executive indicating that Genie preferred to maintain a single supplier. But that is not enough to establish that OTR would not have faced competition for Genie's business. If West had not used OTR's development tire, he could have acquired his own development from a different supplier at a later point in time. Indeed, he presumably filled the orders from Genie using his own tires. He, or somebody else, would presumably have been able to begin supplying Genie at some point during the damages period.

Given that the sales volume data was based in part on an assumption, "the exact amount [of the damages] cannot be definitively fixed from the facts proved." *Hansen*, 730 P.2d at 665. Accordingly, the claim is unliquidated. *Id.* Indeed, the jury applied discretion in choosing to reduce the award from the amount calculated by the expert witness. That further illustrates that the calculation of damages was unliquidated because it reflected the jury's judgment in partial but not complete

reliance on the expert's opinion. *See Douglas Nw., Inc. v. Bill O'Brien & Sons Const., Inc.*, 828 P.2d 565, 582 (Wash. Ct. App. 1992); *see also St. Hilaire v. Food Servs. of Am., Inc.*, 917 P.2d 1114, 1119 (Wash. Ct. App. 1996).

We reverse the district court's order granting OTR prejudgment interest and remand for entry of a corrected judgment.

Each party to bear its own costs.

**AFFIRMED in part, VACATED in part, REVERSED in part; REMANDED.**

FILED

***OTR Wheel Engineering, Inc. v. West Worldwide Services Inc.***
**Case Nos. 16-35897, 16-35936 and 16-35982**
**Rawlinson, Circuit Judge, concurring:**

JUL 24 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

I concur in the result.

**APPENDIX TO**

**PETITION FOR PANEL REHEARING OF**

**OTR WHEEL ENGINEERING, BLACKSTONE/OTR, LLC**

**AND F.B.T ENTERPRISES, INC.**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OTR WHEEL ENGINEERING, INC., BLACKSTONE/OTR, LLC, and F. B. T. ENTERPRISES, INC., | No. 2:14-CV-00085-LRS |
| Plaintiffs, | |
| vs. | |
| WEST WORLDWIDE SERVICES, INC., SAMUEL J. WEST, individually, and his marital community; SSL Holdings, Inc.; SSL Global Inc.; SSL China LLC; and Qingdao STW Tire Co. Ltd.; | |
| Defendants. | |

_____

## FINAL INSTRUCTIONS GIVEN BY THE COURT

_____

**DATED** this ___30th___ day of June, 2016.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
SENIOR UNITED STATES DISTRICT JUDGE

APP 1

**Instruction No. 13**

The previous instruction requires OTR to prove by a preponderance of the evidence that the OTR trade dress is a valid, protectable trade dress and that OTR owns the trade dress. A trade dress becomes protectable after it is used in commerce.

One way for OTR to prove trade dress validity is to show that the OTR trade dress is registered. An owner of a trade dress may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trade dress and of ownership of the trade dress covered by that certificate.

Exhibit 002 is a certificate of registration from the United States Patent and Trademark Office, dated October 9, 2012, for the OTR trade dress.  The certificate of registration in Exhibit 002 describes an off-road tire tread design first used in commerce on December 18, 1998, and specifies the owner as F.B.T. Enterprises, Inc.  It was submitted by OTR as proof of validity of the OTR trade dress.

The law presumes that the facts noted in the certificate are true.  But this presumption can be overcome by sufficient evidence to the contrary.  Here, West has presented evidence that the trade dress is functional and lacks secondary meaning.  If West is able to show by a preponderance of the evidence that the trade dress is functional and lacks secondary meaning, then you cannot rely on the registration as stating the truth of the matters contained therein.

## Instruction No. 15

OTR has a registration for its trade dress and thus a presumption that the trade dress has acquired distinctiveness. Acquired distinctiveness is recognition that the feature claimed in the registration acts as a source identifier. This market recognition is called the trade dress' "secondary meaning."

A product's trade dress, its total image and overall appearance, acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the OTR trade dress with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether the OTR trade dress has acquired a secondary meaning, consider the following factors:

1.      Consumer Perception. Whether the people who purchase the product that bears the claimed trade dress associate the trade dress with OTR;

2.      Advertisement. To what degree and in what manner OTR may have advertised under the claimed trade dress;

3.      Demonstrated Utility. Whether OTR successfully used this trade dress to increase the sales of its product;

4.      Extent of Use. The length of time and manner in which OTR used the claimed trade dress;

5.      Exclusivity. Whether OTR's use of the claimed trade dress was exclusive;

6.      Copying. Whether West intentionally copied the trade dress; and

7.      Actual Confusion. Whether West's use of the OTR trade dress has led to actual confusion among a significant number of consumers.

The presence or absence of any particular factor should not necessarily resolve whether the OTR trade dress has acquired secondary meaning.

West has the burden of proving by a preponderance of the evidence that OTR's trade dress lacks secondary meaning.

The mere fact that OTR is using the trade dress, or that OTR began using it before West, does not mean the trade dress has acquired secondary meaning. There is no particular length of time that a trade dress must be used before it acquires a secondary meaning.

APP 4

J. CHRISTOPHER LYNCH, WSBA #17462
GEANA M. VAN DESSEL, WSBA #35969
RHETT V. BARNEY, WSBA #44764
LEE & HAYES, PLLC
601 W. Riverside Avenue, Suite 1400
Spokane, WA  99201
Phone: (509) 324-9256; Fax: (509) 323-8979

ROBERT J. CARLSON, WSBA#18455
LEE & HAYES, PLLC
One Convention Place
701 Pike Street, Ste. 1600
Seattle, WA 98101
Phone: (206) 315-4001; Fax (206) 315-4004

*Counsel for Plaintiffs OTR Wheel Engineering, Inc.,
Blackstone/OTR, LLC, and F. B. T. Enterprises, Inc.*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OTR WHEEL ENGINEERING, INC., BLACKSTONE/OTR, LLC, and F. B. T. ENTERPRISES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> WEST WORLDWIDE SERVICES, INC., SAMUEL J. WEST, individually, and his marital community; SSL Holdings, Inc.; SSL Global Inc.; SSL China LLC; and Qingdao STW Tire Co. Ltd.; <br><br> Defendants. | No.   2:14-CV-00085-LRS <br><br> PLAINTIFFS' PROPOSED JURY INSTRUCTIONS |

## Instruction No. 7

I gave you instruction number [*insert number of instruction regarding Trademark Elements and Burden of Proof for OTR Tread Design trademark, e.g., 15.5*] that requires OTR to prove by a preponderance of the evidence that the OTR Tread Design trademark is a valid, protectable trademark and that OTR owns the trademark. A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others. A trademark becomes protectable after it is used in commerce.

One way for OTR to prove trademark validity is to show that the OTR Tread Design Trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of ownership of the trademark covered by that certificate.

Exhibit 002 is a certificate of registration from the United States Patent and Trademark Office, dated October 9, 2012 for the OTR Tread Design trademark. It was submitted by OTR as proof of validity of the OTR Tread Design trademark and that OTR owns the trademark.

The certificate of registration in Exhibit 002 describes an off-road tire tread design first used in commerce December 18, 1998, and specifies the mark owner as F.B.T. Enterprises, Inc. However, Defendants have submitted evidence to dispute these recitals. Defendants do not dispute ownership but allege the certificate cannot be considered proof of validity of the trademark because they allege the trademark is functional, has been abandoned and that the registration was fraudulently obtained.

Unless the Defendants prove by a preponderance of the evidence that the trademark is functional or has been abandoned or that the registration was fraudulently obtained, you must consider the trademark to be conclusively proved as valid and owned by OTR. However, if the Defendants show by a preponderance of the evidence that the trademark is functional or has been abandoned or that the registration was fraudulently obtained, then the facts stated in the certificate are no longer conclusively presumed to be correct. You should then consider whether all of the evidence admitted in this case, in addition to this certificate of registration, shows by a preponderance of the evidence that the mark is valid as I explain in Instruction [*insert 15.5 Elements and BOP Instruction].*

9th Cir. Model Civil Jury Instr. § 15.7 (2007) *(last updated 4/16/16)* (incorporates fifth paragraph from incontestable marks from Comments to 15.7). INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND OWNERSHIP - REGISTERED TRADEMARK (15 U.S.C. §§ 1057, 1065, 1115).